# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FOREST LABORATORIES, INC.,
FOREST LABORATORIES HOLDINGS,
LTD., MERZ PHARMA GMBH & CO.
KGAA, and MERZ PHARMACEUTICALS
GMBH,

        Plaintiffs,

        v.

DR. REDDY'S LABORATORIES, INC.,
DR. REDDY'S LABORATORIES LIMITED,
GENPHARM, GENPHARM, L.P.,
INTERPHARM HOLDINGS, INC.,
INTERPHARM, INC., MYLAN
PHARMACEUTICALS INC., RANBAXY
INC., RANBAXY LABORATORIES
LIMITED, KENDLE INTERNATIONAL
INC., SUN INDIA PHARMACEUTICAL
INDUSTRIES LIMITED (a/k/a SUN
PHARMACEUTICAL INDUSTRIES LTD.),
SYNTHON HOLDING B.V., SYNTHON
B.V., SYNTHON LABORATORIES, INC.,
and SYNTHON PHARMACEUTICALS,
INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 08-52 (GMS)

## AMENDED COMPLAINT

Plaintiffs Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Merz

Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH (collectively "Plaintiffs") for

their Complaint against Defendants Dr. Reddy's Laboratories, Inc., Dr. Reddy's Laboratories

Limited, Genpharm Inc., Genpharm, L.P., Interpharm Holdings, Inc., Interpharm, Inc., Mylan

Pharmaceuticals Inc., Ranbaxy Inc., Ranbaxy Laboratories Limited, Kendle International Inc.,

Sun India Pharmaceutical Industries Ltd. (a/k/a Sun Pharmaceutical Industries Limited), Synthon

Holding B.V., Synthon B.V., Synthon Laboratories, Inc., and Synthon Pharmaceuticals, Inc. (collectively "Defendants") hereby allege as follows:

**PARTIES**

1.      Plaintiff Forest Laboratories, Inc. ("Forest Labs") is a Delaware corporation having a principal place of business at 909 Third Avenue, New York, New York 10022.

2.      Plaintiff Forest Laboratories Holdings, Ltd. is an Irish corporation having a principal place of business at Milner House, 18 Parliament Street, Hamilton JM11, Bermuda (referred to herein, together with Forest Laboratories, Inc., as "Forest").

3.      Plaintiff Merz Pharma GmbH & Co. KGaA is a German corporation having a principal place of business at Eckenheimer Landstraße 100, D-60318 Frankfurt am Main, Germany.

4.      Plaintiff Merz Pharmaceuticals GmbH is a German corporation having a principal place of business at Eckenheimer Landstraße 100, D-60318 Frankfurt am Main, Germany (referred to herein, together with Merz Pharma GmbH & Co. KGaA, as "Merz").

5.      Upon information and belief, Defendant Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's Labs") is a New Jersey corporation, and the wholly-owned subsidiary and agent of Dr. Reddy's Laboratories Limited, having a principal place of business at 200 Somerset Corporate Boulevard, Building II, Bridgewater, New Jersey 08807. Upon information and belief, Defendant Dr. Reddy's Labs manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

6.      Upon information and belief, Defendant Dr. Reddy's Laboratories Limited ("Dr. Reddy's Limited") is an Indian corporation having a principal place of business at 7-1-27 Ameerpet, Hyderabad 500 016, India. Upon information and belief, Defendant Dr. Reddy's

2

Limited, itself and through its wholly-owned subsidiary and agent Defendant Dr. Reddy's Labs, manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

7.    Upon information and belief, Defendant Genpharm, L.P. ("Genpharm LP") is a New York entity, and the sister company and agent of Genpharm, Inc., having a principal place of business at 150 Motor Parkway, Hauppauge, New York 11788.    Upon information and belief, Defendant Genpharm LP manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

8.    Upon information and belief, Defendant Genpharm Inc. ("Genpharm") is a Canadian corporation having a principal place of business at 85 Advance Road, Etobicoke, Ontario M8Z 2S6, Canada.    Upon information and belief, Defendant Genpharm, itself and through its sister company and agent Defendant Genpharm LP, manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

9.    Upon information and belief, Defendant Interpharm Holdings, Inc. ("Interpharm Holdings") is a Delaware corporation having a principal place of business at 75 Adams Avenue, Hauppauge, New York 11788.

10.    Upon information and belief, Defendant Interpharm, Inc. ("Interpharm") is a New York corporation, and the wholly-owned subsidiary and agent of Interpharm Holdings, having a principal place of business at 75 Adams Avenue, Hauppauge, New York 11788.    Upon information and belief, Defendant Interpharm, itself and on behalf of its parent and principal Defendant Interpharm Holdings, manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

11.     Upon information and belief, Defendant Mylan Pharmaceuticals Inc. ("Mylan") is a West Virginia corporation having a principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26504. Upon information and belief, Defendant Mylan manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

12.     Upon information and belief, Defendant Ranbaxy Inc. ("Ranbaxy") is a Delaware corporation, and the wholly-owned subsidiary and agent of Defendant Ranbaxy Laboratories Limited, having a principal place of business at 600 College Road East, Princeton, New Jersey 08540.

13.     Upon information and belief, Defendant Ranbaxy Laboratories Limited ("Ranbaxy Labs") is an Indian corporation having a principal place of business at Plot 90, Sector 32, Gurgaon, Haryana 122 001, India. Upon information and belief, Defendant Ranbaxy Labs, itself and through its wholly-owned subsidiary and agent Defendant Ranbaxy, manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

14.     Upon information and belief, Defendant Kendle International Inc. ("Kendle") is an Ohio corporation, and an agent of Defendant Sun India Pharmaceutical Industries Limited (a/k/a Sun Pharmaceutical Industries Limited), having a principal place of business at 441 Vine Street, Cincinnati, Ohio 45202.

15.     Upon information and belief, Defendant Sun India Pharmaceutical Industries Limited ("Sun India") (a/k/a Sun Pharmaceutical Industries Limited) is an Indian corporation having a principal place of business at Acme Plaza, Andheri Kurla Road, Andheri (East), Mumbai, Maharashtra 400 059, India. Upon information and belief, Defendant Sun India

manufactures numerous generic drugs for sale and use throughout the United States, including in this judicial district.

16.    Upon information and belief, Defendant Synthon Holding B.V. ("Synthon Holding") is a Dutch entity having a principal place of business at Microweg 22, 6545 CM Nijmegen, Netherlands.  Upon information and belief, Defendant Synthon Holding, itself and through its subsidiaries and agents Defendants Synthon B.V., Synthon Laboratories, Inc., and Synthon Pharmaceuticals, Inc., manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

17.    Upon information and belief, Defendant Synthon B.V. ("Synthon") is a Dutch entity having a principal place of business at Microweg 22, P.O. Box 7071, 6503 GN Nijmegen, Netherlands.  Upon information and belief, Defendant Synthon, itself, on behalf of its parent Defendant Synthon Holding, and through its sister companies and agents Defendants Synthon Laboratories, Inc., and Synthon Pharmaceuticals, Inc., manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

18.    Upon information and belief, Defendant Synthon Laboratories, Inc. ("Synthon Labs") is a Virginia corporation having a principal place of business at 7130 Heritage Village Plaza, Suite 201, Gainesville, Virginia 20155.  Upon information and belief, Defendant Synthon Labs, itself and on behalf of its parent Defendant Synthon Holding and its sister companies Defendants Synthon and Synthon Pharmaceuticals, Inc., submitted Abbreviated New Drug Application ("ANDA") No. 90-047 to the United States Food and Drug Administration ("FDA").  Upon information and belief, Defendant Synthon Labs, through its parent Defendant Synthon Holding and its sister companies Defendants Synthon and Synthon Pharmaceuticals,

Inc., manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

19.     Upon information and belief, Defendant Synthon Pharmaceuticals, Inc. ("Synthon Pharma") is a North Carolina corporation having a principal place of business at 9000 Development Drive, P.O. Box 110487, Research Triangle Park, North Carolina 27709. Upon information and belief, Defendant Synthon Pharma, itself and on behalf of its parent Defendant Synthon Holding and its sister companies Defendants Synthon and Synthon Labs, manufactures and/or distributes numerous generic drugs for sale and use throughout the United States, including in this judicial district.

## NATURE OF THE ACTION

20.     This is a civil action for infringement of United States Patent No. 5,061,703 ("the '703 patent") (Exhibit A). This action is based upon the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22.     This Court has personal jurisdiction over each of the Defendants by virtue of the fact that, *inter alia*, each Defendant has committed, or aided, abetted, contributed to and/or participated in the commission of, the tortious act of patent infringement that has led to foreseeable harm and injury to Plaintiffs, including Plaintiff Forest Labs, a Delaware corporation. This Court has personal jurisdiction over each of the Defendants for the additional reasons set forth below and for other reasons that will be presented to the Court if such jurisdiction is challenged.

23.     This Court has personal jurisdiction over Defendant Dr. Reddy's Labs by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

24.     This Court has personal jurisdiction over Defendant Dr. Reddy's Limited by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its subsidiary and agent Dr. Reddy's Labs.

25.     This Court has personal jurisdiction over Defendant Genpharm LP by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

26.     This Court has personal jurisdiction over Defendant Genpharm by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its sister company and agent Genpharm LP.

27.     This Court has personal jurisdiction over Defendant Interpharm Holdings by virtue of the fact that, *inter alia*, Interpharm Holdings is a Delaware corporation.

28.     This Court has personal jurisdiction over Defendant Interpharm by virtue of, *inter alia*: (1) its presence in Delaware through its parent and principal Interpharm Holdings; and (2) its systematic and continuous contacts with Delaware, including through its parent and principal Interpharm Holdings.

29.     This Court has personal jurisdiction over Defendant Mylan by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

30.     This Court has personal jurisdiction over Defendant Ranbaxy by virtue of the fact that, *inter alia*, Ranbaxy is a Delaware corporation.

