IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FOREST LABORATORIES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DR. REDDY'S LABORATORIES, INC., DR. REDDY'S LABORATORIES LIMITED, GENPHARM IC., GENPHARM, L.P., INTERPHARM HOLDINGS, INC., INTERPHARM, INC., MYLAN PHARMACETICALS INC., RANBAXY, INC., RANBAXY LABORATORIES LIMITED, KENDLE INTERNATIONAL INC., SUN INDIA PHARMACEUTICAL INDUSTRIES LIMITED (a/k/a SUN PHARMACEUTICAL INDUSTRIES LTD.), SYNTHON HOLDING B.V., SYNTHON B.V., SYNTHON LABORATORIES, INC., and SYNTHON PHARMACEUTICALS, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)    C.A. No. 08-52 (GMS)(LPS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SYNTHON DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY AND TO EXTEND
THE TIME TO RESPOND TO SYNTHON'S MOTION TO DISMISS**

*Of Counsel:*
E. Anthony Figg
Joseph A. Hynds
Lisa N. Phillips
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W., Suite 800
Washington, D.C. 20005
Tel:  202-783-6040
Fax:  202-783-6031
efigg@rothwellfigg.com
jhynds@rothwwellfigg.com
lphillips@rothwellfigg.com


Elizabeth M. McGeever (# 2057)
PRICKETT, JONES & ELLIOT, P.A.
1310 King Street
Wilmington, DE  19899
Tel: 302-888-6500
Fax: 302-658-0111
emmcgeever@prickett.com


*Attorneys for Defendants, Synthon Holding
B.V., Synthon B.V., Synthon Laboratories,
Inc. and Synthon Pharmaceuticals, Inc.*

DATED:  April 14, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ............................1

SUMMARY OF THE ARGUMENT ...........................................................................................4

I.    FACTUAL BACKGROUND........................................................................................4

II.   ARGUMENT................................................................................................................7

    A.    PLAINTIFFS HAVE NOT PROVIDED ANY COMPETENT
        EVIDENCE TO WARRANT LEAVE TO TAKE JURISDICTIONAL
        DISCOVERY..........................................................................................................7

        1.    The Applicable Legal Standards.................................................................8

        2.    Plaintiffs Have Failed to Support Their Request for Jurisdictional
                Discovery With Any Basis for Concluding That It Will Enable
                Them to Meet the Heavy Burden of Establishing General
                Personal Jurisdiction ...................................................................................9

    B.    BECAUSE JURISDICTIONAL DISCOVERY IS NOT PROPER HERE,
        PLAINTIFFS SHOULD NOT RECEIVE A LENGTHY EXTENSION
        OF TIME TO RESPOND TO THE SYNTHON ENTITIES' MOTION
        TO DISMISS ........................................................................................................14

CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Aladdin Knowledge Sys. Ltd. v. Feitan Techs. Co.*,
    No. 05-149, slip. op. at 6 (D. Del. Feb. 24, 2006) .............................................................10

*Boone v. Oy Partek AB*, 724 A.2d 1150 (Del. Super. Ct. 1997)................................................9, 12

*Brown v. AST Sports Sci., Inc.*, No. 02-1682
    2002 U.S. Dist. LEXIS 12994 (E.D. Pa. July 1, 2002).......................................................13

*Clark Capital Mgmt. Group, Inc. v. Navigator Invs, LLC*,
    No. 06-2334, 2006 U.S. Dist. LEXIS 66989 (E.D. Pa. Sept. 19, 2006) ............................11

*Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661 (1990) .............................................................2

*Hansen v. Neumueller GmbH*, 163 F.R.D. 471 (D. Del 1995) ............................................8, 10, 11

*Mass. Sch. of Law at Andover, Inc. v. ABA*, 107 F.3d 1026 (3d Cir. 1997) ....................................8

*Merck & Co. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368 (D. Del. 2002).....................................9, 11

*Neary v. B&L Serv.*, No. 04-1072, 2004 U.S. Dist. LEXIS 9922 (E.D. Pa. May 12, 2004) ...........8

*Pfizer, Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666 (M.D.N.C. 2005) ..............................13

*Poe v. Babcock Int'l, Inc.*, 662 F. Supp. 4 (M.D. Pa. 1985) ...........................................................10

*Sanofi-Aventis v. Synthon Holding B.V.*, No. 07-00086,
    slip. op. at 5 (M.D. N.C. Mar. 20, 2008)..........................................................................13

*Telcordia Techs., Inc. v. Alcatel, S.A.*, No. 04-874,
    2005 U.S. Dist. LEXIS 10194 (D. Del. May 27, 2005).................................................8, 14

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)..................................................8

*Veliz v. Americorp Builders, Inc.*, No. 06-4363
    2007 U.S. Dist. LEXIS 43560 (D. N.J. June 15, 2007) .....................................................14

**Page**

**Statutes and Rules**

28 U.S.C. § 1391(c) ................................................................................................................12

Fed. R. Civ. P. 12(b)(2)............................................................................................................1

Fed. R. Civ. P. 12(b)(3)............................................................................................................1

Fed. R. Civ. P. 12(b)(5)............................................................................................................1


**Miscellaneous**

http://www.synthon-usa.com/page.asp?id=1156 ..........................................................................10

http://www.accessdata.fda.gov/scripts/cder/ob/docs/temptn.cfm ..................................................12

Defendants, Synthon Holding B.V. ("Synthon Holding"), Synthon B.V. ("Synthon B.V."), Synthon Laboratories, Inc. ("Synthon Labs"), and Synthon Pharmaceuticals, Inc. ("Synthon Pharms") (collectively, the "Synthon Entities"), respectfully submit this memorandum in opposition to Plaintiffs' motion for leave to take jurisdictional discovery and to extend their time to respond to the Synthon Entities' motion to dismiss. The Synthon Entities oppose the motion, because Plaintiffs have not demonstrated any reason to believe that discovery will reveal additional facts or information that will assist the Court in determining whether any of the Synthon Entities is subject to this Court's jurisdiction. Discovery is unnecessary and will impose substantial expense and burden on the Synthon Entities.

## INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

On January 25, 2008, Forest Laboratories, Inc. ("Forest Labs"), Forest Laboratories Holdings, Ltd. ("Forest Holdings), Merz Pharma GmbH & Co KGaA ("Merz") and Merz Pharmaceuticals GmbH ("Merz Pharms"), (collectively, "Plaintiffs"), filed an initial complaint against various defendants alleging infringement of the '703 patent based on defendants' filings of Abbreviated New Drug Applications ("ANDAs") seeking approval for the manufacture, use and sale of generic memantine hydrochloride tablets. On February 15, 2008, after receiving notice that Synthon Labs had also filed an ANDA containing a Paragraph IV Certification with respect to the '703 patent, Plaintiffs filed an Amended Complaint adding each of the Synthon Entities as a defendant. On March 12, 2008, the Synthon Entities moved to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and improper service pursuant to Fed. R. Civ. P. 12(b)(5). Plaintiffs moved for leave to take jurisdictional discovery and to extend their time to respond to the Synthon Entities' motion to dismiss on March 27, 2008.

1

The Synthon Entities acknowledge that Plaintiffs' burden of supporting their request for discovery is not a heavy one, but disagree that Plaintiffs have carried even that burden. Under the circumstances and facts of this case, their requests are frivolous.

Plaintiffs made generalized, unsupported jurisdictional allegations in their Amended Complaint against the Synthon Entities. The only act of infringement that they allege is that Synthon Labs' filing of its ANDA constituted infringement under 35 U.S.C. § 271(e)(2)(A)—a type of infringement that the Supreme Court has characterized as "artificial." *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676 (1990). Plaintiffs do not and cannot allege that the Synthon Entities have engaged in any commercial activities involving the patented product in Delaware or anywhere else. Thus, Plaintiffs did not allege that the Synthon Entities have engaged in any conduct in this District that gave rise to the cause of action upon which their Amended Complaint is based.