31.     This Court has personal jurisdiction over Defendant Ranbaxy Labs by virtue of, *inter alia*: (1) its presence in Delaware through its subsidiary and agent Ranbaxy; and

(2) its systematic and continuous contacts with Delaware, including through its subsidiary and agent Ranbaxy.

32.    This Court has personal jurisdiction over Defendant Kendle by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

33.    This Court has personal jurisdiction over Defendant Sun India by virtue of, *inter alia*, its systematic and continuous contacts with Delaware.

34.    This Court has personal jurisdiction over Defendant Synthon Holding by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its subsidiaries and agents Synthon, Synthon Labs, and Synthon Pharma.

35.    This Court has personal jurisdiction over Defendant Synthon by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its parent Synthon Holding and its sister companies and agents Synthon Labs and Synthon Pharma.

36.    This Court has personal jurisdiction over Defendant Synthon Labs by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its parent Synthon Holding and its sister companies Synthon and Synthon Pharma.

37.    This Court has personal jurisdiction over Defendant Synthon Pharma by virtue of, *inter alia*, its systematic and continuous contacts with Delaware, including through its parent Synthon Holding and its sister companies Synthon and Synthon Labs.

38.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENT-IN-SUIT

39.    On October 29, 1991, the '703 patent, titled "Adamantane Derivatives in the Prevention and Treatment of Cerebral Ischemia," was duly and legally issued by the United

States Patent and Trademark Office ("PTO"). Merz has been, and continues to be, the sole assignee of the '703 patent since its issuance.

40.     Forest is the exclusive licensee of the '703 patent in the United States. Forest holds New Drug Application ("NDA") No. 21-487 for Namenda® brand memantine hydrochloride tablets. The '703 patent is listed in the *Approved Drug Products with Therapeutic Equivalence Evaluations* ("Orange Book") for Namenda®.

41.     Forest is the exclusive distributor of Namenda® in the United States.

42.     On August 18, 2004, Merz submitted a request to the PTO for reexamination of the '703 patent. The PTO issued a reexamination certificate (Exhibit B) for the '703 patent on November 7, 2006.

## ACTS GIVING RISE TO THIS ACTION

### Count I – Infringement Of The '703 Patent By Defendants Dr. Reddy's Limited And Dr. Reddy's Labs

43.     Upon information and belief, Defendant Dr. Reddy's Limited, through its subsidiary and agent Dr. Reddy's Labs, submitted ANDA No. 90-048 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)). That ANDA seeks FDA approval for the commercial manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Dr. Reddy's Generic Products"). ANDA No. 90-048 specifically seeks FDA approval to market the Dr. Reddy's Generic Products prior to the expiration of the '703 patent.

44.     Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Dr. Reddy's Limited alleged in ANDA No. 90-048 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or

sale of the Dr. Reddy's Generic Products.  Plaintiffs received written notification of ANDA No. 90-048 and its § 505(j)(2)(A)(vii)(IV) allegation on or about January 4, 2008.

45.     Dr. Reddy's Limited's submission of ANDA No. 90-048 to the FDA, through its subsidiary and agent Dr. Reddy's Labs, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Dr. Reddy's Limited commercially manufactures, uses, offers to sell, sells, or imports any of the Dr. Reddy's Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

46.     Dr. Reddy's Labs is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Dr. Reddy's Labs participated in, contributed to, aided, abetted and/or induced Dr. Reddy's Limited's submission of ANDA No. 90-048 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

47.     Dr. Reddy's Labs' participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-048 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Dr. Reddy's Labs commercially manufactures, uses, offers to sell, sells, or imports any of the Dr. Reddy's Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

48.     Dr. Reddy's Limited and Dr. Reddy's Labs were aware of the '703 patent prior to filing ANDA No. 90-048.

49.     Dr. Reddy's Limited's and Dr. Reddy's Labs' actions render this an exceptional case under 35 U.S.C. § 285.

50.    Plaintiffs will be irreparably harmed by Dr. Reddy's Limited's and Dr. Reddy's Labs' infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

## Count II – Infringement Of The '703 Patent By Defendants Genpharm And Genpharm LP

51.    Upon information and belief, Defendant Genpharm, through its sister company and agent Genpharm LP, submitted ANDA No. 90-050 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)). Genpharm's ANDA No. 90-050 seeks FDA approval for the commercial manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Genpharm Generic Products"). Genpharm's ANDA No. 90-050 specifically seeks FDA approval to market the Genpharm Generic Products prior to the expiration of the '703 patent.

52.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Genpharm alleged in ANDA No. 90-050 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Genpharm Generic Products. Plaintiffs received written notification of ANDA No. 90-050 and its § 505(j)(2)(A)(vii)(IV) allegation on or about December 18, 2007.

53.    Genpharm's submission of ANDA No. 90-050 to the FDA, through its sister company and agent Genpharm LP, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Genpharm commercially manufactures, uses, offers to sell, sells, or imports any of the Genpharm Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

11

54.    Genpharm LP is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Genpharm LP participated in, contributed to, aided, abetted and/or induced Genpharm's submission of ANDA No. 90-050 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

55.    Genpharm LP's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-050 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Genpharm LP commercially manufactures, uses, offers to sell, sells, or imports any of the Genpharm Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

56.    Genpharm and Genpharm LP were aware of the '703 patent prior to filing ANDA No. 90-050.

57.    Genpharm's and Genpharm LP's actions render this an exceptional case under 35 U.S.C. § 285.

58.    Plaintiffs will be irreparably harmed by Genpharm's and Genpharm LP's infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

### Count III – Infringement Of The '703 Patent
### By Defendants Interpharm And Interpharm Holdings

59.    Upon information and belief, Defendant Interpharm, on behalf of its parent and principal Interpharm Holdings, submitted ANDA No. 90-041 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  That ANDA seeks FDA approval for the commercial manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Interpharm

Generic Products"). ANDA No. 90-041 specifically seeks FDA approval to market the Interpharm Generic Products prior to the expiration of the '703 patent.

60. Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Interpharm alleged in ANDA No. 90-041 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Interpharm Generic Products. Plaintiffs received written notification of ANDA No. 90-041 and its § 505(j)(2)(A)(vii)(IV) allegation on or about December 19, 2007.

61. Interpharm's submission of ANDA No. 90-041 to the FDA, on behalf of its parent and principal Interpharm Holdings, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Interpharm commercially manufactures, uses, offers to sell, sells, or imports any of the Interpharm Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

62. Interpharm Holdings is jointly and severally liable for any infringement of the '703 patent. Upon information and belief, Interpharm Holdings participated in, contributed to, aided, abetted and/or induced Interpharm's submission of ANDA No. 90-041 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

63. Interpharm Holdings' participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-041 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Interpharm Holdings commercially manufactures, uses, offers to sell, sells, or imports any of the Interpharm Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

64.     Interpharm and Interpharm Holdings were aware of the '703 patent prior to filing ANDA No. 90-041.

65.     Interpharm's and Interpharm Holdings' actions render this an exceptional case under 35 U.S.C. § 285.

66.     Plaintiffs will be irreparably harmed by Interpharm's and Interpharm Holdings' infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

### Count IV – Infringement Of The '703 Patent By Defendant Mylan

67.     Upon information and belief, Defendant Mylan submitted ANDA No. 79-225 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)). Mylan's ANDA No. 79-225 seeks FDA approval for the commercial manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Mylan Generic Products"). Mylan's ANDA No. 79-225 specifically seeks FDA approval to market the Mylan Generic Products prior to the expiration of the '703 patent.

68.     Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Mylan alleged in ANDA No. 79-225 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Mylan Generic Products. Plaintiffs received written notification of ANDA No. 79-225 and its § 505(j)(2)(A)(vii)(IV) allegation on or about December 18, 2007.

69.     Mylan's submission of ANDA No. 79-225 to the FDA, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Mylan commercially manufactures, uses, offers to sell, sells, or imports any of the Mylan Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

70.     Mylan was aware of the '703 patent prior to filing ANDA No. 79-225.

71.     Mylan's actions render this an exceptional case under 35 U.S.C. § 285.

72.     Plaintiffs will be irreparably harmed by Mylan's infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

## Count V – Infringement Of The '703 Patent By
## Defendants Ranbaxy Labs And Ranbaxy

73.     Upon information and belief, Defendant Ranbaxy Labs, through its subsidiary and agent Ranbaxy, submitted ANDA No. 79-236 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)). That ANDA seeks FDA approval for the commercial manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Ranbaxy Generic Products"). ANDA No. 79-236 specifically seeks FDA approval to market the Ranbaxy Generic Products prior to the expiration of the '703 patent.

74.     Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Ranbaxy Labs alleged in ANDA No. 79-236 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Ranbaxy Generic Products. Plaintiffs received written notification of ANDA No. 79-236 and its § 505(j)(2)(A)(vii)(IV) allegation on or about December 19, 2007.

75.     Ranbaxy Labs' submission of ANDA No. 79-236 to the FDA, through its subsidiary and agent Ranbaxy, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Ranbaxy Labs commercially manufactures, uses, offers to sell, sells, or imports any of the Ranbaxy Generic

Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

76.     Ranbaxy is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Ranbaxy participated in, contributed to, aided, abetted and/or induced Ranbaxy Labs' submission of ANDA No. 79-236 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

77.     Ranbaxy's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 79-236 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Ranbaxy commercially manufactures, uses, offers to sell, sells, or imports any of the Ranbaxy Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

78.     Ranbaxy Labs and Ranbaxy were aware of the '703 patent prior to filing ANDA No. 79-236.

79.     Ranbaxy Labs' and Ranbaxy's actions render this an exceptional case under 35 U.S.C. § 285.

80.     Plaintiffs will be irreparably harmed by Ranbaxy Labs' and Ranbaxy's infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

### Count VI – Infringement Of The '703 Patent By Defendants Sun India And Kendle

81.     Upon information and belief, Defendant Sun India, through its agent Kendle, submitted ANDA No. 90-058 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).  That ANDA seeks FDA approval for the commercial

16

manufacture, use and sale of generic tablet products containing 5 milligrams and 10 milligrams of memantine hydrochloride ("the Sun Generic Products"). ANDA No. 90-058 specifically seeks FDA approval to market the Sun Generic Products prior to the expiration of the '703 patent.