Accordingly, at the time the Amended Complaint was filed, Plaintiffs knew or should have known that if personal jurisdiction over the Synthon Entities existed at all, it would have to be based on principles of general jurisdiction, not specific jurisdiction. Plaintiffs also knew or should have known that the Delaware standards for establishing general jurisdiction are rigorous – requiring a showing that the defendant has continuous and systematic contacts with the State. Yet, despite these requirements, Plaintiffs alleged personal jurisdiction without any evidence that any of the Synthon Entities has an office or other physical presence here, has any employees here, sends sales or other representatives into this state, maintains any bank accounts here, is listed in local telephone directories or has engaged in any other continuous and systematic contacts that could subject it to general jurisdiction.

Now that Plaintiffs' jurisdictional allegations have been challenged, they apparently have scoured the public records in the futile hope of finding evidence of significant contacts between the Synthon Entities and this forum. What they have found, beyond the trivial, sporadic contacts that the Synthon Entities themselves identified in their motion papers, is that for a brief time several years ago, a Synthon company was incorporated in Delaware but shortly thereafter was dissolved and that Synthon Pharms at one time had a distribution agreement with a company that allegedly was, but no longer is, incorporated in Delaware, for a product that Synthon Pharms divested well before this case was initiated. These past contacts are irrelevant to the question of whether any of the Synthon Entities were engaged in continuous and systematic contacts with this District at the time the Amended Complaint was filed.

Plaintiffs try to justify their request for discovery on grounds that they should be able to investigate whether the Synthon Entities' declarants were untruthful or provided incomplete information. But Plaintiffs have offered nothing beyond irrelevant past contacts with this District and unsupported speculation to show that three months of discovery will lead to any information beyond what already is known. Plaintiffs' request for discovery is, therefore, frivolous. These issues are addressed in greater detail below in Section II.A.

With respect to Plaintiffs' request for an extension of time, the Synthon Entities do not, of course, object to a reasonable extension of the time for responding to their motion, if the Plaintiffs require it. What the Synthon Entities did find objectionable was a 90-day extension during which Plaintiffs would demand expensive and unnecessary discovery from domestic and foreign corporations and witnesses.[1] As set forth below in Section II.B., because Plaintiffs have

---

[1] Plaintiffs imply that the Synthon entities were unresponsive to their requests for an extension of time. What they overlook is that their requests came in close proximity to the Easter holiday when decision makers were unavailable

not demonstrated a need for discovery, their request for a 90-day extension also is unwarranted. The Synthon Entities request that this Court set a date ten (10) days after entry of its ruling on the present motion as the due date for Plaintiffs' opposition to the outstanding motion to dismiss.

## SUMMARY OF THE ARGUMENT

(1)    Plaintiffs have not provided any competent evidence that would warrant a period of jurisdictional discovery in this case. Each of the "facts" that they present are either irrelevant, as having had occurred long before this action was commenced, or they are based on speculation that, after a full examination of the actual facts, is easily set aside as unsupported and inaccurate. The contacts with this forum that the Synthon Entities have acknowledged and described in their motion to dismiss and supporting declarations are not sufficient to establish general jurisdiction over any of the domestic or foreign Synthon Entities. Consequently, there is no basis for asserting either an alter-ego or agency theory of jurisdiction over the foreign Synthon Entities.

(2)    Because Plaintiffs have not demonstrated the need for jurisdictional discovery, their request for a lengthy extension of time also is unwarranted.

## I.
## FACTUAL BACKGROUND[2]

On February 15, 2008, after receiving Synthon Labs' Paragraph IV notification against U.S. Patent No. 5,061,703 (the "'703 Patent"), Plaintiffs amended their existing Complaint to add the Synthon Entities as additional defendants. Plaintiff's Motion for Leave to Take

---

because of vacation schedules. Under the circumstances, the Synthon Entities' counsel responded promptly to Plaintiffs' request.

[2]   The facts relating to the jurisdictional issues are set forth in full in the Synthon Entities' memorandum in support of the motion to dismiss (D.I. 48); however, the most pertinent of those facts will be set forth herein. For a detailed recitation of the facts relating to each party and the facts relating to the ANDA at issue here, the Synthon Entities respectfully refer the Court to that memorandum.

Jurisdictional Discovery and to Extend Their Time to Respond to Synthon's Motion to Dismiss ("Opening Brief"), p. 4 (D.I. 60); Amended Complaint, (D.I. 31) ¶ 90.

Synthon Holding is a Dutch company, with its principal place of business in the Netherlands. Amended Complaint, ¶ 16. Synthon Holding was not involved in the development of Synthon Labs' generic memantine hydrochloride product or the preparation and filing of the ANDA, which is the subject of the present litigation. D.I. 48, at Exhibit A, ¶ 7.

Synthon B.V. is also a Dutch company, with its principal place of business in the Netherlands. Amended Complaint, ¶ 17. Synthon B.V. was involved in both the development of the generic memantine hydrochloride product and the preparation and assembly of the ANDA that is the subject of this litigation. D.I. 48, at Exhibit A, ¶¶ 11-12.

Synthon Labs is a Virginia corporation, with its principal place of business in Gainesville, Virginia. Amended Complaint, ¶ 18. Synthon Labs submitted ANDA No. 90-047 seeking approval from the FDA for the manufacture, use and sale of generic memantine hydrochloride tablets, which ANDA is the subject of this litigation, and once that ANDA is approved, will be the sole ANDA holder. D.I. 48, at Exhibit B, ¶ 11. No aspect of the development of the ANDA product, the preparation of the ANDA or its filing occurred in this District. D.I. 48, at Exhibit B, ¶¶ 5-11. Synthon Labs does not sell any products in this District, nor elsewhere in the United States. *Id.*, ¶ 4.

Synthon Pharms is a North Carolina corporation with its principal place of business in North Carolina. Amended Complaint, ¶ 19. Synthon Pharms had very minor involvement with the product at issue. It participated in, *inter alia*, initial consultation with the FDA regarding the studies required to establish bioequivalence to Namenda® and provided, in an advisory role,

review and comment to the ANDA. D.I. 48, at Exhibit C, ¶¶ 7-8. All of those activities occurred in North Carolina, outside of this District. *Id.*, ¶ 9.

On February 20, 2008, Plaintiffs served the Amended Complaint on the Delaware Secretary of State, purportedly pursuant to the Delaware Long Arm Statute, 10 Del. C. § 3104(d). The next day, Plaintiffs sent, *via* registered mail, copies of the Summons and Amended Complaint to each of the Synthon Entities. Synthon Labs received the letter with attachments on February 26, 2008. Declaration of Mailing (as to Synthon Laboratories, Inc.), D.I. 43, at Exhibit B. Synthon Pharms received the letter with attachments on February 27, 2008. Declaration of Mailing (as to Synthon Pharmaceuticals, Inc.), D.I. 45, at Exhibit B. According to the Declaration of Mailing (as to Synthon Holding B.V. and Synthon B.V.) filed on March 31, 2008, each of the foreign defendants, Synthon B.V. and Synthon Holding, received the letter with attachments on March 6, 2008.[3] Declaration of Mailing (as to Synthon Holding B.V. and Synthon B.V.), D.I. 63, at Exhibits C and D.