82.     Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Sun India alleged in ANDA No. 90-058 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Sun Generic Products. Plaintiffs received written notification of ANDA No. 90-058 and its § 505(j)(2)(A)(vii)(IV) allegation on or about December 20, 2007.

83.     Sun India's submission of ANDA No. 90-058 to the FDA, through its agent Kendle, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Sun India commercially manufactures, uses, offers to sell, sells, or imports any of the Sun Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

84.     Kendle is jointly and severally liable for any infringement of the '703 patent. Upon information and belief, Kendle participated in, contributed to, aided, abetted and/or induced Sun India's submission of ANDA No. 90-058 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

85.     Kendle's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-058 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Kendle commercially manufactures, uses, offers to sell, sells, or imports any of the Sun

Generic Products, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

86.    Sun India and Kendle were aware of the '703 patent prior to filing ANDA No. 90-058.

87.    Sun India's and Kendle's actions render this an exceptional case under 35 U.S.C. § 285.

88.    Plaintiffs will be irreparably harmed by Sun India's and Kendle's infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

### Count VII – Infringement Of The '703 Patent By Defendants
### Synthon Holding, Synthon, Synthon Labs, and Synthon Pharma

89.    Upon information and belief, Defendant Synthon Labs, on behalf of its parent Synthon Holding and its sister companies Synthon and Synthon Pharma, submitted ANDA No. 90-047 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)). That ANDA seeks FDA approval for the commercial manufacture, use and sale of generic tablets containing 5 milligrams of memantine hydrochloride ("the Synthon Generic Product"). ANDA No. 90-047 specifically seeks FDA approval to market the Synthon Generic Product prior to the expiration of the '703 patent.

90.    Pursuant to § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act, Synthon Labs alleged in ANDA No. 90-047 that the claims of the '703 patent are invalid, unenforceable and/or not infringed by the commercial manufacture, use or sale of the Synthon Generic Product. Plaintiffs received written notification of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegation on or about February 5, 2008.

91.    Synthon Labs' submission of ANDA No. 90-047 to the FDA, on behalf of its parent Synthon Holding and its sister companies Synthon and Synthon Pharma, including its § 505(j)(2)(A)(vii)(IV) allegations, constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Synthon Labs commercially manufactures, uses, offers to sell, sells, or imports any of the Synthon Generic Product, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

92.    Synthon Holding is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Synthon Holding participated in, contributed to, aided, abetted and/or induced Synthon Labs' submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

93.    Synthon Holding's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Synthon Holding commercially manufactures, uses, offers to sell, sells, or imports any of the Synthon Generic Product, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

94.    Synthon is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Synthon participated in, contributed to, aided, abetted and/or induced Synthon Labs' submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

95.    Synthon's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover,

if Synthon commercially manufactures, uses, offers to sell, sells, or imports any of the Synthon Generic Product, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

96.     Synthon Pharma is jointly and severally liable for any infringement of the '703 patent.  Upon information and belief, Synthon Pharma participated in, contributed to, aided, abetted and/or induced Synthon Labs' submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA.

97.     Synthon Pharma's participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA No. 90-047 and its § 505(j)(2)(A)(vii)(IV) allegations to the FDA constitutes infringement of the '703 patent under 35 U.S.C. § 271(e)(2)(A).  Moreover, if Synthon Pharma commercially manufactures, uses, offers to sell, sells, or imports any of the Synthon Generic Product, or induces or contributes to any such conduct, it would further infringe the '703 patent under 35 U.S.C. § 271(a), (b) and/or (c).

98.     Synthon Holding, Synthon, Synthon Labs, and Synthon Pharma were aware of the '703 patent prior to filing ANDA No. 90-047.

99.     Synthon Holding's, Synthon's, Synthon Labs', and Synthon Pharma's actions render this an exceptional case under 35 U.S.C. § 285.

100.    Plaintiffs will be irreparably harmed by Synthon Holding's, Synthon's, Synthon Labs', and Synthon Pharma's infringing activities unless those activities are enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.     That all Defendants have infringed the '703 patent;

B.     That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Defendants' respective ANDAs identified in this Complaint shall not be earlier than the expiration date of the '703 patent, including any extensions;

C.     That Defendants, their officers, agents, servants and employees, and those persons in active concert or participation with any of them, be preliminarily and permanently enjoined from commercially manufacturing, using, offering for sale, selling, or importing any of the proposed generic versions of Plaintiffs' Namenda® brand product identified in this Complaint and any other product that infringes or induces or contributes to the infringement of the '703 patent, prior to the expiration of the '703 patent, including any extensions;

D.     That this case is exceptional under 35 U.S.C. § 285;

E.     That Plaintiffs be awarded the attorney fees, costs and expenses that they incur prosecuting this action; and

F.     That Plaintiffs be awarded such other and further relief as this Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022
(212) 446-4800

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939

February 15, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on

February 15, 2008 upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire                                           *and HAND DELIVERY*
POTTER ANDERSON & CORROON LLP
1313 North Market Street – 6th Floor
Wilmington, DE  19801
*Attorneys for Interpharm Holdings, Inc. and*
*Interpharm, Inc.*

Louis H. Weinstein, Esquire                                    *VIA ELECTRONIC MAIL*
BUDD LARNER, P.C.                                              *and FEDERAL EXPRESS*
150 John F. Kennedy Parkway
Short Hills, NJ  07078-2703
*Attorney for Dr. Reddy's Laboratories, Inc.*
*and Dr. Reddy's Laboratories Limited*

William Zimmerman, Esquire                                    *VIA ELECTRONIC MAIL*
Knobbe Martens Olson & Bear LLP                               *and FEDERAL EXPRESS*
2040 Main Street
14th Floor
Irvine, CA  92614-3641
*Attorneys for Ranbaxy Inc. and Ranbaxy*
*Laboratories Limited*

Kendle International, Inc.                                      *VIA FIRST CLASS MAIL*
441 Vine Street
Cincinnati, OH  45202

James F. Hurst, Esquire                                        *VIA ELECTRONIC MAIL*
WINSTON & STRAWN LLP                                          *and FEDERAL EXPRESS*
35 West Wacker Drive
Chicago, IL  60601
*Attorneys for Sun India Pharmaceutical*
*Industries Limited*

Jeffrey A. Hovden, Esquire
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151
*Attorneys for Genpharm, L.P., Genpharm Inc.*
*and Mylan Pharmaceuticals Inc.*

*VIA ELECTRONIC MAIL*
*and FEDERAL EXPRESS*

Maryellen Noreika (#3208)

# EXHIBIT A

# United States Patent [19]

Bormann et al.

[11] Patent Number: 5,061,703

[45] Date of Patent: Oct. 29, 1991

[54] **ADAMANTANE DERIVATIVES IN THE PREVENTION AND TREATMENT OF CEREBRAL ISCHEMIA**

[75] Inventors: Joachim Bormann, Frankfurt; Markus R. Gold, Nauheim; Wolfgang Schatton, Eschborn, all of Fed. Rep. of Germany

[73] Assignee: Merz + Co. GmbH & Co., Frankfurt am Main, Fed. Rep. of Germany

[21] Appl. No.: 508,109

[22] Filed: Apr. 11, 1990

[30] Foreign Application Priority Data

Apr. 14, 1989 [EP] European Pat. Off. .......... 89106657

[51] Int. Cl.$^5$ ...................... A61K 31/13; A61K 31/41; A61K 31/55; A61K 31/445

[52] U.S. Cl. ................................. 514/212; 514/325; 514/359; 514/662

[58] Field of Search ............... 514/212, 325, 359, 662

[56] **References Cited**

## FOREIGN PATENT DOCUMENTS

0227410 7/1987 European Pat. Off. .

## OTHER PUBLICATIONS

Marcy, R. et al.; J. Pharmacol. 13 (1), pp. 163–164 (1982).
Miura, Y. et al.; Japan. J. Pharmacol. 39, pp. 443–451 (1986).
Miltner, F. O.; Arzneimittelforschung. 32 (10), pp. 1268–1270 (1982).
Miltner, F. O.; Arzneimittelforschung. 32 (10), pp. 1271–1273 (1982).
Hamoen, A. M.; British Medical Journal. 3, (5874), pp. 272–273 (1973).
Kinomota, H. et al.; No Skinkei Geka, 12 (1), pp. 37–45 (1984).
Otomo, E; Japan. J. Neuropsychopharmacol. 4/2, pp. 113–119 (1982).
Berkow, R.; The Merck Manual. 15, pp. 1336–1340 (1987).
Krieglstein, J., Weber, J. in Oxygen Transport to Tissue, VIII, Longmuir, I. S., Editor; Plenum Publishing Corporation; pp. 243–253 (1986).
Sugio, K. et al.; Japan. J. Pharmacol. 47, pp. 327–329 (1988).
Hossman, K. A.; Critical Care Medicine. 16 (10), pp. 964–971 (1988).
Hoyer, S.; Aging. 11, pp. 158–166 (1988).

*Primary Examiner*—Stanley J. Friedman
*Attorney, Agent, or Firm*—Gordon W. Hueschen

[57] **ABSTRACT**

A method for the prevention and treatment of cerebral ischemia using an adamantane derivative of the formula



wherein
$R_1$ and $R_2$ are identical or different, representing hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein
$R_3$ and $R_4$ are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein
$R_5$ is hydrogen or a straight or branched $C_1$–$C_6$ alkyl group,

or a pharmaceutically-acceptable salt thereof, is disclosed.