Just after March 12, 2008, the day the Synthon Entities' filed their motion to dismiss, Plaintiffs requested that the Synthon Entities agree to a period of jurisdictional discovery and a corresponding extension of time to oppose the motion. Opening Brief, p. 11. Plaintiffs made

---

[3]  Shortly before the due date for the Synthon Entities' time to answer or otherwise respond to the Amended Complaint, they sought Plaintiffs' agreement to an extension of time. Apparently anticipating the problems with the jurisdictional allegations in their Amended Complaint, Plaintiffs stated that they would not agree to an extension unless the Synthon Entities agreed not to contest personal jurisdiction. The Synthon Entities refused to agree to those conditions, but did offer that each of them would submit to jurisdiction in the United States District Court for the Eastern District of Virginia ("EDVA"). Plaintiffs' refusal to agree to an extension led to the filing of D.I. 46. In spite of the Synthon Entities' agreement to submit to jurisdiction in the EDVA, Plaintiffs, on March 20, 2008, filed a second suit alleging infringement of the '703 Patent against the Synthon Entities in the United States District Court for the Eastern District of North Carolina. *See* EDNC, Civil Action No. 08-00150. Shortly before filing the North Carolina action, a representative of Plaintiffs' counsel contacted Synthon Labs' President to inquire whether the company held a license to do business in New Jersey. This motion, coupled with the filing of their protective suit in the EDNC and the inquiry regarding contacts with New Jersey, reflect Plaintiffs' obvious resistance to litigating this case in the EDVA's well known "rocket docket." A speedy resolution would result in an earlier introduction of generic competition to Plaintiffs' lucrative Namenda® product.

these requests on March 14 (by telephone), March 19 and March 25 (both *via* e-mail).  *Id.* at

Exhibits D-F.  During that period of time, at least two of the Synthon Entities' attorneys were out

of the office.  Upon their return, and in response to Plaintiffs' request less than three hours

earlier, the Synthon Entities responded on March 25, 2008.  Opening Brief, at Exhibit D.

Plaintiffs then filed, on March 27, 2008, the present motion for leave to take jurisdictional

discovery and to extend their time to respond to the Synthon Entities' motion to dismiss.  This

opposition is timely filed.

## II.
## ARGUMENT

### A.
### PLAINTIFFS HAVE NOT PROVIDED ANY COMPETENT EVIDENCE TO WARRANT LEAVE TO TAKE JURISDICTIONAL DISCOVERY[4]

Although the required showing for jurisdictional discovery does not present a large

hurdle, Plaintiffs do not offer any evidence that justifies the discovery that they seek.  The only

alleged new facts that Plaintiffs offer are irrelevant contacts with this District that ended long

before the Amended Complaint was filed.[5]  The remainder of the offered evidence was set forth

in the Synthon Entities' memorandum in support of their motion to dismiss and the supporting

declarations and is of a character and quantity that courts in this District and others have

previously held to be insufficient to establish general personal jurisdiction.  For at least these

reasons, and the reasons set forth in detail below, Plaintiffs' motion for leave to take

jurisdictional discovery should be denied.

---

[4]  Plaintiffs allege solely that this court has general jurisdiction over the Synthon Entities.  *See* Amended Complaint, ¶¶ 16-19, 22, 34-37.
[5]  Although Plaintiffs state that "judicial economy would be promoted if all of Plaintiffs' claims for infringement of the '703 patent are addressed in this District," it is axiomatic that, for such to occur, this Court must have personal jurisdiction over each of the named Defendants.  Opening Brief, pp. 4-5 n.1.

1.    **The Applicable Legal Standards**

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Telcordia Techs., Inc. v. Alcatel, S.A.*, No. 04-874, 2005 U.S. Dist. LEXIS 10194, at *28 (D. Del. May 27, 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "On the other hand, a court cannot permit discovery as a matter of course simply because a plaintiff has named a particular party as a defendant. The court must be satisfied that there is *some* indication that this particular defendant is amenable to suit in this forum." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del 1995) (emphasis added). Whether or not to provide the plaintiff an opportunity to take jurisdictional discovery is within the court's discretion. *Mass. Sch. of Law at Andover, Inc. v. ABA*, 107 F.3d 1026, 1042 (3d Cir. 1997).

"Where a defendant has submitted an affidavit attesting to a lack of jurisdictional contacts and plaintiff, who has the burden of establishing jurisdictional facts, has countered the affidavits with mere speculation, his request for an opportunity to conduct discovery on the matter must be denied." *Neary v. B&L Serv.*, No. 04-1072, 2004 U.S. Dist. LEXIS 9922, at *3 (E.D. Pa. May 12, 2004) (citation omitted). Importantly, with respect to the foreign defendants, Synthon B.V. and Synthon Holding, "the United States Supreme Court has held that courts should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Telcordia Techs., Inc.*, 2005 U.S. Dist. LEXIS 10194, at *28 (internal quotations and citation omitted). Based on these authorities and Plaintiffs' failure to demonstrate "some indication" that the Synthon Entities are subject to personal jurisdiction in this forum, their motion should be denied.

8

2.    **Plaintiffs Have Failed to Support Their Request for Jurisdictional Discovery With Any Basis for Concluding That It Will Enable Them to Meet the Heavy Burden of Establishing General Personal Jurisdiction**

Plaintiffs refer to activities that the Synthon Entities acknowledged and explained in their own motion papers. Under controlling legal authority, such activities cannot support general jurisdiction. Specifically, Plaintiffs state that "at least two of Synthon's pharmaceutical products are sold in Delaware," citing sales of the products, amlodipine besylate and zolpidem tartrate, through a retail distribution channel into Delaware. Opening Brief, p. 7; at Exhibit A. The Synthon Entities acknowledged that Synthon Pharms sells those products to a pharmaceutical products distributor (not located within the State of Delaware). That distributor then sells to its own customers, leading to small quantities of those products' finding their way into Delaware. D.I. 48, p. 11; at Exhibit C, ¶¶ 4-5. Additionally, the Synthon Entities acknowledged that Synthon Pharms holds a Drug Wholesalers License within the State of Delaware. *Id.* Those facts are insufficient to establish general personal jurisdiction over Synthon Pharms. There is no evidence or even contention that Synthon Pharms sells products directly into the State of Delaware. At most, it places its products into commerce by selling to a pharmaceutical product distributor which then may re-sell to its own customers. Under the applicable law, "the general jurisdiction provision of the [Delaware Long Arm] statute does not anticipate that placing a product into the stream of commerce would give rise to jurisdiction." *Merck & Co. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 373-74 (D. Del. 2002) (citing *Boone v. Oy Partek AB*, 724 A.2d 1150, 1156 (Del. Super. Ct. 1997)). Such an analysis is only relevant when the product placed into the stream of commerce is the actual product that causes the injury -- a situation not present

9

here.[6]  In fact, the case on which Plaintiffs principally rely in that section of their brief is

distinguishable on precisely this point.  *Aladdin Knowledge Sys. Ltd. v. Feitan Techs. Co.*, No.

05-149, slip. op. at 6 (D. Del. Feb. 24, 2006), attached hereto as Exhibit A.  The basis for

permitting jurisdictional discovery in the *Aladdin Knowledge* case was that the distributor had

"the authority to distribute *the accused products* anywhere in the United States, including

Delaware."  *Id.* (emphasis added).  In this case, Synthon's accused memantine hydrochloride

products have not been approved by the FDA and may not be sold anywhere in the United States.

Plaintiffs also argue that, in view of the two products that Synthon Pharms does sell, they

"should be given leave to take jurisdictional discovery concerning all pharmaceutical products

that Synthon may distribute, sell or offer for sale in Delaware."  Opening Brief, p. 7; at Exhibit

A.  However, a careful review of the public record would have revealed that Synthon Pharms is

the only Synthon Entity that sells any products in the United States, and it sells only the two

products that were identified in Plaintiffs' motion papers.  *See* http://www.synthon-

usa.com/page.asp?id=1156 ("The Synthon product range in the USA includes *two products*.").

Thus, Plaintiffs' request is based on unsupported speculation that there actually are other

products that the Synthon Entities sell in this District – speculation that is inconsistent with

Synthon Pharms' publicly available website.  *Hansen*, 163 F.R.D. at 476 (because defendant

provided two affidavits that supported defendant's "unequivocal denial of contact with the State

of Delaware" and there was "a complete absence of jurisdictional facts by the plaintiff"

discovery was denied.).  *See also, Poe v. Babcock Int'l, Inc.*, 662 F. Supp. 4, 7 (M.D. Pa. 1985).