13 Claims, No Drawings

5,061,703

1

## ADAMANTANE DERIVATIVES IN THE PREVENTION AND TREATMENT OF CEREBRAL ISCHEMIA

The present invention relates to a method for the prevention or treatment of cerebral ischemia using an adamantane derivative of the following general formula


(I)

wherein

$R_1$ and $R_2$ are identical or different and represent hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic radical with 5 or 6 ring C atoms;

wherein

$R_3$ and $R_4$ are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl; and

wherein

$R_5$ is hydrogen or a straight or branched $C_1$–$C_6$ alkyl group, or a pharmaceutically-acceptable acid addition salt thereof. Herein branched or straight $C_1$–$C_6$ alkyl groups representatively include methyl, ethyl, iso- and n-propyl, n-, iso- and t-butyl, n-pentyl, n-hexyl, and the isomers thereof.

Certain 1-amino adamantanes of formula (I) are known. 1-amino-3,5-dimethyl adamantane, for example, is the subject matter of German patents 22 19 256 and 28 56 393.

Some 3,5-disubstituted 1-amino adamantanes of formula (I) are described in U.S. Pat. No. 4,122,193. 1-amino-3-ethyl adamantane is described in German Patent 22 32 735.

The compounds of formula (I) are generally prepared by alkylation of halogenated adamantanes, preferably bromo- or chloroadamantanes. The di- or tri-substituted adamantanes are obtained by additional halogenation and alkylation procedures. The amino group is introduced either by oxidation with chromiumtrioxide and bromination with HBr or bromination with bromine and reaction with formamide followed by hydrolysis. The amino function can be alkylated according to generally-accepted methods. Methylation can, for example, be effected by reaction with chloromethyl formate and subsequent reduction. The ethyl group can be introduced by reduction of the respective acetamide.

In accordance with U.S. Pat. No. 4,122,193 amination can also be effected by reaction of the respective 1-halogen-3,5- or -7-substituted adamantane with a urea derivative of the formula



wherein $R_1$ is hydrogen or alkyl.

2

The compounds according to formula (I) are prepared according to the following reaction scheme:



Alkylation of the halogenated adamantanes can be achieved by known methods, for example, through Friedel-Crafts reaction (introduction of phenyl group), or by reaction with vinylidene chloride, subsequent reduction and suitable Wittig reaction of the aldehydes and subsequent hydration, or by introduction of ethylene and subsequent alkylation with appropriate cuprates, or by introduction of ethylene and reduction of the halogen alkyl adamantanes, or by acylation with $CO_2$ and reduction of the carboxylic acid.

The compounds according to formula (I) known from the above-cited patents so far have been used for the treatment of parkinsonian and parkinsonoid diseases. Their mode of action is attributed to a dopaminergic influence on the CNS, either by an increased release of the transmitter substance dopamine or by an inhibition of its uptake. This compensates the imbalance of the dopamine/acetylcholine system.

In contrast to this type of disease, cerebral ischemia is characterized by a pathophysiological situation defined by an imbalance of neuronal stimulation mechanisms. In this context, the excessive inflow of calcium through NMDA receptor channels finally leads to the destruction of brain cells in specific brain areas (Rothmann & Olney, Trends Neurosci 10, 1989, pp. 299).

Therefore, in order to treat or eliminate this pathological situation, an antagonistic intervention is required with regard to the NMDA receptor channels (Kemp et al., Trends Pharmacol., Sci. 8, 1987, pp. 414).

Such intervention can, for example, be effected using substituted fluoro and hydroxy derivatives of dibenzo-[a,d]-cyclo-heptene-5,10-imine which are described in EP-A 0 264 183.

These heterocyclic, aromatic compounds are lipophilic and exhibit NMDA receptor channel-antagonistic and anticonvulsive properties. They are prepared by a relatively expensive method generating enantiomer mixtures which may be split into the individual optical antipodes.

The present invention is aimed at preparing and employing compounds which can be chemically generated

5,061,703

3

by simple methods, exhibiting an NMDA receptor channel-antagonistic and anticonvulsive action, for use in the prevention and treatment of cerebral ischemia.

This objective can be achieved according to the invention by using the 1-amino adamantanes of formula (I).

It has been found unexpectedly that the use of these compounds prevents an impairment or further impairment, i.e., degeneration and loss of nerve cells, after ischemia. Therefore, the adamantane derivatives of formula (I) are especially suited for the prevention and treatment of cerebral ischemia after apoplexy, open-heart surgery, cardiac standstill, subarachnoidal homorrhage, transient cerebro-ischemic attacks, perinatal asphyxia, anoxia, hypoglycemia, apnoea and Alzheimer's disease. The amount employed is a cerebral ischemia-alleviating or preventive amount.

Examples of compounds prepared and used according to the invention are:

1-amino adamantane
1-amino-3-phenyl adamantane
1-amino-3-methyl-adamantane
1-amino-3,5-dimethyl adamantane (test compound no. 1)
1-amino-3-ethyl adamantane (test compound no. 2)
1-amino-3-isopropyl adamantane (test compound no. 3)
1-amino-3-n-butyl adamantane
1-amino-3,5-diethyl adamantane (test compound no. 4)
1-amino-3,5-diisopropyl adamantane
1-amino-3,5-di-n-butyl adamantane
1-amino-3-methyl-5-ethyl adamantane
1-N-methylamino-3,5-dimethyl adamantane (test compound no. 5)
1-N-ethylamino-3,5-dimethyl adamantane (test compound no. 6)
1-N-isopropyl-amino-3,5-dimethyl adamantane
1-N,N-dimethyl-amino-3,5-dimethyl adamantane
1-N-methyl-N-isopropyl-amino-3-methyl-5-ethyl adamantane
1-amino-3-butyl-5-phenyl adamantane
1-amino-3-pentyl adamantane
1-amino-3,5-dipentyl adamantane
1-amino-3-pentyl-5-hexyl adamantane
1-amino-3-pentyl-5-cyclohexyl adamantane
1-amino-3-pentyl-5-phenyl adamantane
1-amino-3-hexyl adamantane
1-amino-3,5-dihexyl adamantane
1-amino-3-hexyl-5-cyclohexyl adamantane
1-amino-3-hexyl-5-phenyl adamantane
1-amino-3-cyclohexyl adamantane (test compound no. 7)
1-amino-3,5-dicyclohexyl adamantane
1-amino-3-cyclohexyl-5-phenyl adamantane
1-amino-3,5-diphenyl adamantane
1-amino-3,5,7-trimethyl adamantane
1-amino-3,5-dimethyl-7-ethyl adamantane (test compound no. 8)
1-amino-3,5-diethyl-7-methyl adamantane
1-N-pyrrolidino and 1-N-piperidine derivatives,
1-amino-3-methyl-5-propyl adamantane
1-amino-3-methyl-5-butyl adamantane
1-amino-3-methyl-5-pentyl adamantane
1-amino-3-methyl-5-hexyl adamantane
1-amino-3-methyl-5-cyclohexyl adamantane
1-amino-3-methyl-5-phenyl adamantane
1-amino-3-ethyl-5-propyl adamantane
1-amino-3-ethyl-5-butyl adamantane
1-amino-3-ethyl-5-pentyl adamantane

4

1-amino-3-ethyl-5-hexyl adamantane
1-amino-3-ethyl-5-cyclohexyl adamantane
1-amino-3-ethyl-5-phenyl adamantane
1-amino-3-propyl-5-butyl adamantane
1-amino-3-propyl-5-pentyl adamantane
1-amino-3-propyl-5-hexyl adamantane
1-amino-3-propyl-5-cyclohexyl adamantane
1-amino-3-propyl-5-phenyl adamantane
1-amino-3-butyl-5-pentyl adamantane
1-amino-3-butyl-5-hexyl adamantane
1-amino-3-butyl-5-cyclohexyl adamantane
their N-methyl, N,N-dimethyl, N-ethyl, N-propyl derivatives and their acid addition compounds.

Preferred compounds of formula (I) are those wherein $R_1$ and $R_2$ are hydrogen such as, for example, 1-amino-3-ethyl-5,7-dimethyl adamantane, and compounds wherein $R_1$, $R_2$, $R_4$ and $R_5$ are hydrogen such as, for example, 1-amino-3-cyclohexyl adamantane and 1-amino-3-ethyl adamantane.

Additional preferred compounds are those wherein $R_1$, $R_2$ and $R_5$ are hydrogen such as, for example, 1-amino-3-methyl-5-propyl or 5-butyl adamantane, 1-amino-3-methyl-5-hexyl or cyclohexyl adamantane, or 1-amino-3-methyl-5-phenyl adamantane.

Especially preferred compounds are 1-amino-3,5-dimethyl adamantane, 1-amino-3,5-diethyl adamantane, i.e., compounds wherein $R_1$, $R_2$ and $R_5$ are hydrogen, and compounds wherein $R_1$ and $R_5$ are hydrogen, $R_2$ is methyl or ethyl, and $R_3$ and $R_4$ are methyl such as, for example, 1-N-methylamino-3,5-dimethyl adamantane and 1-N-ethylamino-3,5-dimethyl adamantane.

The adamantane derivatives of formula (I) may be applied as such or in the form of their pharmaceutically-acceptable acid addition salts including, for example, the hydrochlorides, hydrobromides, sulfates, acetates, succinates or tartrates, or their acid addition salts with fumaric, maleic, citric, or phosphoric acids.

The compounds of formula (I) are administered in suitable form in doses ranging from about 0.01 to 100 mg/kg. Appropriate presentation forms are, for example, combinations of the active substance with common pharmaceutical carriers and adjuvants in the form of tablets, coated tablets, and sterile solutions or suspensions for injection. Pharmaceutically-acceptable carriers are, for example, lactose, sucrose, sorbitol, talc, stearic acid, magnesium stearate, gum arabic, corn starch, or cellulose, combined with diluents such as water, polyethylene glycol, etc. Solid presentation forms are prepared according to common methods and may contain up to 50 mg of the active ingredient per unit.