---

[6]  Moreover, "[w]hen a manufacturer passes title to goods to a third party outside of Delaware it is not deemed to have performed an act in this State."  *Boone*, 724 A.2d at 1156 (citation omitted).

As discussed in the Synthon Entities' memorandum in support of their motion to dismiss, the fact that Synthon Pharms holds a Drug Wholesalers License in the State of Delaware is also not a contact that reaches the threshold required to establish general jurisdiction. D.I. 48, p. 15; *Merck & Co., Inc.*, 179 F. Supp. 2d at 373. In fact, in the *Merck* case, defendant Barr held a Drug Wholesalers License, had an account manager assigned to the State of Delaware who visited the State about three times a year, had a contract with a Delaware entity, and even maintained a wholly-owned subsidiary in the State, and the court still did not permit the exercise of general jurisdiction over it. Synthon Pharms' Drug Wholesalers License, in and of itself, does not establish that there is "some indication" that jurisdiction is proper here. *Hansen*, 163 F.R.D. at 475. *See also*, *Clark Capital Mgmt. Group, Inc. v. Navigator Invs, LLC*, No. 06-2334, 2006 U.S. Dist. LEXIS 66989, at *20-21 (E.D. Pa. Sept. 19, 2006) (finding that jurisdictional discovery was not warranted because, even if the facts presented by plaintiff were true, those "facts" would not establish jurisdiction over the defendant).

Next, Plaintiffs rely on a report of a contract between Synthon Pharms and Ventiv Health, Inc. in an effort to demonstrate a jurisdictional contact with Delaware. The existence of that contract was publicly disclosed in February 2004. Opening Brief, p. 8; at Exhibit B. Plaintiffs assert that this "connection" with a company "which was incorporated in Delaware during the relevant period," supports a further investigation of "the sales and marketing activities that may have occurred in Delaware preceding, during and as a result of" the agreement or with "any other Delaware company." *Id.* Plaintiffs relegate to a footnote the most relevant facts concerning this allegation; namely, that "Ventiv was incorporated in Delaware from January 2000 until December 2006." *Id.* at n. 3. The Synthon Entities do not know what Plaintiffs mean by their

11

reference to the "relevant period," but a contact with Delaware that ended two years before the Amended Complaint was filed has no relevance to the existence *vel non* of personal jurisdiction.

> This is so because a finding of general jurisdiction requires that a corporation engage in sufficient activities in this State to establish a 'general presence.' . . . However, once established, this general presence is not everlasting. To the contrary, when a defendant only has general jurisdictional contacts with a state they may withdraw from that state for jurisdictional purposes.

*Boone*, 724 A.2d at 1156 (citations omitted). *See also*, 28 U.S.C. § 1391(c) (proper venue is determined "at the time the action is commenced."). This contact with Delaware is irrelevant for the additional reason that, as publicly available information confirms, the product which was the subject of the Ventiv agreement is no longer a Synthon Pharms product, and was not at the time the Amended Complaint was filed. *See* http://www.accessdata.fda.gov/scripts/cder/ob/docs/temptn.cfm (showing that JDS Pharms is now the holder of the approval for the Pexeva® product that was the subject of the Ventiv agreement).

Demonstrating their desperation to find some contacts between the Synthon Entities and this forum, Plaintiffs also rely on the fact that a Synthon company was, for a period of "approximately six months," incorporated in Delaware. Opening Brief, at p. 9; at Exhibit C. Coupled with this assertion (relying on the attached incorporation papers but curiously never including the dissolution papers), Plaintiffs state that they "should be given leave to take jurisdictional discovery on the activities that may have occurred in Delaware preceding dissolution [because such "facts"] can hardly be considered 'clearly frivolous.'" Opening Brief, p. 9 (citation omitted). Plaintiffs protest too much, and, in fact, their argument is frivolous. The dissolution to which Plaintiffs refer, by their own admission, occurred in roughly April 2004 – *nearly four years before the action against the Synthon Entities was commenced.* The fact that a Synthon company was once incorporated in Delaware but was dissolved years before this action

12

was commenced has no bearing whatsoever on the jurisdictional issues on which the Plaintiffs wish to take discovery. 28 U.S.C. § 1391(c); *Boone*, 724 A.2d at 1156 (citations omitted).

Plaintiffs finally argue that "jurisdictional discovery over Synthon B.V. and Synthon Holding B.V. is also warranted." Opening Brief, at p. 9. Plaintiffs argue, without support, that, "[b]ased upon Plaintiffs' understanding of Synthon's corporate structure, Plaintiffs believe that Synthon B.V. and Synthon Holding B.V. are controlling the Synthon entities in the United States." *Id.* Whatever Plaintiffs' subjective beliefs may be, the Synthon Entities have fully explained the Synthon Entities' corporate structure, as well as each of the Synthon Entities' involvement (or lack thereof) in the activities relating to this litigation. D.I. 48, at pp. 5-8; 13-14; at Exhibits A-C. Plaintiffs respond to those facts with unsupported speculation.[7] Moreover, irrespective of the relationships between the domestic Synthon Entities and Synthon B.V. or Synthon Holding, Plaintiffs cannot establish personal jurisdiction in this District through an alter ego theory, because it cannot show that any of the Synthon Entities has sufficient contacts with Delaware to constitute the continuous, regular and systematic contacts that are required for general personal jurisdiction. In other words, because there is no basis for permitting jurisdictional discovery of either Synthon Pharms or Synthon Labs, as neither maintains the required continuous and systematic contacts in this District, there is no jurisdictional "hook" to pull in Synthon Holding or Synthon B.V. based on either an agency or alter-ego theory. *Sanofi-Aventis*, No. 07-00086, slip. op. at 5 n. 5; *Brown v. AST Sports Sci., Inc.*, No. 02-1682, 2002 U.S. Dist. LEXIS 12294, at *34 n. 9 (E.D. Pa. July 1, 2002).

---

[7] Plaintiffs refer to *Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666, 677 (M.D.N.C. 2005); however, that case is inapposite. The same Judge who determined that, for purposes of the ANDA at issue in the *Pfizer* case, there was dominance and control among the parties, determined that such was not the case in a litigation involving a different ANDA (which surrounding facts more closely resemble those found in the case at bar). *Compare*, *Sanofi-Aventis v. Synthon Holding B.V.*, No. 07-00086, slip. op. at 5, 10 (M.D. N.C. Mar. 20, 2008), attached hereto as Exhibit B.

Plaintiffs cannot establish the need for expensive and protracted discovery through bare allegations that there is personal jurisdiction over the Synthon Entities in this Court "by virtue of, *inter alia*, [their] systematic and continuous contacts with Delaware." Amended Complaint, ¶¶ 34-37. Such an allegation is "emblematic of the clearly frivolous standard." *Veliz v. Americorp Builders, Inc.*, No. 06-4363, 2007 U.S. Dist. LEXIS 43560, at * 12 (D. N.J. June 15, 2007) (unpublished).

None of the "facts" Plaintiffs included in their Opening Brief, nor the allegations of their Amended Complaint, require that, in the face of the detailed affidavits presented in support of the Synthon Entities' motion to dismiss, jurisdictional discovery be permitted. Where, as here, "the lack of personal jurisdiction is clear . . . further discovery serves no purpose and should be denied." *Telcordia Techs., Inc.*, 2005 U.S. Dist. LEXIS 10194, at *30 (citation omitted).

**B.**
**BECAUSE JURISDICTIONAL DISCOVERY IS NOT PROPER HERE, PLAINTIFFS SHOULD NOT RECEIVE A LENGTHY EXTENSION OF TIME TO RESPOND TO THE SYNTHON ENTITITES' MOTION TO DISMISS**

Because Plaintiffs' request for leave to take jurisdictional discovery should be denied, their corresponding request for an extension of time of ninety days within which to conduct such discovery should also be denied as moot. The Synthon Entities would agree to a reasonable extension of time for the Plaintiffs to respond to their outstanding motion to dismiss. The Synthon Entities respectfully suggest that a reasonable extension period would be ten (10) days, calculated from the date that this motion is decided.