The efficacy of the compounds of formula (I) is described in the following pharmacological tests.

A. Displacement of TCP Binding

Phencyclidine (PCP), a known NMDA antagonist, binds to the NMDA receptor-associated ionic channel and blocks ionic transport (Garthwaite & Garthwaite, Neurosci. Lett. 83, 1987, 241–246). Additionally, PCP has been shown to prevent the destruction of brain cells after cerebral ischemia in rats (Sauer et al., Neurosci. Lett. 91, 1988, 327–332).

The interaction between compounds of formula (I) and the PCP bond is studied in the following. In this test $^3$H-TCP, a PCP analogue, is used.

A membrane preparation of rat cortex is incubated with $^3$H-TCP which is an analogue of phencyclidine (PCP) (Quirion & Pert 1982, Eur. J. Pharmacol. 83:155).

5,061,703

5

The interaction with the TCP binding is assessed for test compound no. 1 (1-amino-3,5-dimethyl adamantane) in a competitive experiment. This test shows that compound no. 1 is very effective in displacing TCP from the bond. The $IC_{50}$ value is 89 nM. The conclusion can be drawn that compound no. 1 binds to NMDA receptor channels at the same site as the NMDA antagonist PCP.

### B. Blocking of NMDA Receptor Channels

In the following test it is shown that the compounds of formula (I) according to the invention are as effective as PCP in blocking the NMDA receptor channel.

In the patch-clamp experiment, the current flowing through NMDA-activated membrane channels of cultivated spinal marrow neurons (mouse) is measured (Hamill et al 1981, Pflügers Arch. 312: 85–100). After application of 20 $\mu$M NMDA, the current signal of the cell is integrated for 20 sec. and recorded as a control answer ($A_c$). During succeeding application of 20 $\mu$M NMDA and 6 $\mu$M of an adamantane derivative, the intensity of the substance effect can be determined as a relative change of the control answer ($A/A_c$—A=test answer).

The results are summarized in the following Table 1:

#### TABLE 1

| Compound no. | 1-A/Ac | n |
|---|---|---|
| 1 | 0.66 ± 0.05 | 14 |
| 2 | 0.44 ± 0.05 | 7 |
| 3 | 0.58 ± 0.07 | 7 |
| 4 | 0.50 ± 0.11 | 5 |
| 5 | 0.56 ± 0.07 | 7 |
| 6 | 0.38 ± 0.05 | 7 |
| 7 | 0.25 ± 0.04 | 11 |
| 8 | 0.50 ± 0.03 | 6 |
| PCP | 0.50 ± 0.04 | 7 |
| MK-801 | 0.60 ± 0.05 | 22 |

The values are given as means ± SEM.

As can be seen from the results, the aminoadamantane derivatives of formula (I) are able to block the NMDA receptor channel as has been described for PCP (Bertolini et al., Neurosci. Lett. 84, 1988, 351–355) and for 5-methyl-10,11-dihydro-5H-dibenzo[a,d]cycloheptene-5,10-imine (MK-801) (EP-A 0 264 183).

### C. Anticonvulsive Effect

4, 12, 36, 108 and 324 mg/kg of the test substance is administered to mice by the intraperitoneal route (5 animals per dose). The supermaximum electroshock test is applied forty (40) minutes after application of the substance to investigate the anti-convulsive potential of the substance. The protected animals are added over all dosages (score; maximum=25 animals).

The results are given in the following Table 2.

#### TABLE 2

| Compound no. | Anticonvulsive action (score) | Mean | ED50 (mg/kg) |
|---|---|---|---|
| 1 | 18 | | |
| | 16 | | |
| | 16 | | |
| | 15 | 16.3 | 16 |
| 2 | 15 | | |
| | 14 | | |
| | 12 | 13.7 | 30 |
| 4 | 16 | | |
| | 16 | | |
| | 11 | 14.3 | 24 |
| 5 | 17 | | |

6

#### TABLE 2-continued

| Compound no. | Anticonvulsive action (score) | Mean | ED50 (mg/kg) |
|---|---|---|---|
| | 17 | 17.0 | 13 |
| Standards: | | | |
| PCP | 19 | 19.0 | 9 |
| MK-801 | 25 | 25.0 | <1 |

The $ED_{50}$ values were estimated according to Litchfield, J. T. and Wilcoxon, F., J. Pharmacol. Exp. Therap. 96, 99–113 (1949).

As can be seen from the above results, aminoadamantane derivatives of formula (I) exhibit a protective effect against electrically induced convulsions. They therefore have an anticonvulsive effect.

### D. Correlation Between Channel-Blocking and Anticonvulsive Action

The correlation between the action of the tested adamantane derivatives 1–8 at the NMDA receptor channel (in vitro) and the anticonvulsive effect (in vivo) has been tested. For this purpose an xy diagram of both test parameters is plotted. It shows that there is a correlation between the blocking of the NMDA receptor channel and the anticonvulsive action of the adamantanes of formula (I).

### E. Protection Against Cerebral Ischemia

Both carotid arteries are occluded in rats for 10 minutes. At the same time the blood pressure is reduced to 60-80 mg Hg by withdrawal of blood (Smith et al. 1984, Acta Neurol. Scand. 69: 385, 401). The ischemia is terminated by opening the carotids and reinfusion of the withdrawn blood. After seven days the brains of the test animals are histologically examined for cellular changes in the CAI–CA4 region of the hippocampus, and the percentage of destroyed neurons is determined. The action of test compound No. 1 is determined after a single administration of 5 mg/kg and 20 mg/kg one (1) hour prior to the ischemia.

The results are summarized in the following Table 3:

#### TABLE 3

| Area | Control | Test compound no. 1 5 mg/kg (n = 5) | 20 mg/kg (n = 6) |
|---|---|---|---|
| CA1 | 80.2 ± 1.5 | 83.0 ± 2.2 | 53.1 ± 6.1** |
| CA3 | 3.6 ± 1.1 | 7.3 ± 1.8 | 2.7 ± 1.0 |
| CA4 | 1.4 ± 0.4 | 3.7 ± 1.7 | 0.6 ± 0.3 |

The values are given in percent of damaged neurons ± SEM. Significance of the mean difference: **p < 0.01 (U test)

The results show that the reduction of the post-ischemic neuronal brain damage in the CA1 region of the rat hippocampus is statistically significant after the pre-ischemic application of 20 mg/kg of test compound no. 1. Physiological parameters (e.g. blood pressure, body temperature) are not affected by the treatment. Moreover, the results show that the compounds according to formula (I) exhibit a neuroprotective action in cerebral ischemia.

Essentially the same result is attained by employing the compounds of the other Examples, especially those designated test compounds 2–8.

### F. Protection Against NMDA-Induced Mortality

It is well known that, subsequent to cerebral ischemia, glutamate and aspartate levels increase massively in the brain. These excitatory aminoacids overstimulate

5,061,703

<table>
<tr><td>7</td><td>8</td></tr>
</table>

the NMDA-subtype of the glutamate receptor thus leading to delayed neuronal death. A similar pathophysiological situation is obtained when mice are administered intraperitoneally with 200 mg/kg NMDA. This high dose will eventually cause 100% mortality in the animals (Leander et al. 1984, Brain Res. 448; 115–120). We have found that the adamantane derivatives of the present invention are protective against the NMDA-induced mortality.

| Compound No. | Dose mg/kg | Protected Animals |
|---|---|---|
| 1 | 50 | 8/8 |
|  | 25 | 6/8 |
|  | 10 | 3/8 |
| 3 | 50 | 6/8 |
|  | 25 | 4/8 |
| 4 | 50 | 7/8 |
|  | 25 | 5/8 |
| 5 | 25 | 5/8 |

In the control animals, to which no adamantane was administered, the mortality was eight (8) animals out of eight (8).

### G. Displacement of [³H] MK-801 Binding in Human Brain Tissue

MK-801 binds to the ion channel associated with the NMDA receptor, as well as TCP does. This binding site is thought to mediate the neuroprotective effects of non-competitive NMDA-antagonists.

We have investigated whether the adamantane derivatives of the present invention are active at the MK-801 binding site. Tissue from frontal cortex was taken from patients at autopsy and homogenates were prepared. Inhibition of specific [³H] MK-801 binding (3 nM) by the test compounds was determined (see e.g. Kornhuber et al. 1989, Eur. J. Pharmacol. 166: 589–590).

The test compounds were highly potent in displacing MK-801 binding, thus indicating a specific interaction with the NMDA receptor channel and predicting neuroprotective properties.

| Compound No. | Ki nM |
|---|---|
| 1 | 536 |
| 3 | 598 |
| 4 | 189 |
| 5 | 1607 |

wherein $K_i$ is the inhibition constant and nM is nanomoles per liter. Mean values from triplicate experiments are given ± S.E.M.

The inhibition constant Ki is approximately equal to the concentration of the adamantane in nM required to displace 50% of the MK-801 specifically bound to the receptor. In this regard, memantine (Compound No. 1) was found to be the most potent compound subjected to this test, when compared with thirteen (13) other clinically-used and centrally-acting drugs, as reported in the foregoing publication.

The invention is further described by the following illustrative examples, which are not to be construed as limiting:

### EXAMPLE 1

Injectable Solution

For preparing a 0.5% solution, dissolve 0.5% active ingredient and 0.8% sodium chloride (DAB 9) in doubly distilled water. Filter the solution through an anti-

microbial filter, fill into 2-ml ampoules and sterilize for 20 minutes at 120° C. in an autoclave.

### EXAMPLE 2

Solution

Dissolve 1% of active agent in demineralized water. Filter the solution before filling.