## CONCLUSION

For the reasons set forth above, the Synthon Entities respectfully request that Plaintiffs' motion for leave to take jurisdictional discovery and to extend their time to respond to the Synthon Entities' motion to dismiss be denied.

Dated:  April 14, 2008

*Ay M. Mc Geever*

Elizabeth M. McGeever(# 2057)
PRICKETT, JONES & ELLIOT, P.A.
1310 King Street
Wilmington, DE  19899
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
emmcgeever@prickett.com

*Attorney for Defendants*
*Synthon Holding B.V.,*
*Synthon B.V.,*
*Synthon Laboratories, Inc. and*
*Synthon Pharmaceuticals, Inc.*

*Of Counsel*:

E. Anthony Figg
Joseph A. Hynds
Lisa N. Phillips
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
efigg@rothwellfigg.com
jhynds@rothwellfigg.com
lphillips@rothwellfigg.com

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALADDIN KNOWLEDGE SYSTEMS LTD., <br><br> Plaintiff, <br><br> v. <br><br> FEITIAN TECHNOLOGIES CO. LTD., RF IDEAS INC., d/b/a SECURITY TOKENS, INC. AZ-TECH SOFTWARE INC., SOFTKEY E-SOLUTION SDN BHD, NOVARIS INNOVATIVE TECHNOLOGIES, FUTURE SYSTEMS INC., RS-COMPUTER, OPENFORTRESS DIGITAL SIGNATURES, SECURE TECHNOLOGY. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) )  C.A. No. 05-149 (GMS) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM

This is a suit for patent infringement initiated by Plaintiff Aladdin Knowledge Systems Ltd.

("Aladdin") against all of the above-named defendants. Presently before the court are several of

those defendants' motions to quash service and/or dismiss for lack of personal jurisdiction. The

court will first address the motions to quash, and then the court will address the motions to dismiss.

### I.    MOTIONS TO QUASH

"[T]he rules concerning service of process exist to provide notice. *Grand Entertainment

Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 486 (3d Cir. 1993). That purpose is of primary

importance and once it has been met, the rules can be construed somewhat liberally. However,

'although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by

itself validate an otherwise defective service.' *Id.* at 492." *Ayres v. Jacobs & Crumplar, P.A.*, No. 94-658-SLR, 1995 U.S. Dist. LEXIS 17712, at *6-*7 (D. Del. Nov. 20, 1995), *aff'd*, 99 F.3d 565 (3d Cir. 1996). "[S]ervice upon a domestic or foreign corporation . . . shall be effected: (1) in a judicial district of the United States [in accordance with state law, or] by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h). "In certain instances, good faith reliance on the apparent authority of an individual to accept service on behalf of a business has been found sufficient. The inquiry in such a case should focus on whether the individual's role in the organization made service on her fair, reasonable, and just." *Ayres*, 1995 U.S. Dist. LEXIS 17712, at *7 (quotations omitted) (citations omitted).

### A.    RS-Computer ("RSC")

RSC, a German corporation, has moved to quash service because it says it was never actually served by Aladdin. Instead, Aladdin served Sysgen Data, Ltd. ("Sysgen"), an allegedly unrelated non-party located in Melville, NY. Aladdin, however, points to a page taken from RSC's website, wherein it is represented that RSC "maintains a branch office in New York, where it services its U.S. customer base." (D.I. 32, Ex. A.) Under the heading "CONTACT" on RSC's website, only two addresses are listed: that of RS Computer in Germany, and that of Sysgen in Melville, NY. (Id.) Likewise, the Sysgen website, under the heading "ABOUT US: CONTACT US," also list only two addresses: that of Sysgen in Melville, NY, and that of "RS Computer / Sysgen" in Germany. (Id., Ex. B.)

Given the excerpts from RSC's website identifying Sysgen as the New York "branch office," Aladdin was clearly justified in believing that Sysgen had apparent authority to accept service on

2

behalf of RSC. Additionally, given the excerpts from Sysgen's website representing itself as "RS Computer / Sysgen," its role in the RSC organization made service on Sysgen "fair, reasonable, and just." Therefore, the court will deny RSC's motion to quash.

**B.    Feitian Technologies Co. Ltd. ("Feitian")**

Feitian, a Chinese entity with its principal place of business in Beijing, has moved to quash because service was allegedly improper under the Hague Convention. However, in the time between the filing of Feitian's opening brief and the filing of its reply brief, Aladdin appears to have remedied the alleged problem. (D.I. 46.) Therefore, Feitian's motion to quash is now moot.

**C.    Softkey E-Solution Sdn Bdh ("Softkey")**

Softkey, a Malaysian entity, has moved to quash because Aladdin attempted to serve an untranslated English-language copy of the summons and complaint on an "unspecified person at Softkey's Malaysian address." (D.I. 30 at 4.) Aladdin responds with supporting documentation tending to show that English is the official language of Malaysia, and that service was legally proper. In its reply brief, Softkey fails to challenge Aladdin's assertions. Therefore, the court holds that Softkey waived any further objection to service.

**D.    Secure Technology**

Secure Technology, a sole proprietorship in Florida, has moved to quash because Aladdin attempted service through the Corporation Trust Company in Delaware, which is the registered agent for a corporation named "Secure Technology, Inc." Secure Technology alleges that it is not the same entity as the Delaware corporation. However, since the filing of Secure Technology's motion, Aladdin appears to have remedied the alleged problem. Thus, the motion to quash is now moot.

## II.    MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The standard for evaluating personal jurisdiction is a familiar one:

Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858 at 864-65 (D. Del. 1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elecs.*, 948 F. Supp. 338, 342 (D. Del. 1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (citation omitted). Specifically, [the plaintiff] must show that [the defendant] "purposefully availed itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-09, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53, 55 (D. Del. 1982). However, [the plaintiff] bears the burden of alleging facts sufficient to make a prima facie showing of personal jurisdiction over [the defendant]. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, [the plaintiff] must adduce facts which "'establish with reasonable particularity'" that jurisdiction over [the defendant] exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 193 (D. Del. 1996)).

*Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874-GMS, 2005 U.S. Dist. LEXIS 10194, at *3-*6 (D. Del. May 27, 2005).

4

The standard is complicated, however, by the ubiquity of the internet. Fortunately, in *Toys "R" Us, Inc. v. Step Two, S.A.*, the Third Circuit offered some concrete guidance in this regard:

> [T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

318 F.3d 446, 454 (3d Cir. 2003). Nevertheless, even where personal jurisdiction has not been established, if there are non-frivolous reasons to believe that some probing into a defendant's contacts with the forum state might yield "something more," i.e., contacts that would bring the defendant within the court's jurisdiction, then limited jurisdictional discovery is warranted. *Id.* at 456.

### A.    RSC

RSC operates a website accessible from Delaware on which it offers allegedly-infringing products for sale. Although that alone is insufficient to establish personal jurisdiction, the explicit references made by RSC and Sysgen to each other on their respective websites lend credence to Aladdin's theory that RSC is connected at least to New York. The court also notes that Sysgen's website lists several Delaware corporations as "partners." *At* http://www.sysgen.com/webdata/Partners (last visited Feb. 17, 2006). This string of connections, in the court's opinion, comprise non-frivolous reasons to believe that some probing into RSC's contacts with Delaware might yield "something more." Therefore, the court will permit limited jurisdictional discovery into RSC's contacts with this state, and deny the motion to dismiss without prejudice pending the results of that discovery.