### EXAMPLE 3

Tablets

| 1 tablet contains: |  |  |
|---|---|---|
| Active ingredient | 10.0 | mg |
| Lactose | 67.5 | mg |
| Microcrystalline cellulose | 18.0 | mg |
| Talc | 4.5 | mg |
|  | 100.0 | mg |

The substances are mixed and the mixture compressed into 100-mg tablets in a direct tableting procedure without granulation.

### EXAMPLE 4

Coated Tablets

Prepare 6-mm tablet cores of 100 mg as described under "Tablets". Coat the tablets in a sugar-coating process by coating the core with a sugar suspension first, followed by staining with a colored syrup and polishing.

The tablet coating consists of:

| Sugar | 65.0 | mg |
|---|---|---|
| Talc | 39.0 | mg |
| Calcium carbonate | 13.0 | mg |
| Gum arabic | 6.5 | mg |
| Corn starch | 3.7 | mg |
| Shellac | 1.1 | mg |
| Polyethylene glycol 6000 | 0.2 | mg |
| Magnesia usta | 1.3 | mg |
| Dye | 0.2 | mg |
|  | 130.0 | mg |

Total tablet weight: 230 mg

### EXAMPLE 5

For preparing a 0.01% infusion solution, dissolve 0.01% of active ingredient and 5% levulose in doubly-distilled water. Filter the solution through an antimicrobial filter, fill into 500-ml infusion bottles, and sterilize.

The example provides 50 mg of active substance per single dose.

### EXAMPLE 6

Synthesis of 1-Amino-3-isopropyl Adamantane Hydrochloride (Test Compound No. 3)

A. Preparation of Adamantane Methyl Carboxylate (I)

Stir 1.0 mol of adamantane carboxylic acid in 600 ml of methanol. Under ice cooling, drop 1.53 mol of acetyl chloride into the solution within 1 h. Remove the ice bath, and allow the reaction mixture to reach room temperature. Subsequently, heat for 3 hrs under reflux. Evaporate the reaction mixture to dryness under vacuum and distill. (Yield: 97%).

5,061,703

9

10

## B. Preparation of Isopropyl Adamantane (II)

Introduce 0.5 mol of magnesium chips into 50 ml of absolute ether, and drop 0.5 mol of methyl iodide into the solution under moisture-free conditions until the ether boils. Subsequently, heat in a water bath until the magnesium has completely dissolved. Into this solution at room temperature drop 0.2 mol of adamantane methyl carboxylate in absolute ether. Then heat to reflux for 3 hours. After cooling, hydrolize with ice and mix with ammonium chloride solution until the precipitate has dissolved. Separate the ether phase, wash the aqueous phase with 2 portions of ether, and wash the combined organic phases with sodium bicarbonate solution. Then dry and evaporate to dryness under vacuum. (Yield: 93%).

## C. Preparation of Isopropene Adamantane (III)

Stir 0.25 mol of isopropyl adamantane (II) in 500 ml acetic anhydride for 12 hours at 160° C. Subsequently, pour the reaction mixture onto 1 liter of ice water and extract with ether. Dry the combined organic phases with magnesium sulfate, filter, and evaporate to dryness under vacuum. Distill the residue under vacuum. (Yield: 66%).

## D. Preparation of Isopropyl Adamantane (IV)

Dissolve 0.074 mol of adamantyl isopropene (III) in 100 ml of absolute ethanol. Add 4 g of palladium (5% on activated carbon) and hydrate under stirring for 24 hrs at room temperature. Subsequently, filter off the catalyst, and remove the solvent under vacuum. (Yield: 91%).

## E. Preparation of 1-Bromo-3-isopropyl Adamantane (V)

Mix 0.034 mol of isopropyl adamantane (IV) with a ten times excess of bromine (0.33 mol). Heat slowly and stir under reflux for 4 h. Subsequently, allow to cool and pour onto ice water. Decompose the excess bromine with sodium sulfite until the aqueous solution has discolored. Then extract with ether, wash the combined organic phases with sodium bicarbonate solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 83%).

## F. Preparation of 1-N-formyl-3-isopropyl Adamantane (VI)

Heat 0.028 mol of 1-bromo-3-isopropyl adamantane (V) with 40 ml of formamide to reflux for 12 hrs. After cooling, pour the reaction mixture onto water and extract with dichloromethane. Dry the combined organic phases with magnesium sulfate, filter and evaporate to dryness under vacuum. (Yield: 82%).

## G. Preparation of 1-Amino-3-isopropyl Adamantane Hydrochloride

Mix 0.023 mol of 1-N-formyl-3-isopropyl adamantane (VI) with 100 ml of 15% hydrochloric acid and heat to boiling for 24 hours. After cooling, filter the precipitate and recrystallize from isopropanol. (Yield: 57%).

## EXAMPLE 7

### Synthesis of 1-Amino-3-cyclohexyl Adamantane Hydrochloride (Test Compound No. 7)

#### A. Preparation of 1-Phenyl Adamantane (I)

Heat 0.068 mol of iron(III) chloride to boiling in 20 ml of absolute benzene. Drop 0.0186 mol of 1-bromo-adamantane, dissolved in 30 ml of absolute benzene, to the solution. Then heat to boiling for 3 hrs. After cooling, pour the reaction mixture onto ice/hydrochloric acid, separate the organic phase, and extract the aqueous phase with two portions of benzene. Wash the combined organic phases with water, dry with calcium chloride, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 80%).

#### B. Preparation of 1-Hydroxy-3-phenyl Adamantane (II)

To a solution of 0.03 mol chromiumtrioxide in 20 ml glacial acetic acid and 20 ml acetic anhydride, add 0.0095 mol of 1-phenyl adamantane at 0° C. and stir for 24 hours at 4° C. Pour the reaction mixture onto water and extract with three portions of pentane. Wash the organic phase with saturated sodium chloride solution, dry over magnesium sulfate, filter and evaporate to dryness under vacuum. Hydrolize the residue with 20 ml of 2N NaOH and 50 ml of methanol. Subsequently, remove the methanol under vacuum and dilute the residue with water. Then extract with three portions of ether. Dry the organic phase, filter and evaporate to dryness under vacuum. Recrystallize the residue from cyclohexane. (Yield: 50%).

Ref.: H. Stetter, M. Schwarz, A. Hirschhorn, Chem. Ber. (1959), 92, 1629–35.

#### C. Preparation of 1-Bromo-3-phenyl Adamantane (III)

Stir 0.03 mol of 3-phenyl adamantanol (II) with 100 ml of 40% HBr in glacial acetic acid for 20 min at 60° C. and 30 min at room temperature. Subsequently, dilute the reaction mixture with water and extract with ether. Wash the combined organic extracts with sodium chloride solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 68%).

Ref.: W. Fischer, C. A. Grog, Helvetica Chim. Acta (1976), 59, 1953.

#### D. Preparation of 1-N-formyl-3-phenyl Adamantane (IV)

Heat 0.03 mol of 1-bromo-3-phenyl adamantane (III) with 50 ml of formamide for 12 hrs to reflux. After cooling, pour the reaction mixture onto water and extract with dichloromethane. Dry the combined organic phases with magnesium sulfate, filter and evaporate to dryness under vacuum. (Yield: 80%).

#### E. Preparation of 1-Amino-3-phenyl Adamantane Hydrochloride (V)

Heat 0.02 mol of 1-N-formyl-3-phenyl adamantane (IV) with 100 ml of 15% hydrochloric acid at reflux for 24 hours. After cooling, filter the precipitate and recrystallize from isopropanol. (Yield: 60%).

#### F. Preparation of 1-Amino-3-cyclohexyl Adamantane (VI)

Dissolve 0.011 mol of 1-amino-3-phenyl adamantane (V) in 150 ml glacial acetic acid, mix with 0.3 g of platinum oxide (1% on activated carbon) and hydrate in a

5,061,703

<table>
<tr><td>11</td><td>12</td></tr>
</table>

Parr apparatus at 35° C. at a hydrogen pressure of 3 bar. Subsequently, remove the catalyst by filtration and evaporate the filtrate to dryness. Take up the residue in methanol and precipitate the product with ether. Suck off and dry. (Yield: 70%).

## EXAMPLE 8

Synthesis of 1-Amino-3,5-dimethyl-7-ethyl Adamantane Hydrochloride (Test Compound No. 8)

A. Preparation of 1-Bromo-3,5-dimethyl Adamantane (I)

Mix 0.5 mol of 1,3-dimethyl adamantane with a ten times excess of bromine (5 mol). Slowly heat and stir for 4 hrs under reflux. Subsequently, allow to cool and pour onto ice water. Decompose the excess bromine with sodium sulfite until discoloration of the aqueous solution. Then extract with ether, wash the combined organic phases with sodium bicarbonate solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 83%).

B. Preparation of 1-(2-Bromoethyl)-3,5-dimethyl Adamantane (II)

Mix 1.4 mol of 1-bromo-3,5-dimethyl adamantane (I) in hexane with 0.6 mol of aluminum bromide at −75° C. Subsequently, pass ethylene through the solution for 20–30 minutes, stir for 5 min., and pour the reaction mixture onto ice water. Extract with ether, dry the organic phase and evaporate to dryness. Recrystallize the residue from methanol. (Yield: 48%).

C. Preparation of 1,3-Dimethyl-5-ethyl Adamantane (III)

Dissolve 0.5 mol of 1-(2-bromoethyl)-3,5-dimethyl adamantane (II) in toluene, mix with 0.55 mol of sodium-bis(2-methoxy-ethoxy)dihydro aluminate, and heat to boiling for 3 hrs. After hydrolysis, separate the organic phase, dry with magnesium sulfate, and evaporate to dryness under vacuum. Purify the residue by vacuum distillation. (Yield: 86%).