5

**B.     Feitian**

Feitian, like RSC, is also a foreign entity operating a website from which Delaware residents

can theoretically order accused products.   In 2003, according to an affidavit submitted by the

president of former co-defendant RF Ideas, Inc., d/b/a Security Tokens, Inc. ("RF Ideas"), a

Delaware corporation, RF Ideas became a distributor for Feitian with the authority to distribute the

accused products anywhere in the United States, including Delaware.   (D.I. 43, Ex. E ¶ 4.)   Feitian

points out, however, that the affidavit fails to assert that any accused products were actually sold by

RF Ideas in Delaware.   Nevertheless, the court believes Aladdin has shown non-frivolous reasons

to believe that "something more" might be found upon further probing.   As such, Aladdin will be

permitted to engage in limited jurisdictional discovery into Feitian's contacts with Delaware, and

the motion to dismiss will be denied without prejudice pending the results of that discovery.

**C.     Softkey**

Softkey is yet another foreign entity operating a website from which Delaware residents can

theoretically order accused products. But, unlike Feitian and RSC, Softkey appears to have no other

connection to Delaware. The only arguable connection is Softkey's "partnership" with Feitian. *At*

http://www.softkey.com.my/partners.htm (last visited Feb. 17, 2006). Thus far, however, the court

has merely held that there exist non-frivolous reasons to believe Feitian *might* be subject to personal

jurisdiction in this district. The fact that Softkey is a partner – an undefined term – with an entity

that may or may not be connected to Delaware is simply too tenuous a link on which to justify

jurisdictional discovery.[1]   Therefore, Softkey will be dismissed without prejudice.

---

[1]The court is cognizant of potential tension between its decision to allow jurisdictional
discovery as to RSC, and its decision to disallow jurisdictional discovery as to Softkey.
However, in the former case, there is there is significant evidence that RSC itself is "partners"

**D.     AZ-Tech Software, Inc. ("AZ-Tech")**

AZ-Tech, an entity both incorporated in and having its principal place of business in Missouri, also operates a website accessible from Delaware on which residents of this state can theoretically order accused products. And, like Softkey, AZ-Tech's website advertises a "partnership" with Feitian. *At* http://www.az-tech.com/news.html (last visited February 17, 2006). Beyond that, however, there appears to be no connection with Delaware. AZ-Tech, then, is indistinguishable from Softkey insofar as their respective motions to dismiss are concerned. Thus, AZ-Tech will also be dismissed without prejudice.

**E.     Secure Technology's Motion**

According to an affidavit filed in support of its brief, Secure Technology has no current or past contacts with Delaware. (D.I. 16, Ex. A ¶¶ 3-11, 13-14.) Secure Technology further contends that the existence of a Delaware company with a similar name (the only difference being the "Inc." appended on the end of the Delaware name) is mere coincidence. In response, Aladdin submitted the "Contact Us" page from what seems to be a third-party website (http://www.secure-technology.com) on which "Secure Technology, Inc." is listed with the same address as Secure Technology of Florida. According to Aladdin, the inclusion of "Inc." is evidence that Secure Technology of Florida and Secure Technology, Inc. of Delaware may be the same entity. As such, Aladdin believes jurisdictional discovery is warranted.

The court disagrees. It is entirely plausible that two unrelated entities could share the name

---

with several Delaware corporations via its seeming identity with Sysgen. Softkey, on the other hand, is a "partner" with Feitian, whose connection to this state is that it contracted with a Delaware corporation to distribute its products. There is no evidence that Softkey and Feitian are as closely linked as RSC and Sysgen appear to be.

"Secure Technology," especially in the digital age where the fear of having un-secure technology is on the minds of many. In addition, an assertion on a third party website does not strike the court as particularly reliable, especially in light of the fact that people often append "Inc." to entity names whether or not it is appropriate. Furthermore, as Secure Technology of Florida points out, Aladdin is free to explore the identity of Secure Technology, Inc. of Delaware through any channels provided by this state's Division of Corporations. At present, it does not appear that Aladdin has done so in any meaningful way. Therefore, Secure Technology will be dismissed without prejudice.

Dated: February __24__, 2006

UNITED STATES DISTRICT JUDGE

FILED

FEB 2 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALADDIN KNOWLEDGE SYSTEMS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEITIAN TECHNOLOGIES CO. LTD., | ) | |
| RF IDEAS INC., d/b/a SECURITY TOKENS, INC. | ) | |
| AZ-TECH SOFTWARE INC., | ) | C.A. No. 05-149 (GMS) |
| SOFTKEY E-SOLUTION SDN BHD, | ) | |
| NOVARIS INNOVATIVE TECHNOLOGIES, | ) | |
| FUTURE SYSTEMS INC., | ) | |
| RS-COMPUTER, | ) | |
| OPENFORTRESS DIGITAL SIGNATURES, | ) | |
| SECURE TECHNOLOGY. | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

IT IS HEREBY ORDERED THAT:

1.   RSC's motion to quash and dismiss (D.I. 13) be DENIED;

2.   Feitian's motion to quash and dismiss (D.I. 40) be DENIED;

3.   Softkey's motion to quash and dismiss (D.I. 29) be DENIED in part and GRANTED in part;

4.   Softkey be DISMISSED without prejudice;

5.   Secure Technology's motion to quash and dismiss (D.I. 15) be DENIED in part and GRANTED in part;

6.   Secure Technology be DISMISSED without prejudice;

7.   AZ-Tech's motion to dismiss (D.I. 25) be GRANTED;

8.   AZ-Tech be DISMISSED without prejudice; and

9.    Aladdin be permitted to take limited and appropriate jurisdictional discovery from RSC and Feitian pursuant to a stipulated discovery schedule to be filed with the court.

Dated: February 24, 2006

UNITED STATES DISTRICT JUDGE

FILED

FEB 2 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SANOFI-AVENTIS and | ) | |
| SANOFI-AVENTIS U.S. LLC | ) | |
|       Plaintiffs, | ) | 1:07CV00086 |
|     v. | ) | |
| | ) | |
| SYNTHON HOLDING BV; | ) | |
| SYNTHON BV; | ) | |
| SYNTHON PHARMACEUTICALS, INC.; | ) | |
| and SYNTHON LABORATORIES, INC., | ) | |
|       Defendants. | ) | |

## MEMORANDUM OPINION

Beaty, Chief Judge.

This case involves a patent infringement action brought by Plaintiffs Sanofi-Aventis and

Sanofi-Aventis U.S. LLC ("Plaintiffs") against Defendants Synthon Holding BV, Synthon BV,

Synthon Pharmaceuticals, Inc. and Synthon Laboratories, Inc. ("Defendants"). This matter is

presently before the Court on Defendants' Motion to dismiss for improper venue under Federal

Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer venue from the Middle District

of North Carolina ("MDNC") to the Eastern District of North Carolina ("EDNC") pursuant to

28 U.S.C. § 1406(a) [Document #9].[1] For the reasons discussed below, the Court concludes that

venue is not proper in this district, and that transfer to the EDNC is appropriate. Therefore,

Defendants' Motion will be granted and this case will be transferred to the EDNC pursuant to

---

[1] Plaintiffs have also filed a Motion to File Sur-Reply [Document #28]. Although Sur-Replies are ordinarily not permitted under the Local Rules for this District, the Court has nevertheless considered Plaintiffs' proposed Sur-Reply, and this Memorandum Opinion represents the Court's full disposition of this matter in light of all the arguments raised.

28 U.S.C. § 1406(a).

## I.     FACTUAL BACKGROUND

Plaintiff Sanofi-Aventis is a French corporation with its principal place of business in Paris, France. Plaintiff Sanofi-Aventis U.S. LLC, the U.S. subsidiary of Sanofi-Aventis, is a Delaware corporation having its principal place of business in Bridgewater, New Jersey. Sanofi-Aventis U.S. LLC ("Sanofi U.S.") holds the rights to U.S. Pat. No. 6,514,531 ("the '531 patent") relating to the medication zolpidem tartrate used in Sanofi U.S.'s product Ambien CR, which is used to treat insomnia. The '531 patent expires on July 16, 2021.