D. Preparation of 1-Bromo-3,5-dimethyl-7-ethyl Adamantane (IV)

Mix 0.4 mol of 1,3-dimethyl-5-ethyl adamantane (III) with a ten times excess of bromine (4 mol). Heat slowly and stir for 4 hrs under reflux. Subsequently allow to cool and pour onto ice water. Decompose the excess bromine with sodium sulfite until discoloration of the aqueous solution. Then extract with ether, wash the combined organic phases with sodium bicarbonate solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 86%).

E. Preparation of 1-N-formyl-3,5-dimethyl-7-ethyl Adamantane (V)

Heat 0.2 mol of 1-bromine-3,5-dimethyl-7-ethyl adamantane (IV) with 150 ml of formamide at reflux for 12 hrs. After cooling, pour the reaction mixture onto water and extract with dichloromethane. Dry the combined organic phases with magnesium sulfate, filter and evaporate to dryness under vacuum. (Yield: 82%).

F. Preparation of 1-Amino-3,5-dimethyl-7-ethyl Adamantane Hydrochloride (VI)

Mix 0.2 mol of 1-N-formyl-3,5-dimethyl-7-ethyl adamantane (V) with 100 ml of 15% hydrochloric acid and heat to boiling for 24 hrs. After cooling, filter the precipitate and recrystallize from isopropanol. (Yield: 57%).

## EXAMPLE 9

Synthesis of 1-N-methylamino-3,5-dimethyl Adamantane (Test Compound No. 5)

Dissolve 0.1 mol of the appropriately substituted amino adamantane (1-amino-3,5-dimethyl adamantane) with 0.15 mol of chloromethyl formate and potassium carbonate in acetone and heat to reflux for 8 hrs. After cooling, filter the solution, remove the solvent and dry the residue. Mix the raw product (0.05 mol) with 0.1 mol of sodium-bis-(2-methoxy-ethoxy)-dihydro aluminate in toluene and heat at reflux for 3 hrs. After cooling, hydrolize with dilute HCl, dry the organic phase and evaporate to dryness. Purify the raw material by distillation.

## EXAMPLE 10

Synthesis of 1-Amino-3-ethyl-5-phenyl Adamantane

A. Preparation of 1-Bromo-3-ethyl Adamantane (I)

Mix 0.034 mol of ethyl adamantane with a ten times excess of bromine (0.33 mol). Heat slowly and stir under reflux for 4 hrs. Then allow to cool and pour onto ice water. Decompose the excess bromine with sodium sulfite until discoloration of the aqueous solution. Subsequently extract with ether, wash the combined organic phases with sodium bicarbonate solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 83%).

B. Preparation of 1-Ethyl-3-phenyl Adamantane (II)

Heat 0.068 mol of iron(III) chloride in 20 ml of absolute benzene to boiling. Drop 0.0186 mol of 1-bromo-3-ethyl adamantane (I), dissolved in 30 ml of absolute benzene, into the solution. Then heat at reflux for 3 hrs. After cooling, pour the reaction mixture onto ice/hydrochloric acid, separate the organic phase, and extract with two portions of benzene. Wash the combined organic phases with water, dry with calcium chloride, filter and evaporate to dryness. Recrystallize the residue from methanol. (Yield: 80%).

C. Preparation of 1-Ethyl-3-hydroxy-5-phenyl Adamantane (III)

To a solution of 0.03 mol of chromiumtrioxide, in 20 ml glacial acetic acid and 20 ml acetic anhydride, add 0.0095 mol of 1-ethyl-3-phenyl adamantane (II) at 0° C. and stir for 24 hours at 4° C. Pour the reaction mixture into water and extract with three portions of pentane. Wash the organic phase with saturated sodium chloride solution, dry over magnesium sulfate, filter and evaporate to dryness under vacuum. Hydrolize the residue with 20 ml of 2N NaOH and 50 ml of methanol. Remove the methanol under vacuum and dilute the residue with water. Then extract with three portions of ether. Dry the organic phase, filter and evaporate to dryness under vacuum. Recrystallize the residue from cyclohexane. (Yield: 50%).

Ref.: H. Stetter, M. Schwarz, A. Hirschhorn, Chem. Ber. (1959), 92, 1629–35.

5,061,703

13

14

### D. Preparation of 1-Bromo-3-ethyl-5-phenyl Adamantane (IV)

Stir 0.03 mol of 1-ethyl-3-hydroxy-5-phenyl adamantane (III) with 100 ml of 40% HBr in glacial acetic acid for 20 min at 60° C. and for 30 min at room temperature. Subsequently dilute the reaction mixture into water and extract with ether. Wash the combined organic extracts with sodium chloride solution, dry with magnesium sulfate, filter and evaporate to dryness under vacuum. Recrystallize the residue from methanol. (Yield: 68%).

Ref.: W. Fischer, C. A. Grog, Helvetica Chim. Acta (1976), 59, 1953.

### E. Preparation of 1-N-formyl-3-ethyl-5-phenyl Adamantane (V)

Heat 0.03 mol of 1-ethyl-3-hydroxy-5-phenyl adamantane (IV) with 50 ml of formamide for 12 hrs at reflux. After cooling, pour the reaction mixture into water and extract with dichloromethane. Dry the combined organic phases with magnesium sulfate, filter and evaporate to dryness. (Yield: 80%).

### F. Preparation of 1-Amino-3-ethyl-5-phenyl Adamantane Hydrochloride (VI)

Heat 0.02 mol of 1-N-formyl-3-ethyl-5-phenyl adamantane (V) with 100 ml of 15% hydrochloric acid for 24 hrs at reflux. After cooling, filter the precipitate and recrystallize from isopropanol. (Yield: 60%).

It is thus seen that certain adamantane derivatives, some of which are novel, have been provided for the prevention and treatment of cerebral ischemia, and that pharmaceutical compositions embodying such an adamantane derivative have been provided for use in the prevention and treatment of cerebral ischemia, the amount of the said adamantane derivative provided in either case being a cerebral ischemia-alleviating or preventive amount.

Various modifications and equivalents will be apparent to one skilled in the art and may be made in the compounds, compositions, methods, and procedures of the present invention without departing from the spirit or scope thereof, and it is therefore to be understood that the invention is to be limited only by the full scope which can be legally attributed to the appended claims.

We claim:

1. A method for the prevention or treatment of cerebral ischemia comprising the step of administering, to a patient in need thereof, an effective amount of an adamantane derivative of the general formula



(I)

wherein

$R_1$ and $R_2$ are identical or different and represent hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein

$R_3$ and $R_4$ are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein

$R_5$ is hydrogen or a straight or branched $C_1$–$C_6$ alkyl group,

or a pharmaceutically-acceptable salt thereof.

2. A method according to claim 1, wherein $R_1$, $R_2$ and $R_5$ are hydrogen.

3. A method according to claim 2, wherein $R_1$, $R_2$ and $R_5$ are hydrogen, and $R_3$ and $R_4$ are methyl.

4. A method according to claim 2, wherein $R_1$, $R_2$ and $R_5$ are hydrogen, and $R_3$ and $R_4$ are ethyl.

5. A method according to claim 1, wherein $R_1$, $R_2$, $R_4$ and $R_5$ are hydrogen, and $R_3$ is ethyl, isopropyl, or cyclohexyl.

6. A method according to claim 1, wherein $R_2$ and $R_5$ are hydrogen.

7. A method according to claim 6, wherein $R_3$ and $R_4$ are methyl, $R_2$ and $R_5$ are hydrogen and $R_1$ is methyl or ethyl.

8. A method according to claim 1, wherein $R_1$ and $R_2$ are hydrogen.

9. A method according to claim 8, wherein $R_1$ and $R_2$ are hydrogen, $R_3$ is ethyl, and $R_5$ and $R_4$ are methyl.

10. A method according to claim 1 for the treatment of Alzheimer's disease.

11. A method of claim 1, wherein the adamantane derivative is administered in an effective cerebral ischemia-alleviating or preventive amount.

12. A method of claim 11, wherein the adamantane derivative is administered in the form of a composition containing the same together with a pharmaceutically-acceptable carrier or diluent.

13. A method according to claim 11, wherein the adamantane derivative is administered in an amount effective to prevent degeneration and loss of nerve cells after ischemia.

*  *  *  *  *

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 5,061,703 C1                                    Page 1 of 1
APPLICATION NO. : 90/007176
DATED              : November 7, 2006
INVENTOR(S)      : Joachim Bormann et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Claim 1, line 56: delete "wherein" and substitute --*wherein*--.

Claim 1, line 57: delete "$R_4$ *and*" and substitute --$R_4$, *and*--.

Claim 1, line 58: delete "*simultaneously;*" and substitute --*simultaneously,*--.

Claim 10, line 62: delete "disease *wherein*" and substitute --disease, *wherein*--.

Claim 18, line 64: delete "in" and substitute --is--.

Signed and Sealed this

Fifth Day of June, 2007



JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# EXHIBIT B



US005061703C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (5595th)

# United States Patent
Bormann et al.

(10) **Number:** US 5,061,703 C1

(45) **Certificate Issued:** Nov. 7, 2006

(54) ADAMANTANE DERIVATIVES IN THE PREVENTION AND TREATMENT OF CEREBRAL ISCHEMIA

(75) Inventors: **Joachim Bormann**, Frankfurt (DE); **Markus R. Gold**, Nauheim (DE); **Wolfgang Schatton**, Eschborn (DE)

(73) Assignee: **Merz Pharma GmbH & Co. KGaA**, Frankfurt am Main (DE)

**Reexamination Request:**
No. 90/007,176, Aug. 18, 2004

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | 5,061,703 |
| Issued: | Oct. 29, 1991 |
| Appl. No.: | 07/508,109 |
| Filed: | Apr. 11, 1990 |

(30)    **Foreign Application Priority Data**

Apr. 14, 1989  (EP) ............................................... 89106657

(51) Int. Cl.
| | |
|---|---|
| *A61K 31/55* | (2006.01) |
| *A61K 31/445* | (2006.01) |
| *A61* 31/41 | (2006.01) |

(52) U.S. Cl. .................. 514/212.01; 514/325; 514/359

(58) Field of Classification Search ............ 514/212.01, 514/325, 359
See application file for complete search history.