Defendant Synthon Laboratories, Inc. ("Synthon Labs") is a Virginia corporation with its principal place of business in Gainesville, Virginia. Synthon Labs filed an abbreviated new drug application ("ANDA") for a generic equivalent to Ambien CR on September 8, 2006, and it was accepted by the United States Food and Drug Administration ("FDA") for substantive review on November 28, 2006.[2] The ANDA contained a "Paragraph IV certification" which alleged that the '531 patent was invalid and not infringed.[3] The ANDA was prepared primarily by Defendant Synthon BV, a Dutch corporation with its principal place of business in Nijmegen, Netherlands. The zolpidem tartrate extended release formulation that is the subject of the ANDA was developed in the Netherlands by Synthon BV and other third party contractors

---

[2] Synthon Labs also submitted a supplemental amendment to the ANDA on December 22, 2006 to include a 6.25mg extended release form of the tablet.

[3] Plaintiffs have filed other patent infringement suits regarding the Ambien CR drug against other ANDA filers, but those actions are not part of the present suit.

2

located throughout Europe.

Defendant Synthon Pharmaceuticals, Inc. ("Synthon Pharms") is a North Carolina corporation with its principal place of business in Research Triangle Park, North Carolina. Jeffrey Troughton is a former employee of Synthon Pharms. Mr. Troughton assisted Synthon BV with the preparation of the initial zolpidem tartrate extended release ANDA.[4]  Mr. Troughton worked briefly at the Synthon BV facility in the Netherlands, as well as at the Synthon Pharms facility in Research Triangle Park, North Carolina. The ultimate parent company of Synthon Pharms, Synthon Labs, and Synthon BV is Defendant Synthon Holding BV, which is also a Dutch corporation with its principal place of business in the Netherlands.

This Court has previously addressed the issues of venue and personal jurisdiction with regard to Defendants Synthon Holding BV, Synthon BV, Synthon Labs, and Synthon Pharms. See Pfizer Inc. v. Synthon Holding, B.V., 386 F. Supp. 2d 666 (M.D.N.C. 2005). In Pfizer, this Court determined that the Defendants were subject to specific personal jurisdiction with respect to the filing of an unrelated ANDA that was at issue in that case, and the Court further determined that venue was proper in this district. Defendants now allege that several facts have changed since the Pfizer case, and that venue is no longer proper in this district, at least with respect to the present suit. In this regard, Defendants contend that although Defendant Synthon

---

[4] The original ANDA, No. 78-735, was withdrawn approximately one month after submission on July 17, 2006. The currently pending ANDA, No. 78-483, was subsequently filed on September 8, 2006, as noted above. Mr. Troughton did not lend any further assistance to the preparation of the subsequent application.

Pharms previously operated at a facility in Chapel Hill, North Carolina in the MDNC, Synthon

Pharms has since relocated its operations to a facility in Research Triangle Park, in Wake

County, North Carolina in the EDNC. Defendants contend that this move occurred between

December 2004 and February 2005, almost two years before the ANDA was filed and this action

was commenced. Because Synthon Pharms' facility is now located in the EDNC, Defendants

contend that with respect to the claims involved in this suit, venue is not proper in this district

and that this case should therefore be dismissed, or in the alternative, transferred to the EDNC.

II.     DISCUSSION

    A.     Determination of Venue

"When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the

plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought

the action." Plant Genetic Sys. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (citing

Bartholomew v. Virginia Chiropractors Ass'n., 612 F.2d 812, 817 (4th Cir. 1979)). Venue is

proper in a patent infringement action "in the judicial district where the defendant resides, or

where the defendant has committed acts of infringement and has a regular and established place

of business." 28 U.S.C. § 1400(b) (2006). This creates two means of establishing venue in a

patent case: (1) a defendant may reside in the district; or (2) a defendant may have committed acts

of infringement in the district and have a regular and established place of business in the district.

In the present Motion, Defendants contend that venue is improper because Synthon

Pharms does not reside in this district and does not have a regular and established place of

4

business in this district. In this regard, Defendants allege that Synthon Pharms is located in the

EDNC and has insufficient contacts with the MDNC to support the finding that venue is proper

in the MDNC. Defendants further contend that venue is improper as to the other Synthon

Defendants as well. With regard to Synthon Labs, Defendants allege that Synthon Labs is

incorporated and located in Virginia and that its only contacts with North Carolina are with the

Synthon Pharms facility located in the EDNC.[5] Defendants also contend that venue is not

proper with respect to either Synthon Holding BV or Synthon BV, because although venue

would be proper in <u>any</u> district if the foreign corporations were the only defendants, in cases

such as the present case where there are both foreign and domestic defendants, venue for the

entire action is only proper where it is proper as to the non-alien defendants. See <u>Hall v. Tyco</u>

<u>Int'l, Ltd.</u>, 223 F.R.D. 219, 231 (M.D.N.C. 2004). Because the venue determination as to

Synthon Pharms is ultimately dispositive, the Court will focus its analysis on a determination

of whether venue in the MDNC is proper as to Defendant Synthon Pharms, specifically whether

Synthon Pharms (1) resides in this district, or (2) has committed an act of infringement in this

district and has a regular and established place of business in this district.

      1.     Venue in Any District Where the Defendant "Resides"

---

[5] This Court previously found that Synthon Labs was dominated and controlled by the other Synthon entities and was the alter ego of Synthon Pharms. See <u>Pfizer Inc. v. Synthon Holding, B.V.</u>, 386 F. Supp. 2d 666, 670 (M.D.N.C. 2005). The Court need not revisit that issue in the present case, since, in any event, Synthon Labs' only connection to this district is through Synthon Pharms, and therefore venue would not be proper as to Synthon Labs if it is not proper as to Synthon Pharms.

5

As noted above, venue is proper in any district where the defendant resides. For purposes of venue, a corporation resides in "any district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (2006). Federal Circuit law, which applies in patent infringement cases, holds that the definition of "resides" found in § 1391(c) applies to venue in patent cases under § 1400(b). See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583-84 (Fed. Cir. 1990). Under § 1391(c), if a defendant corporation is subject to personal jurisdiction in a state that has more than one judicial district, the corporation will reside in any district, in that state, in which it has contact sufficient to support a finding of personal jurisdiction. 28 U.S.C. § 1391(c) (2006). In determining whether there are sufficient contacts to support a finding of personal jurisdiction under this provision, each internal district within a multi-district state is to be treated as a separate state. See id.; VE Holding Corp., 917 F.2d at 1581 n.18 (citing H.R. Rep. No. 100-889 (1988), as reprinted in 1988 U.S.C.C.A.N. 5982, 6031). Therefore, to determine whether venue is proper, the Court must determine whether Synthon Pharms would be subject to personal jurisdiction in the MDNC if the district were treated as a separate state.

Personal jurisdiction may be either general or specific, depending on the nature of the defendant's contacts with the forum. Cf. Aveka L.L.C. v. Mizuno Corp., 199 F. Supp. 2d 336, 339 (M.D.N.C. 2002). General personal jurisdiction arises from "continuous and systematic" contacts with the forum regardless of whether the contacts are related to the particular cause of action, and this standard has been interpreted to be rigorous. See LSI Indus. v. Hubbell Lighting,

6

Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000); see also Helicopteros Nacionales de Colombia, S. A.

v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); ALS Scan, Inc. v. Digital Serv.

Consultants, Inc., 293 F.3d 707, 715 (4th Cir. 2002). In contrast, specific jurisdiction arises from

contacts of the defendant with the forum that directly relate to the plaintiff's cause of action.