(56)    **References Cited**

U.S. PATENT DOCUMENTS

3,450,761 A    6/1969   Schneider

FOREIGN PATENT DOCUMENTS

| EP | 0293974 | 12/1988 |
|---|---|---|
| JP | 58-4718 | 1/1983 |

OTHER PUBLICATIONS

Translation of: Rote Liste 63 008 (1983).
Translation of: Rote Liste 63 009 (1984).
Translation of: Rote Liste 63 008 (1985).
Translation of: Rote Liste 63 005 (1987).
Translation of: Rote Liste 63 005 (1988).
Translation of: Rote Liste 63 006 (1989).
Translation of: Akatinol® Memantine Labeling (Apr. 1984).
Translation of: Akatinol® Memantine Labeling (Feb. 1988).
Translation of: Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 1839–1840 (255*th* ed. 1986).
Translation of: Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 1384 (255*th* ed. 1986).
Translation of: Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 808 (255*th* ed. 1986).
Translation of: Deutsche medizinische Wochenschrift [German Medical Weekly] 109: 987–990 (1984).
Fünfgeld et al., II*th* C.I.N.P. Congress, Munich, 27.23.08, p. 180 (Aug. 15–18, 1988).
Adolfsson et al., Aging vol. 7, pp. 441–451 (1978).

Castaigne et al., La Nouvelle Presse Médicale, *Etude clinique de l'action psycho-stimulante de l'amantadine*, 3(26):1663–1664 (Jun. 29, 1974).
Costall B. and Naylor R.J. (1975). Neuropharmacological studies on D 145 (1,3 dimethyl–5–aminoadamantan). Psychopharmacologia (Berl.) 43:53–61.
Fischer P.A., Jacobi R., Scheider E. and Schonberger B. (1977). Die Wirkung Intravenoser Gaben von Memantin bei Parkinson–Kranken. Arzneim. Forsch/Drug. Res. 27 (II) Nr. 7, 1487.
Maj J., Sowinska H., Baran L. and Samek J. (1974). Pharmacological effects of 1,3–dimethyl–5–aminoadamantane, a new Adamantane derivative. Europ. J. Pharmacology 26, 9–14.
Schubert & Fleischhacker, Arztliche Praxis, XXXI, No. 46, vol. 9, pp. 2157–2160 (Jun. 1979).
Erkulwater and Pillai, Southern Med. J., 82: 550–553 (May 1989).
Moos, Medicinal Research Reviews; 8: 353–91 (1988).
Sieb et al., Dtch. Med. Wschr.; 112: 769–72 (1987).
Danielczyk, Psychiatria Danubina; 1: 71–75 (1989).
Kugler, Munich. Med. Wschr.; 127: 974–77 (1985).
Stetzer, Med. Welt; 35: 291–295 (Mar. 2, 1984).
Wallnofer and Schiller, Med. Welt; 25: 703–706 (1974).
Pandeya, Indian J. Pharmacy; 33: 1–9 (Jan.–Feb. 1971).
Bruseghini et al., II* renunion luso–espagnole de pharmacologie, II Congreso Nacitonal de Quimica Terapeutica; Madrid (1982).

(Continued)

*Primary Examiner*—Kevin E. Weddington

(57)    **ABSTRACT**

A method for the prevention and treatment of cerebral ischemia using an adamantane derivative of the formula

(I)

$$
\begin{array}{c}
R_1 \quad \quad R_2 \\
N \\
\\
R_3 \quad \quad \quad R_5 \\
\\
R_4
\end{array}
$$

wherein

$R_1$ and $R_2$ are identical or different, representing hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein

$R_3$ and $R_4$ are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein

$R_5$ is hydrogen or a straight or branched $C_1$-$C_6$ alkyl group,

or a pharmaceutically-acceptable salt thereof, is disclosed.

# US 5,061,703 C1
Page 2

## OTHER PUBLICATIONS

Burkhard et al., Institute of Chemical Technology Prague, pp. 91–97 (1973).

Meldrum et al., Naunyn–Schmiedeberg's Arch Pharmacol, 332:93–97 (1986).

Chojnacka–Wojcik et al., Pol. J. Pharmacol. Pharm. 35: 511–515 (1983).

Falbe et al., Rompp Chemie Lexikon, pp. 141, 151 (1989).

Berkow, Merck Manual, 14th ed. pp. 1324–1331(1982).

Otomo, Journal of Clinical Medicine, 7:127–132 (1988).

Tempel, D. Therapiewoche, 39 (14): 946–952 (Apr. 2, 1989).

Schäfer & Thiery, Psycho, 10:851–852 (1984).

Fröstl & Maitre, Pharmacopsychiat., 22: 54–100 (Supplement) (1989).

Koch, "Pharmakologie von Memantine" (1987).

Zimmerman, "Memantine—Ein neues Prinzip in der Geriatrie" (1987).

Tempel, "Ergebnisse einer Pilotuntersuchung mit zwei Dosisstufen von Memantine in der Geriatrie" (1988).

Tempel, "Memantine—Klinische Prüfungen in der Geriatrie" (1987).

Marcea, "Kooperationsmöglichkeiten zwischen Klinik und niedergelassenen Ärzten bei der Rehabilitation von Alterspatientien" (1987).

Rote Liste 63 008 (1983).

Rote Liste 63 009 (1984).

Rote Liste 63 008 (1985).

Rote Liste 63 005 (1987).

Rote Liste 63 005 (1988).

Rote Liste 63 006 (1989).

Akatinol® Memantine Labeling (Apr. 1984).

Akatinol® Memantine Labeling (Feb. 1988).

Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 1839–1840 (255th ed. 1986).

Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 1384 (255th ed. 1986).

Pschyrembel Klinisches Worterbuch [Clinical Dictionary] 808 (255th ed. 1986).

Olney et al., *European Journal of Pharmacology* 142:319–320 (1987).

Deutsche medizinische Wochenschrift [German Medical Weekly] 109: 987–990 (1984).

SCIENCE, vol. 226, pp. 850–852 (1984).

Cotman et al., Annual Review of Neuroscience, 11:61–80 (1988).

Rothman & Olney, Annals of Neurology, 19(2):108 (Feb. 1986).

Kemp et al., TINS, 10(7):294–298 (1987).

EP Application No. 89106657 (originally filed application for EP 0392059).

Response from Merz to EPO on Feb. 6, 1992.

EPO Examination Report dated Oct. 21, 1991.

Katzman, Alzheimer's Disease: Senile Dementia and Related Disorders, vol. 7, pp. 197–211 (1978).

Hahn et al., *Proc. Natl. Acad. Sci.*, 85:6556–6560 (1988).

Ingvar et al., Aging vol. 70, pp. 203–211 (1978).

Rote Liste, 63 008 (1986).

Marcea et al. Therapiewoche, 38:3097–3100 (1988).

Fleischhacker et al., Progress in Neuro–Psychopharmacology & Biological Psychiatry, 10:87–93 (1986).

Ambrozi et al., Pharmacopsychiatry, 21:144–146 (1988).

US 5,061,703 C1

**1**

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claims 1 and 10 are determined to be patentable as amended.

Claims 2–9 and 11–13, dependent on an amended claim, are determined to be patentable.

New claims 14–19 are added and determined to be patentable.

1. A method for the prevention or treatment of cerebral ischemia comprising the step of *orally* administering, to a patient *diagnosed with Alzheimer's disease and* in need thereof, an effective amount of an adamantane derivative of the general formula



wherein

R_1 and R_2 are identical or different and represent hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein

R_3 and R_4 are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein

R_5 is hydrogen or a straight or branched C_1–C_6 alkyl group; *and*

wherein

R_1, R_2, R_3, R_4 and R_5 do not all represent hydrogen simultaneously;

or a pharmaceutically-acceptable salt thereof.

10. A method according to claim 1 for the treatment of Alzheimer's disease *wherein said adamantane derivative is* memantine *and said effective amount is from about 0.01 to 100 mg/kg.*

*14. A method for the treatment of cerebral ischemia comprising orally administering to a patient diagnosed with Alzheimer's disease and in need of such treatment an*

**2**

*effective amount of an adamantane derivative of the general formula*

wherein

R_1 and R_2 are identical or different and represent hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein

R_3 and R_4 are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein

R_5 is hydrogen or a straight or branched C_1–C_6 alkyl group; and

wherein

R_1, R_2, R_3, R_4 and R_5 do not all represent hydrogen simultaneously;

or a pharmaceutically-acceptable salt thereof.

*15. The method of claim 14, wherein said adamantane derivative is memantine.*

*16. The method of claim 14, wherein said effective amount is from about 0.01 to 100 mg/kg.*

*17. A method for the treatment of an imbalance of neuronal stimulation after Alzheimer's disease, comprising orally administering to a patient diagnosed with Alzheimer's disease and in need of such treatment an effective amount of an adamantane derivative of the general formula*

wherein

R_1 and R_2 are identical or different and represent hydrogen or a straight or branched alkyl group of 1 to 6 C atoms or, in conjunction with N, a heterocyclic group with 5 or 6 ring C atoms;

wherein

R_3 and R_4 are identical or different, being selected from hydrogen, a straight or branched alkyl group of 1 to 6 C atoms, a cycloalkyl group with 5 or 6 C atoms, and phenyl;

wherein

R_5 is hydrogen or a straight or branched C_1–C_6 alkyl group; and

wherein

R_1, R_2, R_3, R_4, and R_5 do not all represent hydrogen simultaneously,

or a pharmaceutically-acceptable salt thereof.

*18. The method of claim 17, wherein said adamantane derivative in memantine.*

*19. The method of claim 17, wherein said effective amount is from about 0.01 to 100 mg/kg.*

* * * * *