Aveka, 199 F. Supp. 2d at 339. Courts looks at three factors in determining whether specific

personal jurisdiction exists over a defendant: (1) whether the defendant purposefully directed its

activities to the residents of the forum; (2) whether the claim arises out of or relates to the

defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is

reasonable and fair. See Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

In the present case, Plaintiffs raise five contentions in an attempt to establish that Synthon

Pharms would be subject to personal jurisdiction in the MDNC for purposes of determining

venue. First, Plaintiffs contend that the property on which Defendant Synthon Pharms'

headquarters is located lies partially within the MDNC. Second, Plaintiffs contend that Synthon

Pharms' principal mailing address, and that of its registered agent, is a post office box within the

MDNC. Third, Plaintiffs contend that Synthon Pharms maintains leases on two properties in

the MDNC. Fourth, Plaintiffs contend that Synthon Pharms pays property taxes in the MDNC

for property located in this district. Finally, Plaintiffs contend that Synthon Pharms directly

participated in the filing of the ANDA that is the subject of this litigation.

With respect to these contentions, Synthon Pharms has presented evidence to establish

that its headquarters are located on a 10-acre piece of property in the EDNC, but that a few feet

of undeveloped, wooded land on the corner of the property crosses the county line into the MDNC. In addition, Synthon Pharms contends that all of their facilities, buildings, operations and employees are in the EDNC, and all real property taxes paid on the property are paid in Wake County, North Carolina in the EDNC. With respect to the post office box in the MDNC, Synthon Pharms notes that its street address is in the EDNC, but that its "P.O. Box" is simply located in a nearby Post Office that is in the MDNC because the Postal Service does not deliver mail directly to facilities in Research Triangle Park. Thus, Synthon Pharms contends that this situation is markedly different from a corporation that maintains a post office box in a state for purposes of doing business in the state, or a registered agent in a state for purposes of service of process. With respect to the leased property, Synthon Pharms acknowledges that it does maintain leases on two pieces of property in the MDNC that it previously used prior to its move to Research Triangle Park, but Synthon Pharms contends that it no longer uses those properties and that the properties have been or will be subleased to third parties. Similarly, Synthon Pharms notes that the property tax it pays is simply for furniture located in its former Chapel Hill facility that has been or will be subleased to a third party. Finally, with respect to the filing of the ANDA at issue in this case, Synthon Pharms notes that Jeffrey Troughton, a former employee of Synthon Pharms, participated at least to some extent in the preparation of this ANDA, but Mr. Troughton's work with respect to this filing was conducted either at Synthon BV's facility in the Netherlands or at the new Research Triangle Park facility of Synthon Pharms, located in the EDNC. In response, Plaintiffs do not contest Synthon Pharms'

8

factual assertions as to these matters, and Plaintiffs instead contend that these contacts are nevertheless sufficient to establish that venue is proper as to Synthon Pharms in this action.

The Court has considered all of these contacts with the MDNC and finds that in this particular case, the contacts that Synthon Pharms has with the MDNC would not meet the 'continuous and systematic' standard to establish general personal jurisdiction over Defendant Synthon Pharms if this district were treated as a separate state for purposes of establishing venue in this case. Having reviewed the uncontested factual allegations on this issue, it is clear that Synthon Pharms relocated its operations from the MDNC to the EDNC long before the filing of the ANDA in this case and the commencement of this litigation. Notwithstanding the small corner of undeveloped land (representing only a few feet of a 10-acre plot) and the use of a P.O. Box at a nearby Post Office due to local Postal Service specifications, all of Synthon Pharms' operations, facilities and employees are in the EDNC, and Synthon Pharms does not maintain or operate any business in the MDNC. Likewise, although Synthon Pharms does still have unexpired leases on property in the MDNC that it no longer uses and that it intends to sublease, those leases do not establish "continuous and systematic" contact that would subject Synthon Pharms to general personal jurisdiction for any unrelated action if this district were treated as a separate state.

Moreover, the Court has considered Synthon Pharms' contacts with this district and concludes that none of the aforementioned contacts with the MDNC are related to the filing of the ANDA that is the subject of this action. To the extent that Synthon Pharms' former

9

employee, Mr. Troughton, was involved in the preparation and filing of the ANDA, all of Mr. Troughton's activities relating to the preparation of the ANDA were conducted within the EDNC or outside of the United States. In addition, to the extent that Synthon Pharms has some remaining contacts with the MDNC, such as its prior leases on property in this district and remaining personal property in this district, the present lawsuit does not arise out of those contacts and does not involve any type of dispute over Synthon Pharms' leases or personal property in this district. The Court therefore concludes that specific personal jurisdiction over Synthon Pharms would not lie in the MDNC in this action if the district were treated as a separate state for purposes of establishing venue.

Therefore, because neither general nor specific personal jurisdiction would exist over Defendant Synthon Pharms in the MDNC in this action if this district were treated as a separate state, Synthon Pharms cannot be determined to 'reside' in the MDNC within the meaning of § 1400(b) and venue cannot be established on this basis.[6]

---

[6] The Court notes that this analysis is case-specific. See LSI Industries Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) (noting that there is no specific test for evaluating a defendant's contacts for personal jurisdiction purposes, and holding that "a court must look at the facts of each case to make such a determination"). Thus, in other cases, similar types of contacts would be considered to determine on a case-by-case basis whether the contacts would support the exercise of general or specific jurisdiction. Thus, the Court's analysis here is limited to the venue determination presently before it involving the particular circumstances of this case.

10

2.    Venue Where Defendant Committed Acts of Infringement and Has a
Regular and Established Place of Business

The second means for establishing venue is by a showing that the defendant has

committed acts of infringement in this district and has a regular and established place of business

in this district.[7] See 28 U.S.C. § 1400(b) (2006). As detailed above, Defendant Synthon Pharms

now maintains its established place of business in the EDNC at its Research Triangle Park

facility. Synthon Pharms no longer maintains any places of business within the MDNC.

Furthermore, with respect to the alleged acts of infringement, Mr. Troughton, who assisted in

the preparation of the ANDA, worked from the Research Triangle Park facility in the EDNC,

and in the Netherlands. As all preparation of the ANDA in this case happened outside of the

MDNC, Synthon Pharms did not commit acts of infringement in this district. Therefore, venue

is therefore not proper in the MDNC under this prong of § 1400(b).

B.    Transfer of Plaintiffs' Claims for Patent Infringement Pursuant to 28 U.S.C.
§ 1406.

Having found that venue is not proper in this district as to Synthon Pharms, the Court

must either dismiss the action or transfer it to a district in which the action could have been

brought. See 28 U.S.C. § 1406(a). Defendants in this case request that the Court dismiss

---

[7] The Court notes that under the holding of the Court of Appeals for the Federal Circuit
in VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1580 n.17 (Fed. Cir. 1990),
analysis of this second prong of § 1400(b) is not required for corporate defendants because it is
already covered under the first prong for any place a corporate defendant "resides." However,
to the extent Plaintiffs have raised this issue in their brief, the Court addresses this issue as set out
above.

11

Plaintiffs' claims upon a finding that venue is improper in the MDNC. However, in the alternative, Defendants request that this case be transferred to the EDNC. In Response, Plaintiffs contend that if the Court finds that venue is improper in this district, the case should be transferred to the EDNC rather than dismissed. Thus, neither Plaintiffs nor Defendants ultimately oppose the transfer of this case to the EDNC. (See Memorandum in Support of Motion to Dismiss [Document #10]; Memorandum in Opposition to Motion to Dismiss [Document #23].) Defendants assert that the EDNC is a district in which the case could have been brought and is a proper forum, and Defendants note that for purposes of this action they do not contest jurisdiction in that district. Thus, all of the Defendants consent to venue in the EDNC, and the Court finds that it is in the interests of justice to transfer the case rather than dismiss it. Therefore, this case will be transferred to the EDNC pursuant to 28 U.S.C. § 1406(a).

III.    CONCLUSION

For the reasons discussed above, the Court concludes that venue is not proper in this district under 28 U.S.C. § 1400(b). Accordingly, Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue [Document #9] is GRANTED and this action will be TRANSFERRED to the United States District Court for the Eastern District of North Carolina. An Order in accordance with this Memorandum Opinion shall be entered contemporaneously herewith.

This, the 20th day of March, 2008.



United States District Court Judge

12

13