## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FOREST LABORATORIES, INC., FOREST LABORATORIES HOLDINGS, LTD., MERZ PHARMA GMBH & CO. KGAA, and MERZ PHARMACEUTICALS GMBH, <br><br> Plaintiffs, <br><br> v. <br><br> DR. REDDY'S LABORATORIES, INC., DR. REDDY'S LABORATORIES LIMITED, GENPHARM INC., GENPHARM, L.P., INTERPHARM HOLDINGS, INC., INTERPHARM, INC., MYLAN PHARMACEUTICALS INC., SUN INDIA PHARMACEUTICAL INDUSTRIES LIMITED (a/k/a SUN PHARMACEUTICAL INDUSTRIES LTD.), SYNTHON HOLDING B.V., SYNTHON B.V., SYNTHON LABORATORIES, INC., and SYNTHON PHARMACEUTICALS, INC., <br><br> Defendants. | C.A. No. 08-52 (GMS) (LPS) |

## PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY AND TO EXTEND THEIR TIME TO RESPOND TO SYNTHON'S MOTION TO DISMISS

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939

April 24, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................2

I.    Synthon Has Failed To Show That Plaintiffs' Motion For Jurisdictional Discovery
      Is Clearly Frivolous.................................................................................................2

      A.    Synthon Misapprehends The Relevant Legal Standards .......................................2

      B.    Synthon's Known Contacts With Delaware Meet The Requisite Standards
            For Jurisdictional Discovery .................................................................................5

      C.    Synthon Has Failed To Address Or Refute Additional Considerations That
            Favor Jurisdictional Discovery .............................................................................9

II.   Synthon Agrees That Plaintiffs Should Have An Extension Of Time To Respond
      To Synthon's Motion To Dismiss.............................................................................11

CONCLUSION................................................................................................................11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aladdin Knowledge Sys. Ltd. v. Feitian Techs. Co.,*
No. 05-149, slip op. (D. Del. Feb. 24, 2006) ..................................................... 4

*Brown v. AST Sports Sci., Inc.,*
No. 02-1682, 2002 U.S. Dist. LEXIS 12294 (E.D. Pa. July 1, 2002) .................................. 3

*Clark Capital Mgmt. Group, Inc. v. Navigator Invs., LLC,*
No. 06-2334, 2006 U.S. Dist. LEXIS 66989 (E.D. Pa. Sept. 19, 2006) ............................ 3

*Eli Lilly & Co. v. Actavis Elizabeth LLC,*
No. 07-3770-DMC (D.N.J. Apr. 14, 2008) .......................................................... 10

*Eli Lilly & Co. v. Synthon Labs., Inc.,*
No. 2:07-CV-450, slip op. (E.D. Va. Mar. 17, 2008) ........................................ 10

*Hansen v. Neumueller GmbH,*
163 F.R.D. 471 (D. Del. 1995) ................................................................. 7

*Joint Stock Soc'y v. Heublein, Inc.,*
936 F. Supp. 177 (D. Del. 1996) ............................................................. 4

*McNeil Nutritionals, LLC v. Sugar Ass'n,*
No. 05-69, 2005 U.S. Dist. LEXIS 7628 (D. Del. Apr. 29, 2005) ............................ 5, 6

*Merck & Co., Inc. v. Barr Labs., Inc.,*
179 F. Supp. 2d 368 (D. Del. 2002) ......................................................... 4

*Neary v. B & L Serv., Inc.,*
No. 04-1072, 2004 U.S. Dist. LEXIS 9922 (E.D. Pa. May 12, 2004) .......................... 2

*Pfizer Inc. v. Synthon Holding, B.V.,*
386 F. Supp. 2d 666 (M.D.N.C. 2005) ....................................................... 7

*Poe v. Babcock Int'l, PLC,*
662 F. Supp. 4 (M.D. Pa. 1985) ............................................................. 3

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
No. 07-633-JJF-LPS, slip op. (D. Del. Apr. 11, 2008) ..................................... 4-5, 8

*Sanofi-Aventis v. Synthon Holding B.V.,*
No. 1:07-CV-86, slip op. (M.D.N.C. Mar. 20, 2008) ........................................ 7

*Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc.,*
No. 96-227-JJF, slip op. (D. Del. June 30, 1998) ........................................ 4

*Veliz v. Americorp Builders, Inc.,*
No. 06-4363, 2007 U.S. Dist. LEXIS 43560 (D.N.J. June 15, 2007) ........................ 3

## INTRODUCTION

Synthon has failed to rebut Plaintiffs' arguments that jurisdictional discovery is needed –
and warranted – from Synthon. Synthon has placed this Court's jurisdiction over the four
Synthon defendants squarely at issue by moving to dismiss each of them for lack of personal
jurisdiction. But Synthon now seeks to prevent Plaintiffs, and this Court, from considering any
facts related to jurisdiction over Synthon *other* than what Synthon has chosen to include in its
motion to dismiss. Synthon cannot be permitted to do so.

Synthon concedes that Plaintiffs need only show that their request for jurisdictional
discovery is not clearly frivolous in order for the Court to grant the discovery that Plaintiffs seek.
But immediately thereafter, Synthon tries to reshape this low burden by citing cases from other
districts that rely upon a different standard for jurisdictional discovery. Synthon further confuses
the issue by relying upon decisions regarding motions to dismiss for lack of personal jurisdiction,
rather than motions for jurisdictional discovery. Those decisions obscure the proper standards
upon which Plaintiffs' motion should be decided.

Synthon also does not dispute the facts cited by Plaintiffs in support of their motion.
Instead, it attacks these facts one at a time, rather then addressing their collective import – that
jurisdictional discovery would not be clearly frivolous. Synthon insists that any information that
Plaintiffs could possibly need can be found on its website, but that is simply wrong. The
information on Synthon's website, much like the information in Synthon's motion to dismiss and
its supporting declarations, has been cherry-picked by Synthon. As Synthon is not a
publicly-held company, most of the information that is needed by Plaintiffs to respond to
Synthon's motion is confidential and remains unavailable. Moreover, the statements made in
Synthon's supporting declarations must be tested, rather than taken at face value, given the
inherent inequity in the parties' positions.

Finally, Synthon glosses over the other significant considerations that weigh in favor of jurisdictional discovery.  Denying Plaintiffs the jurisdictional discovery needed to respond to Synthon's motion would be extremely prejudicial, and Synthon's claims that such discovery would be costly and burdensome ring hollow.  If there were indeed no relevant contacts with Delaware, as Synthon claims, then the volume and expense associated with jurisdictional discovery will be low.  Moreover, Synthon's recent history of jurisdictional gamesmanship should not be overlooked.

<u>**ARGUMENT**</u>

I.    **SYNTHON HAS FAILED TO SHOW THAT PLAINTIFFS' MOTION FOR<br>JURISDICTIONAL DISCOVERY IS CLEARLY FRIVOLOUS**

    A.    <u>Synthon Misapprehends The Relevant Legal Standards</u>

As Synthon initially concedes (D.I. 80 at 2, 8), the standard for permitting jurisdictional discovery in this District is clear:  jurisdictional discovery should be allowed unless the plaintiffs' claim is clearly frivolous (D.I. 60 at 5-6).

Instead of basing its analysis on the correct standard, however, Synthon focuses upon *different* standards used by *other* district courts in deciding motions for leave to take jurisdictional discovery.  For example, Synthon cites three cases from the Eastern District of Pennsylvania (D.I. 80 at 8, 11, 13) that were decided based upon a different (and more stringent) standard.  *See, e.g.*, *Neary v. B & L Serv., Inc.*, No. 04-1072, 2004 U.S. Dist. LEXIS 9922, at *2-3 (E.D. Pa. May 12, 2004) ("[j]urisdictional discovery may be denied where the party that bears the burden of establishing jurisdiction fails to establish a 'threshold prima facie showing'

of personal jurisdiction.") (citation omitted).[1]  A threshold *prima facie* showing of personal jurisdiction is plainly not required for jurisdictional discovery in Delaware, and Synthon's attempt to reply upon a different standard to bolster its arguments is misplaced.

Similarly, Synthon relies upon an unpublished District of New Jersey decision for the blanket proposition that alleging "systematic and continuous contacts with Delaware" is "emblematic of the clearly frivolous standard." (D.I. 80 at 14.)   But that case is readily distinguishable on the facts.  *See Veliz v. Americorp Builders, Inc.*, No. 06-4363, 2007 U.S. Dist. LEXIS 43560 (D.N.J. June 15, 2007) (declining to grant jurisdictional discovery where the sole contact with New Jersey was plaintiff's work for a non-party subcontractor incorporated in New Jersey, and plaintiffs' lone argument rested on the unsupported and erroneous statement that plaintiffs maintained a particular internet website).  Here, by contrast, Plaintiffs have raised specific factual contacts between Synthon and Delaware, rather than fall back on generalized allegations of "systematic and continuous" contacts.

Synthon also tries to incorporate the much higher standard for a motion to dismiss into the lower standard relevant to a motion for jurisdictional discovery. (D.I. 80 at 9.)  At this time, however, consideration of the standards for a motion to dismiss for lack of jurisdiction is premature at best.  As previously discussed in Plaintiffs' motion (D.I. 60 at 6), this District has drawn a clear distinction between these two standards:

---

[1]  The two other Eastern District of Pennsylvania cases upon which Synthon erroneously relies are *Clark Capital Management Group, Inc. v. Navigator Investments, LLC*, No. 06-2334, 2006 U.S. Dist. LEXIS 66989 (E.D. Pa. Sept. 19, 2006) and *Brown v. AST Sports Science, Inc.*, No. 02-1682, 2002 U.S. Dist. LEXIS 12294 (E.D. Pa. July 1, 2002).  Synthon also cites a case from the Middle District of Pennsylvania, *Poe v. Babcock International, PLC.*, 662 F. Supp. 4 (M.D. Pa. 1985).  (D.I. 80 at 10.)

> Although a plaintiff is ultimately required to establish a prima facie
> case in support of the exercise of personal jurisdiction over a
> defendant, a plaintiff is not required to embark on that task
> unassisted. Rather, a plaintiff is entitled to take jurisdictional
> discovery in order to establish its prima facie case. ***In other
> words, the burden to establish a prima facie case in support of
> jurisdiction arises after the nonmoving party has had the
> opportunity to take jurisdictional discovery***.

*Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, No. 96-227-JJF, slip op. at 2 (D. Del. June 30,

1998) (emphasis added) (attached as Ex. A) (citing *Joint Stock Soc'y v. Heublein, Inc.*, 936 F.

Supp. 177, 192 (D. Del. 1996)). For purposes of deciding Plaintiffs' motion, the Court need only

consider whether Plaintiffs' claim for jurisdictional discovery is clearly frivolous.[2] Synthon's

unapologetic reliance on the wrong standard for jurisdictional discovery underscores the lengths

to which Synthon will go to avoid it.[3]

 Synthon's opposition also fails to mention a recent decision in which this Court granted

jurisdictional discovery. *See generally Power Integrations, Inc. v. BCD Semiconductor Corp.*,

No. 07-633-JJF-LPS, slip op. at 19-21 (D. Del. Apr. 11, 2008) (attached as Ex. B).[4] There, the

Court found that "dual jurisdiction" over a defendant could arise from at least partial satisfaction

---

[2] Synthon's opposition places a great deal of weight upon a decision that does not even address jurisdictional discovery, *Merck & Co., Inc. v. Barr Laboratories, Inc.*, 179 F. Supp. 2d 368 (D. Del. 2002). (D.I. 80 at 9, 11.) Instead, *Merck* is directed solely to a motion to dismiss for lack of personal jurisdiction. While *Merck* may later be relevant to Synthon's motion to dismiss (D.I. 48), the present motion does not turn upon *Merck*.

[3] Synthon also fails in its attempt to distinguish *Aladdin Knowledge Systems Ltd. v. Feitian Technologies Co.*, No. 05-149, slip op. (D. Del. Feb. 24, 2006). (D.I. 80 at 10.) Similar to the defendants in *Aladdin*, Synthon will have authority to distribute products on a wholesale basis, including the generic version of NAMENDA® (pending FDA approval of its ANDA), as a result of its Drug Wholesaler License in the State of Delaware.

[4] This decision was issued after Plaintiffs filed their motion for jurisdictional discovery but before Synthon filed its response.

of sections (c)(1) and (c)(4) of Delaware's long-arm statute, 10 Del. Code § 3104(c) (2004). *Id.*
at 15. The Court further found that dual jurisdiction could extend to defendants in patent cases,
explaining that "the touchstone of the dual jurisdiction analysis is intent and purpose to serve the
Delaware market." *Id.* at 11. In view of the possibility that dual jurisdiction existed over the
defendants, jurisdictional discovery was granted.[5] As discussed below, the contacts already
identified between Synthon and Delaware similarly favor granting jurisdictional discovery here.

B.     Synthon's Known Contacts With Delaware Meet The Requisite
       Standards For Jurisdictional Discovery

Synthon attacks its contacts with Delaware, as cited by Plaintiffs, individually, often with
conclusory statements that reduce to "this contact alone is not enough." (D.I. 80 at 9-14.)
However, Synthon's contacts with Delaware should be considered in their totality (not
one-by-one) for purposes of deciding whether jurisdictional discovery should proceed. *See, e.g.*,
*McNeil Nutritionals, LLC v. Sugar Ass'n*, No. 05-69, 2005 U.S. Dist. LEXIS 7628, at *11-13
(D. Del. Apr. 29, 2005).

When these contacts are considered as a whole, it is clear that jurisdictional discovery
from each of the Synthon entities is warranted. As required by the "clearly frivolous" standard,
Plaintiffs already have identified a number of significant contacts between Synthon and
Delaware:

(1)     Prior and current sales of two pharmaceutical products in Delaware;

(2)     A Delaware Drug Wholesaler License held by Synthon Pharma;

---

[5]  Synthon has inaccurately characterized the allegations of Plaintiffs' Complaint regarding
jurisdiction. (*See, e.g.*, D.I. 80 at 7 n.4.) Plaintiffs alleged that this Court has personal
jurisdiction over the Synthon entities (D.I. 31 at ¶¶ 34-37), but did not specify whether this
jurisdiction was general or specific. Regardless, personal jurisdiction need not be pled at all
for purposes of the Complaint.

(3)      Synthon Pharma's contractual ties with Ventiv Heath, Inc., which was incorporated in Delaware when it sold Synthon's pharmaceutical products throughout the United States, including Delaware; and

(4)      Synthon Labs' prior incorporation in Delaware[6]

(D.I. 60 at 7-9.)  Synthon does not deny that these contacts existed, but instead dismisses them as irrelevant.  (D.I. 80 at 3.)  However, the facts identified by Plaintiffs make clear that Synthon's contacts with Delaware provide the requisite evidence that further jurisdictional discovery is merited.  (D.I. 60 at 10.)

Synthon also fails to take on Plaintiffs' assertion that Synthon is in control of most, if not all, of the facts necessary to establish that the District of Delaware has jurisdiction over Synthon. (D.I. 60 at 5-6.)  Synthon's persistent reference to its website as the authoritative source for Synthon information is unavailing.  (D.I. 80 at 10.)  Contrary to Synthon's suggestion, its website is not analogous to an infallible "public record."  *See McNeil Nutritionals*, 2005 U.S. Dist. LEXIS 7628, at *11 ("[T]aking notice of the fact that statements on the internet are often written without the same precise intent as are, say, claims in a patent, and recalling the presumption in favor of permitting jurisdictional discovery, the court is convinced that the evidence presented by [plaintiff] is sufficient to permit limited and appropriate jurisdictional discovery to be taken from [defendant].").  There is no evidence that the statements on Synthon's website were vetted by any entity other than Synthon.  Synthon is a privately held company, so the information on its website cannot be corroborated by reference to other corporate disclosures

---

[6]  Synthon asserts that the omission of the subsequent certificate of dissolution from Plaintiffs' motion was "curious" (D.I. 80 at 12), even though Plaintiffs referenced this certificate therein and readily acknowledged that Synthon is no longer incorporated in Delaware.  (D.I. 60 at 9.)

(*e.g.*, annual reports) that are subject to government standards for truthful reporting of information.  Just because Synthon says it is so does not make it so.

Synthon also places undue weight upon its self-proclaimed "relevant" corporate diagram (D.I. 48-2 at Ex. A) and its own description of its corporate structure to rebut Plaintiffs' claims that discovery from the foreign Synthon entities, Synthon B.V. and Synthon Holdings B.V., is merited (D.I. 80 at 13).  At the same time, Synthon dismisses a district court decision that directly addresses Synthon's corporate structure.  (D.I. 60 at 9.)  *See Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666 (M.D.N.C. 2005).[7]  Moreover, even though Synthon does offer an explanation of the relationship between the Synthon entities, Synthon fails to explain why such a structure would mean that the foreign Synthon entities are not controlling Synthon Labs and Synthon Pharma in the United States.

Finally, Synthon does not directly address whether Plaintiffs should be afforded the opportunity to question the declarants upon which Synthon relies in its motion to dismiss (D.I. 48-2 ("van Uchelen Decl."), D.I. 48-3 ("Marchetti Decl."), D.I. 48-4 ("Hinckle Decl.")).  But precluding Plaintiffs from testing the declarations appended to Synthon's motion would be extremely prejudicial, especially given that Synthon relies heavily upon these declarations in its motion to dismiss (D.I. 48 at 6-8, 10-11, 13-17).  *See, e.g., Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995) ("A plaintiff who is a total stranger to a corporation should not

---

7  Synthon's characterization of a subsequent decision in the Middle District of North Carolina as finding that the foreign entities no longer dominate and control Synthon Labs (D.I. 80 at 13 n.7) is incorrect.  In that decision, the court stated, "This Court previously found that Synthon Labs was dominated and controlled by the other Synthon entities and was the alter ego of Synthon Pharms. ***The Court need not revisit that issue in the present case* . . . . "** *See Sanofi-Aventis v. Synthon Holding B.V.*, No. 1:07-CV-86, slip op. at 5 n.5 (M.D.N.C. Mar. 20, 2008) (emphasis added).

be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery.").

Synthon cannot dispute that a substantial amount of information that is relevant to its motion to dismiss is not publicly available, which effectively ties Plaintiffs' hands from responding. For example, Synthon's plans for marketing and distribution for its generic version of NAMENDA® (or any other pharmaceutical product) in Delaware are presumably non-public, and Plaintiffs need precisely this sort of information to have a fair opportunity to respond to Synthon's motion. As discussed above, Synthon's ANDA with the FDA to market and sell a generic form of Plaintiffs' NAMENDA® throughout the United States, including Delaware, will weigh in favor of exercising personal jurisdiction over Synthon. *See Power Integrations*, Civ. No. 07-633-JJF-LPS, slip op. at 13 ("[A] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware."). Plaintiffs should therefore have access to all information that may establish jurisdiction over Synthon in Delaware, rather than be forced to rely only upon information that is public or cherry-picked by Synthon as evidence of why personal jurisdiction in Delaware is *not* proper.[8]

---

8  Synthon also argues that an "artificial" act of infringement, which arises from the filing of its ANDA, is not enough to subject it to jurisdiction in Delaware. (D.I. 80 at 2.) However, the sole purpose of filing an ANDA is an intent and purpose to serve the United States market, including Delaware, which may support a finding of dual jurisdiction over Synthon. *See Power Integrations*, Civ. No. 07-633-JJF-LPS, slip op. at 13.

C.    Synthon Has Failed To Address Or Refute Additional
      Considerations That Favor Jurisdictional Discovery

Synthon's argument that jurisdictional discovery will "impose substantial expense and burden" is also puzzling.  (D.I. 80 at 1.)  Presumably, if Synthon's assertion that the Synthon entities do not have the requisite contacts with Delaware is correct, then there will be relatively little discovery to be provided to Plaintiffs.  To eliminate any concern that Plaintiffs may demand jurisdictional discovery from Synthon that is unduly burdensome, however, Plaintiffs will represent that any jurisdictional discovery to be served on Synthon would be identical in number and scope to the jurisdictional discovery that has already been served upon Orchid Chemicals and Pharmaceuticals, Ltd. ("Orchid India") in the companion case (Civil Action No. 08-21) (attached as Ex. C).

Synthon's prior jurisdictional gamesmanship also weighs in favor of allowing jurisdictional discovery to proceed.  In the past, Synthon has changed – and even reversed – its position regarding whether it is subject to personal jurisdiction in a given district.  For example, Synthon claims here that it would consent to jurisdiction in the Eastern District of Virginia because "[a] speedy resolution would result in an earlier introduction of generic competition to Plaintiffs' lucrative Namenda® product."[9]  (D.I. 80 at 6 n.3.)  But Synthon has recently stipulated to a dismissal of a case in that same district in favor of a New Jersey action.  A district court in the Eastern District of Virginia noted:

---

[9]  Synthon overlooks the key fact that a generic NAMENDA® product may be introduced in the United States before the expiration of the patent-in-suit only if that patent is proven invalid or not infringed, or following the expiration of the statutory stay on final ANDA approval.

> For its part, ***Synthon changed its position one hundred and eighty degrees***. After emphasizing the necessity of a prompt trial date and the importance of the public interest in the same, Synthon now complains of having to proceed at "break-neck speed."

*Eli Lilly & Co. v. Synthon Labs., Inc.*, No. 2:07-CV-450, slip op. at 5 (E.D. Va. Mar. 17, 2008) (emphasis added) (attached as Ex. D). Synthon has also recently withdrawn a motion to dismiss for lack of personal jurisdiction which it previously filed in the District of New Jersey. *See Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770-DMC (D.N.J. Apr. 14, 2008) (D.I. 138) (attached as Ex. E). It appears that Synthon's jurisdictional strategies have nothing to do with the presence or absence of jurisdiction.[10]

Synthon's prior consent to jurisdiction in the District of New Jersey and the Eastern District of Virginia also undermines its claims that the foreign Synthon entities, Synthon Holding B.V. and Synthon B.V., deserve "special vigilance to protect" them from unfairly being subject to jurisdiction in the District of Delaware. (D.I. 80 at 8.) Beyond its cursory protests, Synthon provides no reason that litigating a case in Delaware would be any more burdensome for foreign entities than litigating in New Jersey or Virginia. Synthon's position on this issue is just another attempt to cloud the straightforward issue at hand and avoid providing Plaintiffs with much-needed jurisdictional discovery.[11]

---

[10] As discussed in Plaintiffs' motion (D.I. 60 at 4), eleven of the thirteen ANDA filers in the two related cases have already consented to jurisdiction in Delaware. Considerations of judicial economy thus weigh strongly in favor of this Court exercising its jurisdiction over all named Defendants in those cases.

[11] Synthon also inaccurately characterizes an inadvertent contact between an administrative assistant and the President of Synthon Labs. (D.I. 80 at 6 n.3.) As clarified in a letter by Plaintiffs' counsel (attached as Ex. F), this contact was not made by or at the direction of an attorney and was the result of a misunderstanding.

## II.    SYNTHON AGREES THAT PLAINTIFFS SHOULD HAVE AN EXTENSION OF TIME TO RESPOND TO SYNTHON'S MOTION TO DISMISS

Synthon now agrees that an extension of time to respond to its motion to dismiss is merited even if Plaintiffs' motion for jurisdictional discovery is not granted (D.I. 80 at 14),[12] although the parties disagree on the appropriate length of this extension. Should their motion not be granted, Plaintiffs respectfully request an extension of thirty days to respond.

## CONCLUSION

For the foregoing reasons, and the reasons previously set forth in Plaintiffs' motion (D.I. 60), Plaintiffs respectfully request that the Court grant their Motion for Leave to Take Jurisdictional Discovery and to Extend Their Time to Answer Synthon's Motion to Dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

---

[12] Synthon's description of the timeline leading to its eleventh-hour response to Plaintiffs' request for an extension of time is puzzling. Synthon acknowledges that Plaintiffs' counsel first contacted Synthon's counsel on March 14, 2008, nearly *two weeks* before Plaintiffs' response to Synthon's motion to dismiss was due (March 27, 2008), and that this first communication was in the form of a telephonic conversation with Synthon's counsel (who was clearly not on vacation at that time). (*Compare* D.I. 80 at 3 n.1, *with id.* at 6-7 (citing Plaintiffs' "Opening Brief, p.11.").)

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022
(212) 446-4800

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939

April 24, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2008 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP
>
> John M. Seaman, Esquire
> Kevin G. Abrams, Esquire
> ABRAMS & LASTER LLP
>
> Elizabeth M. McGeever, Esquire
> Melissa N. Donimirski, Esquire
> PRICKETT, JONES & ELLIOTT, P.A.
>
> Joseph S. Naylor, Esquire
> BALICK & BALICK, LLC

I further certify that I caused to be served copies of the foregoing document on

April 24, 2008 upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire                                          *and HAND DELIVERY*
POTTER ANDERSON & CORROON LLP
1313 North Market Street – 6th Floor
Wilmington, DE  19801
*Attorneys for Interpharm Holdings, Inc. and*
*Interpharm, Inc.*

John M. Seaman, Esquire                                        *VIA ELECTRONIC MAIL*
Kevin G. Abrams, Esquire
ABRAMS & LASTER LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
*Attorneys for Kendle International Inc. and*
*Sun India Pharmaceutical Industries Limited*
*(a/k/a Sun Pharmaceutical Industries Limited)*

James F. Hurst, Esquire                                          *VIA ELECTRONIC MAIL*
Charles B. Klein, Esquire
Jay L. Levine, Esquire
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
*Attorneys for Kendle International Inc. and*
*Sun India Pharmaceutical Industries Limited*
*(a/k/a Sun Pharmaceutical Industries Limited)*

Louis H. Weinstein, Esquire                                      *VIA ELECTRONIC MAIL*
Bruce D. Radin, Esquire
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703
*Attorney for Dr. Reddy's Laboratories, Inc.*
*and Dr. Reddy's Laboratories Limited*

Elizabeth M. McGeever, Esquire                                  *VIA ELECTRONIC MAIL*
Melissa N. Donimirski, Esquire                                     *and HAND DELIVERY*
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19801
*Attorneys for Synthon Holding B.V., Synthon*
*B.V., Synthon Laboratories, Inc. and Synthon*
*Pharmaceuticals, Inc.*

E. Anthony Figg, Esquire                                         *VIA ELECTRONIC MAIL*
Joseph A. Hynds, Esquire
Lisa N. Phillips, Esquire
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K. Street, N.W.
Suite 800
Washington, DC 20005
*Attorneys for Synthon Holding B.V., Synthon*
*B.V., Synthon Laboratories, Inc. and Synthon*
*Pharmaceuticals, Inc.*

Joseph S. Naylor, Esquire
BALICK & BALICK, LLC
711 North King Street
Wilmington, DE 19801
*Attorneys Genpharm Inc., Genpharm, L.P. and*
*Mylan Pharmaceuticals Inc.*

Ron E. Shulman, Esquire
Terry Kearney, Esquire
Roger J. Chin, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304
*Attorneys Genpharm Inc., Genpharm, L.P. and*
*Mylan Pharmaceuticals Inc.*

*VIA ELECTRONIC MAIL*
*and HAND DELIVERY*

*VIA ELECTRONIC MAIL*

Jack B. Blumenfeld (#1014)

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JUN 30  5 09 FM '96

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

TRISTRATA TECHNOLOGY, INC.,       :
                                  :
                                  :
                                  :
          Plaintiff,              :
                                  :
     v.                           :    Civil Action No. 96-227-JJF
                                  :
NEOTERIC COSMETICS, INC., MURAD   :
SKIN RESEARCH LABORATORIES, INC., :
HOWARD MURDAD, M.D., ERNO LASZLO  :
DIVISION, CHANEL, INC. and        :
CLARINS USA, INC.,                :
                                  :
          Defendants.             :

## MEMORANDUM AND ORDER

          Presently before the Court is a Motion For Leave To

Take Discovery (D.I. 118) filed by Plaintiff, Tristrata

Technology, Inc. ("Tristrata").  By its Motion, Tristrata seeks

the Court's permission to take discovery to establish the Court's

personal jurisdiction over Defendant, Dr. Howard Murad ("Dr.

Murad").  In response, Dr. Murad opposes Tristrata's Motion on

the grounds that (1) Tristrata's "reverse agency" theory of

jurisdiction should be rejected by the Court as contrary to

Delaware law and inconsistent with prior decisions of the Court;

(2) Tristrata has failed to make a prima facie case from the

existing record that the Court has jurisdiction over Dr. Murad;

and (3) Tristrata failed to act diligently in pursuing discovery.

          As a general matter, "jurisdictional discovery should

be allowed unless the plaintiff's claim is 'clearly frivolous.'"

Massachusetts School of Law at Andover, Inc. v. American Bar

Ass'n, 107 F.3d 1026, 1042 (3d Cir.), cert denied, 118 S. Ct. 264
(1997). In a previous decision issued in this case, the Court
recognized that the "reverse agency" theory of jurisdiction is an
issue of first impression before the Court. Tristrata v.
Neoteric, et al., Civil Action No. 96-227-JJF, mem. op. (D. Del.
Mar. 31, 1997) (D.I. 83). Accordingly, absent further briefing
on this issue, the Court cannot conclude at this juncture that
the "reverse agency" theory is frivolous or contrary to Delaware
law.

Although a plaintiff is ultimately required to
establish a prima facie case in support of the exercise of
personal jurisdiction over a defendant, a plaintiff is not
required to embark on that task unassisted. Rather, a plaintiff
is entitled to take jurisdictional discovery in order to
establish its prima facie case. In other words, the burden to
establish a prima facie case in support of jurisdiction arises
after the nonmoving party has had the opportunity to take
jurisdictional discovery. Joint Stock Soc'y v. Heublein, Inc.,
936 F. Supp. 177, 192 (D. Del. 1996). Indeed, this principle is
in accord with the general "presumption in favor of allowing
discovery in order to establish personal jurisdiction." Hansen
v. Neumueller GmbH, 163 F.R.D. 471, 474 (D. Del. 1995).
Accordingly, the Court must reject Dr. Murad's argument that
Tristrata is not entitled to discovery until it establishes a
prima facie case of jurisdiction.

Despite the presumption favoring jurisdictional
discovery, jurisdictional discovery may not be permitted in

circumstances in which a plaintiff has failed to act diligently. Joint Stock Soc'y, 936 F. Supp. at 192. In this case, Dr. Murad argues that Tristrata has failed to pursue discovery diligently, because it did not immediately request discovery when Dr. Murad filed his current Motion To Dismiss (D.I. 107), but instead, negotiated two stipulated extensions with Dr. Murad to file its responsive brief. In reviewing the docket for this case, the Court notes that subsequent to these extensions, the parties have agreed to a stipulation allowing Tristrata to file its answer brief within specified time periods following the Court's decision on the Tristrata's Motion For Leave To Take Discovery. (D.I. 126). Given the parties consensual resolutions to the extensions sought by Tristrata, the Court cannot conclude that Tristrata failed to seek discovery diligently. Indeed, both parties have sought extensions with respect to various deadlines in this case. Accordingly, the Court declines to equate Tristrata and Dr. Murad's mutual agreement to extensions with a finding of a lack of diligence by Tristrata.

NOW THEREFORE, IT IS HEREBY ORDERED this 30 day of June 1998, for the reasons discussed, that Tristrata's Motion For Leave To Take Discovery (D.I. 118) is GRANTED.

UNITED STATES DISTRICT JUDGE

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 07-633-JJF-LPS |
| | : | |
| BCD SEMICONDUCTOR | : | |
| CORPORATION and SHANGHAI | : | |
| SIM-BCD SEMICONDUCTOR | : | |
| MANUFACTURING CO., LTD. | : | |
| | : | |
| Defendants. | : | |

William J. Marsden, Jr., Kyle Wagner Compton, FISH & RICHARDSON P.C.,Wilmington, DE; Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA; Howard G. Pollack, Michael R. Headley, FISH & RICHARDSON P.C., Redwood City, CA, Attorneys for Plaintiff.

Steven Balick, John G. Day, Tiffany Geyer Lydon, ASHBY & GEDDES, Wilmington, DE; E. Robert Yoches, Joyce Craig, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Washington DC; Robert L. Burns, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Reston, VA; Eric R. Puknys, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Palo Alto, CA, Attorneys for Defendant.

## **MEMORANDUM OPINION**

April 11, 2008
Wilmington, Delaware

**STARK, U.S. Magistrate Judge:**

Plaintiff Power Integrations, Inc. ("PI") is a Delaware corporation and maker of power supply chips incorporated into electronic devices such as cellular telephone chargers. PI owns several patents on its power supply chips, including U.S. Patent Nos. 6,249,876; 6,107,851; and 5,313,381. Defendant BCD California and Defendant SIM-BCD (collectively, "BCD" or "Defendants") are based in California and China, respectively. Defendants also manufacture power supply chips, including the AP3700, AP3700A, AP3700E, and AP3710 (the "accused products" or "accused chips"). PI claims that Defendants' chips infringe one or more of PI's patents.

In June 2007, PI filed suit for patent infringement against BCD in the Northern District of California. On October 15, 2007, PI dismissed its California suit and, on the same day, filed its action in this Court. On January 18, 2008, Defendants filed suit in the Northern District of California against PI, seeking a declaratory judgment of noninfringement.

Presently before me is Defendants' motion to dismiss PI's action due to a purported lack of personal jurisdiction. Defendants contend that they do not have sufficient contacts with Delaware to allow this Court to exercise jurisdiction over them. After reviewing the parties' briefs, as well as supplemental briefs I ordered, I find that the record is insufficiently developed to permit me to determine whether jurisdiction lies in this Court. Because PI has articulated theories which, if supported by evidence, would establish jurisdiction, I will order limited jurisdictional discovery.

1

## JURISDICTIONAL BACKGROUND

SIM-BCD is a Chinese company that has no physical presence in the United States. Its affiliate, BCD, maintains a two-person office in California. Neither of the Defendants have any offices, employees, or property in Delaware. Neither of them hold bank accounts in Delaware nor are registered to do business here. Nor is there any evidence in the record before me that either of the Defendants has ever directly transacted business or sold products in Delaware. To the contrary, Defendants have put before me declarations attesting that they "have not shipped or sold, directly or through a distributor or licensee, any BCD product into Delaware; have not given warranties to any Delaware customers; have not visited Delaware to meet with buyers of the accused products; have not solicited sales of the accused products from buyers in Delaware; and have had no continuing involvement in the manufacture, distribution, regulation, or use of any products shipped into Delaware." (D.I. 58 at 4 n.3 (citing Wang and Chan declarations))

Much of this PI concedes. PI asserts, nonetheless, that this Court has jurisdiction over Defendants under a "stream of commerce" theory. This argument is predicated on the undisputed fact that the Defendants' accused chips are readily available for sale in Delaware by virtue of their presence as components in cell phone chargers sold here by Samsung. In this way, according to PI, Defendants have an established distribution channel into Delaware for the accused chips. From this, PI insists, I should conclude that Defendants intend to serve the U.S. market, including Delaware, giving this Court jurisdiction.

PI has made a number of specific factual allegations, most of which are uncontested. These allegations, and Defendants' responses to them, are summarized below.

2

- *It is undisputed that, prior and subsequent to the filing of the complaint, Defendants' accused chips were and remain in Delaware as components in Samsung chargers.* PI estimates that tens of thousands of Samsung chargers containing BCD's accused chips have been shipped into Delaware through established sales channels and that approximately 17,000 of these chargers were sold in the State in the third quarter of 2007 alone. Defendants do not dispute these estimates. They emphasize, however, that no BCD chips have been offered for sale or sold in Delaware *as chips*; the chips are here solely as components in Samsung products, products Defendants had nothing to do with marketing or distributing. Defendants further observe that they sell the accused chips for less than $.06 each, so even accepting PI's sales estimates the revenue generated for Defendants from Samsung chargers sold in Delaware in one quarter was only about $1,000. This amounts to less than .0033% of SIM-BCD's revenues. (D.I. 43 at 5)

- *BCD has "established distribution channels" in the U.S., but has not used them to ship the accused products.* While attempting to raise $75 million for a proposed initial public offering (IPO) early in 2008, BCD told potential investors that it had a sales office and "established distribution channels" in the United States.[1] BCD has an agreement with Future Electronics, a Canadian company, to distribute its products throughout North America, including the United States and Delaware. Defendants explain, however, that they do not use any channels to distribute the accused products in the U.S. Moreover, "Future Electronics did not supply Samsung any accused product. . . . [T]o Defendants' knowledge, Future Electronics has not sold, offered for sale, or shipped *any* BCD product

---

[1] It appears that the IPO has not yet been completed.

3

into Delaware, and neither has BCD . . . ." (D.I. 58 at 6)

- *BCD has "close relationships" with end users of its products who regularly conduct business in the U.S., including in Delaware.* BCD's F-1 Registration Statement, filed in connection with the planned IPO, states that BCD "maintains close, direct relationships with key market-leading end users of our products," including Samsung. A video of BCD's road show presentation for the IPO also apparently features BCD touting its sales to Samsung.[2] Similarly, BCD's "Company Profile" notes that BCD has been "closely engaging with end-user applications" and "engaging custom ICs [Integrated Circuits] business with market leading companies." While Defendants do not (and cannot) deny these statements, they point out that none of their customers that happen to be Delaware corporations use the accused chips.

- *BCD's website is accessible throughout the U.S., including in Delaware.* Defendants assert, however, that one cannot purchase the accused chips on BCD's website. Nor does the record contain any evidence of how much, if at all, the site has been accessed by computers located in Delaware.

- *BCD attempted to raise large amounts of capital throughout the U.S. in connection with its planned IPO.* However, these financing efforts began in January 2008, months after PI filed its complaint in this action.

Vigorously disputed by the parties is whether Defendants knew and intended that their accused chips would end up in Delaware. PI insists that Defendants' accused chips "predictably

---

[2]This video seems to have been removed from the website the parties directed me to and I was unable to view it.

4

and intentionally . . . make their way to Delaware as a result of [BCD's] overall business plan."
(D.I. 53 at 9)  To PI, there "is no question" that BCD knew and intended that the accused chips
would be sold in Delaware.  *Id.*  In addition to the evidence cited above, PI explains that BCD
dispatched an attorney to Delaware to watch an earlier patent infringement trial (D. Del. C.A. No.
04-1371-JJF) in which PI was involved against Fairchild Semiconductor; Fairchild was
Samsung's principal supplier of power supply chips until a Delaware jury found Fairchild was
infringing PI's patents.

Defendants reply that BCD sells the accused chips to three Korean distributors, who in
turn sell them to five Korean manufacturers, who then make chargers for Samsung phones.  BCD
acknowledges it believed that the Korean manufacturers sold the chargers containing BCD chips
to Samsung in Korea, but BCD disclaims any knowledge as to how these chargers ended up in
the U.S.  The record contains sworn declarations of BCD officers to the effect that, prior to the
filing of this lawsuit, BCD did not know the accused chips were incorporated into any products
sold in Delaware.  PI responds that "BCD's purported ignorance is simply not credible."  (D.I. 53
at 6)

## LEGAL STANDARDS FOR CHALLENGES TO PERSONAL JURISDICTION

Determining the existence of personal jurisdiction requires a two-part analysis.  First, the
Court must consider whether a defendant's actions come within any of the provisions of
Delaware's long-arm statute.  *See Intel v. Broadcom,* 167 F. Supp.2d 692, 700 (D. Del. 2001).
Next, the Court must determine whether exercising jurisdiction over the defendant in this state
comports with the Due Process Clause of the Constitution.  *See id.*  Due Process is satisfied if the

Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

With respect to the first-step statutory inquiry, the Court applies the law of the state in which the district court is located. *See Intel*, 167 F. Supp.2d at 700. For the second-step Due Process analysis, the Court applies the law of the Federal Circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed Cir. 1994).

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for this Court's jurisdiction. *See Greenly v. Davis*, 486 A.2d 669, 670 (Del. Supr. 1984). To satisfy this burden, the plaintiff must make a prima facie showing that personal jurisdiction is conferred by statute. *See Harmon v. Eudaily*, 407 A.2d 232, 233 (Del. Super. Ct. 1979), *aff'd*, 420 A.2d 1175 (Del. Supr. 1980). All factual inferences must be viewed in the light most favorable to the plaintiff. *See Wright v. American Home Products Corp.*, 768 A.2d 518, 526 (Del. Super. Ct. 2000).

If a plaintiff fails to meet its burden of proof, but makes "factual allegations [that] suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity,'" the Court should order jurisdictional discovery. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005). However, "[a]fter discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence." *Philips Electronics North America Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) (citing

6

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

## DELAWARE'S LONG-ARM STATUTE

Delaware's long-arm statute, 10 Del. Code § 3104(c) (2004), provides in pertinent part:

A Delaware court has personal jurisdiction over a non-resident defendant only when that non-resident defendant, either in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Delaware's courts have construed Delaware's long-arm statute "liberally so as to provide

jurisdiction to the maximum extent possible. In fact, the only limit placed on § 3104 is that it

remain within the constraints of the Due Process Clause." *Boone v. Oy Partek*, 724 A.2d 1150,

1157 (Del. Super. Ct. 1997) (internal citations omitted), *aff'd*, 707 A.2d 765 (Del. Supr. 1998)

(table); *see also Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 480

(Del. Supr. 1992).[3]

All parties here agree that subsections (c)(2), (c)(3), (c)(5), and (c)(6) have no application to the facts of this case. PI asserts that this Court has jurisdiction over BCD pursuant to (c)(1), (c)(4), and a combination of both. (D.I. 31 at 18)

Subsection (c)(1) of the Delaware long-arm statute confers "specific" jurisdiction over a non-resident defendant; subsection (c)(4) confers "general" jurisdiction. *See, e.g., LaNuova D &B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del. Supr. 1986); *Jeffreys v. Exten,* 784 F. Supp. 146, 151 (D. Del. 1992). "'Specific' jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum. It contrasts with 'general' jurisdiction, in which the defendant's contacts have no necessary relationship to the cause of action." *Beverly Hills Fan,* 21 F.3d at 1562 n.10 (internal citations omitted); *see also Boone,* 724 A.2d at 1155.

## "STREAM OF COMMERCE" AND "DUAL JURISDICTION"

As already noted, PI asserts three bases for jurisdiction under Delaware's long-arm statute: (c)(1), (c)(4), and "dual jurisdiction" arising from at least partial satisfaction of (c)(1) and

---

[3]There are statements in Delaware decisions that might seem to question whether Delaware's long-arm statute is to be interpreted to the fullest extent the Constitution allows. *See, e.g., Red Sail Easter Partners v. Radio City Music Hall Productions,* 1991 WL 129174, at *3 (Del. Ch. July 10, 1991). Consequently, the Federal Circuit has written, "Delaware law is . . . unclear as to whether or not the long arm statute is coextensive with the due process clause." *Chi Mei,* 395 F.3d at 1322. It appears to me, however, that the Delaware courts do view the statute as reaching the full limits of the Due Process Clause – though the courts also emphasize that, nevertheless, the jurisdictional analysis must not be collapsed into a single constitutional inquiry. *See Wright,* 768 A.2d at 527 (describing "independence" of statutory and constitutional inquiries); *Hercules,* 611 A.2d at 483.

(c)(4). The Delaware courts have developed the concept of dual jurisdiction as they have grappled with application of the long-arm statute to situations where jurisdiction is claimed to be based on the "stream of commerce."

The "stream of commerce" theory is premised on the idea that a non-resident that places its product in the marketplace may, under certain circumstances, be found to have sufficient contacts for jurisdictional purposes with any state in which its product ends up. As a theory of personal jurisdiction, it has been recognized and endorsed (subject to certain limitations) by the Supreme Court and the Federal Circuit, as well as the Third Circuit (among other courts of appeals). *See Asahi Metal Industry Co. v Superior Court of California*, 480 U.S. 102, 112 (1987); *Beverly Hills Fan*, 21 F.3d at 1564; *Renner v. Lanard Toys Limited*, 33 F.3d 277, 280 (3d Cir. 1994).

Delaware state courts have likewise held that a stream of commerce theory of jurisdiction may satisfy Delaware's long-arm statute. *See, e.g., Boone*, 724 A.2d at 1157-58. However, the stream of commerce theory does not fit comfortably within any particular provision of Delaware's statute. This is because stream of commerce is a theory of specific jurisdiction. *See Renner*, 33 F.3d at 280. But it does not fit within subsection (c)(1) – the only potentially applicable specific jurisdiction provision – because (c)(1) "requires that some act on the part of the defendant . . . have occurred in Delaware," *Boone*, 724 A.2d at 1156, yet stream of commerce jurisdiction does not. *See also id.* ("When a manufacturer passes title to goods to a third party outside of Delaware, it is not deemed to have performed an act in this State."). Neither, however, does the stream of commerce theory fit within subsection (c)(4), since (c)(4) provides general – and not specific – jurisdiction.

9

The Delaware Supreme Court first confronted this dilemma in *LaNuova* stating, in dicta:

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under
> (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently
> extensive to reach the transactional level of (c)(1) and there was a nexus between
> the tort claim and the transaction of business or performance of work.

513 A.2d at 768 n.3. While *LaNuova* recognized the potential viability of the concept of dual

jurisdiction, it did not need to rely on it, as the non-resident manufacturer opposing jurisdiction

in that case satisfied the requirements of § 3104(c)(4) through its marketing efforts, including

delivery of warranties upon installation of its roofing materials by third-party contractors in

Delaware. *Id.* at 769-70.

The *La Nuova* dual jurisdiction analysis was expounded upon in *Boone.* There, the

Delaware Superior Court found that it had jurisdiction over a Finnish asbestos manufacturer that

engaged a distributor to sell its asbestos to Delaware customers, even though the defendant's

actions did not establish jurisdiction under (c)(1). Recognizing that the stream of commerce

theory of personal jurisdiction had been determined to be consistent with Due Process by the

United States Supreme Court, and relying on Delaware's policy of extending jurisdiction to the

limits of Due Process, the *Boone* Court applied the *La Nuova* concept of dual jurisdiction. *See*

724 A.2d at 1156-58. Dual jurisdiction, *Boone* stated, "best encompasses all of the intricacies of

the stream of the stream of commerce theory, taking into account the relationship between the

manufacturer and the forum and the relationship between the controversy and the forum." *Id.* at

1157-58.

*Boone* went on to reconcile stream of commerce theory with the Delaware statutory

framework, explaining:

10

> [O]ne must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this
> analysis. It is not important that the indicia of activity under § 3104(c)(4) rise to a
> level of "general presence" as usually required. Instead, the enumerated activities
> in this section should be analyzed to determine whether there is an intent or
> purpose on the part of the manufacturer to serve the Delaware market with its
> product. Likewise, when analyzing § 3104(c)(1) it is not important that the
> manufacturer itself act in Delaware. Instead, if the intent or purpose on behalf of
> the manufacturer to serve the Delaware market results in the introduction of the
> product to this State and plaintiff's cause of action arises from injuries caused by
> that product, this section is satisfied.

*Id.*

Under *Boone*, the touchstone of the dual jurisdiction analysis is <u>intent and purpose to serve the Delaware market</u>. *See id.* at 1158. Applying this concept to the facts presented in *Boone*, the Superior Court found the manufacturer's intent and purpose to serve Delaware implicit in its intent to serve the United States as a whole through its distributor. *See id.* It further found indicia of activity relevant to § 3104(c)(4) in the actual shipment of asbestos through distribution channels into Delaware, and in evidence that the manufacturer derived substantial revenue from Delaware. *See id.* Because the indicia of activity under (c)(4) were sufficient to reach the transactional level of (c)(1), and a nexus existed between the tort claim and the manufacturer's product (the claim was for injury from exposure to the asbestos), *Boone* found a proper basis for exercise of personal jurisdiction. *Id.* The Delaware Supreme Court affirmed the Superior Court's jurisdictional analysis.[4]

The Delaware Superior Court revisited the concept of dual jurisdiction in *Wright*, 768

---

[4]The Delaware Supreme Court's short affirmance order only references subsection (c)(4), but I read this as an affirmance of *Boone*'s adoption and application of the concept of dual jurisdiction. The Supreme Court's order praises the "well-reasoned" decision of the Superior Court. 707 A.2d at 765. That decision, as explained above, found jurisdiction based on dual jurisdiction.

11

A.2d at 518, with a similar result. The French defendants who challenged jurisdiction in *Wright* licensed various U.S. entities to manufacture and sell diet pills throughout this country. *See id.* at 529. Finding a "clear pattern of repeated activity" in Delaware, evidenced by substantial sales in Delaware, the *Wright* Court found it had jurisdiction over the French defendants pursuant to subsections (c)(1) and (c)(4) under a dual jurisdictional analysis. *See id.* at 530. As in *Boone*, in *Wright* the Superior Court found the French defendants' intent and purpose to serve Delaware implicit in their interactions with third parties who in turn served the Delaware market. *Id.* at 531.

Based on these precedents, I believe that Delaware law requires me to consider the potential application of Delaware's concept of dual jurisdiction.

Arguing against this conclusion, BCD observes that no court has yet applied Delaware's concept of dual jurisdiction to a patent case. (D.I. 58 at 1, 6) In making this argument, Defendants rely on two precedents of this Court. In *Siemens Aktiengellschaft v. LG Semicon Co.*, 69 F. Supp.2d 622, 623 (D. Del. 1999), this Court held that it lacked jurisdiction over Korean subcomponent manufacturer LG Semicon, whose "DRAM chips" were sold to original equipment manufacturers through sales representatives and an independent national distributor, eventually ending up in electronic devices sold in Delaware. In *M & M Technologies, Inc. v. Gurtler Chemicals, Inc.*, 2005 WL 293509 (D. Del. Feb. 8, 2005), this Court ruled that it lacked jurisdiction over a non-resident chemical subcomponent manufacturer. BCD is correct that neither of these prior decisions, nor any others of this Court of which I am aware, expressly applied Delaware's concept of dual jurisdiction. However, it is also true that no prior decision of

12

this Court has ever explicitly discussed – much less rejected – its application in a patent case.[5]

I see no reason to believe that dual jurisdiction should not apply in a patent case. The injury imposed by patent infringement is analogous to the injury imposed in the more traditional type of tort action in which the Delaware courts have developed the concept of dual jurisdiction. *See generally Beverly Hills Fan*, 21 F.3d at 1563 (explaining that patent infringement involves infliction of injury upon victim, just as in personal injury tort matters); *id.* at 1571 ("[T]he situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee . . . ."); *Chi Mei*, 395 F.3d at 1318 ("Our cases make clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made."). The cases within this District that have analyzed issues of personal jurisdiction in patent cases have regularly relied on *LaNuova*, *Boone*, and *Wright*, the very cases in which the concept of dual jurisdiction was developed.

Finally, it must be noted that a non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware. *See Tobin v Astra Pharmaceutical Prod., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614-15 (8th Cir. 1994). Delaware's courts do not require evidence that Delaware itself was specifically targeted (which, given the size of this state, would presumably exist rarely if ever). *See Wright*,

---

[5]In *ICT Pharms, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp.2d 268, 271-72 & n.4 (D. Del. 2001), this Court applied the stream of commerce theory to a patent case. In doing so, the Court considered the possibility of finding jurisdiction even after concluding that none of the long-arm statute's individual subsections were satisfied. *See id.* This is consistent with what I have held here.

13

768 A.2d at 530 (explaining that engagement of exclusive distributor to serve U.S. market evidences intent and purpose to serve Delaware market, since "[i]mplicit in this agreement is the fact that [Defendant sought to] solicit business from the Country as a whole, including Delaware"); *Boone*, 724 A.2d at 1160-61 ("[N]umerous courts have concluded that a manufacturer who distributes their product through a national or regional distributor have established minimum contacts with the forum state. [The] argument that the distribution agreement was national in scope and cannot confer personal jurisdiction in Delaware must fail.").

## APPLICATION OF DELAWARE'S LONG-ARM STATUTE TO THIS CASE

No one provision of the Delaware long-arm statute captures the facts of this case. Subsection (c)(1) is not satisfied because no act related to the accused product has been taken by Defendants within the State of Delaware, as that provision requires. *See Boone*, 724 A.2d at 1156.

Neither is subsection (c)(4) satisfied. A defendant need only meet one of several criteria (c)(4) lists disjunctively: do or solicit business in the State, engage in any other persistent course of conduct in the State, or derive substantial revenue from services or things used or consumed here. *See LaNuova*, 513 A.2d at 769. But none of these have been demonstrated to be present here. Though BCD has touted its "established distribution channels" and "close, direct relationships" with end users such as Samsung, the record does not at this point demonstrate that Defendants have done or solicited business or taken any other persistent course of conduct in Delaware. Furthermore, while it is not clear what amount of revenue is needed to satisfy the "substantial revenue" standard, the dollar figures alleged here do not, on their own, establish the

14

type of continuous and substantial presence this provision is aimed at identifying. *Compare M & M Technologies*, 2005 WL 293509, at *5 ("[W]hen a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction.").

Having concluded that neither (c)(1) nor (c)(4) are satisfied on the record before me, Defendants would have me end the analysis and recommend dismissal of this action for lack of personal jurisdiction. However, I believe it is necessary in the instant case to proceed further and determine whether this Court can exercise jurisdiction pursuant to Delaware's concept of dual jurisdiction. For dual jurisdiction to be satisfied, there must be "an intent or purpose on the part of the manufacturer [here, BCD] to serve the Delaware market with its product." *Boone*, 724 A.2d at 1158. This does not mean, however, that the record must show a specific reference to the State of Delaware on the part of BCD; it is enough if, based on ongoing relationships with others in the stream of commerce, "it was reasonably foreseeable that [BCD's] accused [products] . . . would make their way into the Delaware market." *Philips*, 2004 WL 503602, at *4. While PI has insisted that BCD had an intent and business plan to see its accused chips end up throughout the United States, BCD's declarations contradict this assertion. As yet, PI has not made a record to back up its claims.

## DUE PROCESS

Even if the present record established that BCD comes within the reach of Delaware's long-arm statute, it would still be necessary to determine whether exercising jurisdiction over BCD would comport with Due Process. The Supreme Court has held that satisfying due process

requires the existence of "certain minimum contacts" between the defendant and the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. These "minimum contacts" must be "purposeful." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The purposefulness requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1565.

The Supreme Court has not decided on the appropriate test for determining when "minimum contacts" are present in a stream of commerce case. In a 4-4 split decision in *Asahi*, 480 U.S. at 107, the Court set out two tests, neither of which attracted a majority of the justices. The first of these tests, proposed by Justice O'Connor, requires placement of the product into the stream of commerce plus "an act of the [non-resident] defendant purposefully directed toward the forum State." *Id.* at 112. Such additional conduct is important because it "may indicate an <u>intent or purpose to serve the market in the forum State</u>." *Id.* (emphasis added). Justice O'Connor listed several examples of "additional conduct" sufficient to demonstrate a defendant's intent to serve a forum State: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* The second test, proposed by Justice Brennan, requires only that a non-resident defendant be "aware that the final product is being marketed in the forum State" through established distribution channels, with no finding of "additional conduct" necessary. *Id.* at 117. The Federal Circuit has yet to decide "whether Justice Brennan's standard is sufficient to satisfy due process, because [it has] yet to be presented with facts that do not meet the more rigorous

16

standard adopted by Justice O'Connor." *Chi Mei*, 395 F.3d at 1322 n.7.

The analysis required to determine whether personal jurisdiction exists under Delaware's concept of "dual jurisdiction" pursuant to Delaware's long-arm statute is functionally equivalent to Justice O'Connor's test for determining whether an exercise of jurisdiction comports with Due Process in a stream of commerce case. *See Boone*, 724 A.2d at 1159 n.4 (describing dual jurisdiction analysis as analogous to Justice O'Connor's plurality opinion in *Asahi*); *see also Mayhall v. Nempco, Inc.*, 1994 WL 465545, at *5 (Del. Super. Ct. July 29, 1994) (adopting O'Connor's view). *But see Chi Mei*, 395 F.3d at 1322 ("Delaware law is unclear as to whether the proper interpretation of the long arm statute accords with Justice O'Connor's or Justice Brennan's view as expressed in *Asahi*."). Both the O'Connor test and the concept of "dual jurisdiction" look to the non-resident defendant's "intent or purpose" to serve the Delaware market.

## JURISDICTIONAL DISCOVERY

In *Chi Mei*, the Federal Circuit vacated a decision of this Court that had found no jurisdiction over Chi Mei, a Taiwanese manufacturer of LCD modules that were incorporated into other companies' products and sold in Delaware. 395 F.3d at 1315. The chain from the alleged infringer to the Delaware consumer had one fewer link than in the instant case: Chi Mei sold the accused LCDs to original equipment manufacturers who used them and then shipped their product to brand name computer manufacturers, who then shipped to retail outlets. *See id.* at 1317. In moving to dismiss, Chi Mei did not submit any evidence to contradict plaintiff's allegation that it derived substantial revenue from Delaware or that its products, once

17

incorporated into other companies' computer monitors, were likely to reach Delaware. *See id.* at 1318. This Court granted the motion, rejecting the argument that various subsections of Delaware's long-arm statute, including (c)(1) and (c)(4), conferred jurisdiction.

The Federal Circuit found that the district court imposed too high a burden of proof on the plaintiff, which -- based on its own evidence and Chi Mei's failure to rebut the factual inference that incorporating products were sold in Delaware -- had demonstrated that substantial revenue could have been earned by Chi Mei here, perhaps sufficient to meet the standard for general jurisdiction under (c)(4). *See id.* at 1320. Having set forth "factual allegations [that] suggest the possible existence of requisite contacts between the defendant and the forum State with 'reasonable particularity,'" the Federal Circuit remanded the case with orders to allow the plaintiff to take jurisdictional discovery. *Id.* at 1323.[6] The Court listed examples of pertinent discovery, including inquiries into Chi Mei's ongoing relationships with Delaware retailers, knowledge that its products were being shipped to Delaware, design and marketing efforts directed to the U.S. market (necessarily including Delaware), and a "demonstration that [Chi Mei's] website serves as a channel for providing regular advice to customers in the forum State." *Id.*

Here, PI insists that BCD's protestations that it did not know its accused products would end up in Delaware are "simply not credible." (D.I. 53 at 6; *see also id.* at 9 (asserting, without evidence, that BCD's products "predictably and intentionally . . . make their way to Delaware as

---

[6] The Federal Circuit observed that "the scope of the stream of commerce theory under Delaware law is not clear, and the issue has yet to be directly addressed by the Delaware Supreme Court." *Chi Mei*, 395 F.3d at 1320. This lack of clarity may have been another factor inclining the Federal Circuit to remand for jurisdictional discovery, to ensure that the jurisdictional issue would be resolved on an adequate record.

a result of [BCD's] overall business plan")) That may well be. *See generally In re Elonex Phase II Power Mgmt. Litig.,* 2003 WL 21026758, at *2 (D. Del. May 6, 2003) (finding jurisdiction over manufacturer of monitor incorporated as component in computers, stating that manufacturer's extensive reseller networks in Delaware and on internet meant it could not "credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels"). Unfortunately for PI, its conclusory statements are not evidence.

I am left with two options: dismiss for lack of jurisdiction, or order limited discovery targeted to evaluating the credibility of BCD's asserted lack of knowledge and intent. In light of the Federal Circuit's guidance in *Chi Mei,* I believe I must take the latter course.

PI has made out a prima facie case for jurisdictional discovery. Its factual allegations at least suggest, with reasonable particularity, the possible existence of requisite contacts between Defendants and Delaware. If Defendants knew that their accused chips would be incorporated into Samsung's products, and if Defendants further knew that Samsung would distribute these products throughout the United States, a finding of an intent and purpose to serve the United States market, including Delaware, may well be justified. BCD's representations in its financial documents touting its "established distribution channels" in the U.S., as well as its "close relationships" with end users having extensive marketing and sales operations throughout this country (including Samsung), make it plausible to believe that BCD may have had an intent that the accused chips end up in Delaware. But I cannot premise jurisdiction on conjecture. PI must come forward with evidence.

After I ordered supplemental briefing, PI set out eight specific discovery requests relating

19

to personal jurisdiction. (D.I. 53 at 10) Several of these requests are overly broad, seeking

evidence that has nothing to do with the accused products. The outstanding, dispositive issue is

quite narrow: is there evidence of BCD's intent and purpose to serve the Delaware market, as

part of the United States market, with the accused chips? Such an intent and purpose may be

shown by actual knowledge that the established distribution channels of others in the stream of

commerce would predictably and regularly result in the entry of BCD's chips into Delaware

(either as stand-alone products or as components of other products).

I will order jurisdictional discovery limited to the following:

1.    Copies of BCD's agreements with its distributors to the extent such agreements
      relate to the accused products (AP3700, AP3700A, AP3700E, AP3710).

2.    All documents relating to the design or testing of BCD power supply chips, or
      Samsung products incorporating BCD power supply chips, for compliance with
      U.S. regulatory standards for safety (e.g. UL), EMI (e.g. FCC) or energy
      efficiency (e.g. Energy Star).

3.    All documents relating to BCD's efforts to analyze the U.S. market for its power
      supply chips or any end product incorporating its power supply chips.

4.    Documents related to BCD's efforts to solicit sales of its power supply chips to
      U.S. companies.[7]

5.    Any records or logs of communications relating to the accused products or
      products incorporating power supply chips between BCD and U.S. residents,
      including in Delaware, through BCD's website or electronic mail.

6.    Any evidence that BCD intended to exclude Delaware or a region including
      Delaware from its efforts to market, distribute, or sell power supply chips in the
      U.S.

---

[7]For reasons explained earlier in this opinion, I reject BCD's contention (D.I. 58 at 9-10)
that discovery relating to the U.S. market generally would not show actions purposefully directed
to Delaware. Any evidence that Defendants use Future Electronics (or any other distributor) to
deliver the accused chips to the United States, from which they might enter Delaware, may
constitute evidence supporting a finding of intent to serve the Delaware market.

7.      Deposition(s) of a knowledgeable person or persons pursuant to FRCP 30(b)(6) on the foregoing topics.

## CONCLUSION

I will discuss with the parties in the coming days the timing of the discovery I have ordered and the impact of this ruling on the previously-issued schedule for briefing and arguing PI's pending preliminary injunction motion.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,        :
                                          :

        Plaintiff,              :

                                          :

        v.                       :         Civ. No. 07-633-JJF-LPS

                                          :

BCD SEMICONDUCTOR        :
CORPORATION and SHANGHAI     :
SIM-BCD SEMICONDUCTOR     :
MANUFACTURING CO., LTD.      :

                                          :

        Defendants.          :

---

## ORDER

At Wilmington this 11th day of April, 2008, the Court having considered the parties'

briefing and supplemental briefing on Defendants' motion to dismiss for lack of personal

jurisdiction (D.I.10-11, 31, 43, 53, 58), and for the reasons set forth in the Memorandum Opinion

issued this same date,

IT IS HEREBY ORDERED THAT Defendants are to produce to Plaintiff the following

discovery:

1.     Copies of BCD's agreements with its distributors to the extent such agreements relate to the accused products (AP3700, AP3700A, AP3700E, AP3710).

2.     All documents relating to the design or testing of BCD power supply chips, or Samsung products incorporating BCD power supply chips, for compliance with U.S. regulatory standards for safety (e.g. UL), EMI (e.g. FCC) or energy efficiency (e.g. Energy Star).

3.     All documents relating to BCD's efforts to analyze the U.S. market for its power supply chips or any end product incorporating its power supply chips.

4.   Documents related to BCD's efforts to solicit sales of its power supply chips to U.S. companies.

5.   Any records or logs of communications relating to the accused products or products incorporating power supply chips between BCD and U.S. residents, including in Delaware, through BCD's website or electronic mail.

6.   Any evidence that BCD intended to exclude Delaware or a region including Delaware from its efforts to market, distribute, or sell power supply chips in the U.S.

7.   Deposition(s) of a knowledgeable person or persons pursuant to FRCP 30(b)(6) on the foregoing topics.

IT IS HEREBY FURTHER ORDERED that the Court will conduct a teleconference with the parties to discuss the timing for Defendants to provide the foregoing discovery, and the impact, if any, of this Order on the previously-issued schedule for resolving Plaintiff's pending motion for a preliminary injunction, on Tuesday, April 15, 2008 at 1:00 p.m.  Plaintiff shall initiate the teleconference at **(302) 573-4573.**

IT IS HEREBY FURTHER ORDERED that the parties shall confer and in good faith attempt to reach agreement on the issues the Court will address during the teleconference.

_____
Honorable Leonard P. Stark
United States Magistrate Judge

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FOREST LABORATORIES, INC., FOREST LABORATORIES HOLDINGS, LTD., MERZ PHARMA GMBH & CO. KGAA, and MERZ PHARMACEUTICALS GMBH,<br><br>Plaintiffs,<br><br>v.<br><br>COBALT LABORATORIES INC., LUPIN PHARMACEUTICALS, INC., LUPIN LTD., ORCHID PHARMACEUTICALS INC., ORCHID CHEMICALS & PHARMACEUTICALS LTD. (d/b/a ORCHID HEALTHCARE), TEVA PHARMACEUTICALS USA, INC., UPSHER-SMITH LABORATORIES, INC., WOCKHARDT USA INC., and WOCKHARDT LIMITED,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>C.A. No.  08-021 (GMS) (LPS) |

**PLAINTIFFS' INTERROGATORIES IN CONNECTION WITH
JURISDICTIONAL DISCOVERY FROM THE ORCHID DEFENDANTS**

Pursuant to Rules 33 and 26, Fed. R. Civ. P., Local Civil Rule 26.1, and the parties' Stipulated Jurisdictional Discovery Schedule, Plaintiffs Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Merz Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH (collectively, "Plaintiffs") hereby request that Defendants Orchid Chemicals and Pharmaceuticals, Ltd. and Orchid Pharmaceuticals, Inc. (collectively, "Orchid") answer the following interrogatories.  The requested answers must be provided within (30) days of service of these interrogatories, or at such time as may be agreed to in writing by counsel for the parties.

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Plaintiffs' Requests for the Production of Documents and Things in Connection with Jurisdictional Discovery from the Orchid Defendants are hereby incorporated by reference.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Indicate the amounts of Orchid's sales, on a dollar and unit basis by month since 2002, of each of its products generally in the United States and specifically in Delaware.

### INTERROGATORY NO. 2:

Indicate the amounts of Orchid's purchases, on a dollar and unit basis by month since 2002, of any materials, products or services from vendors or suppliers located or incorporated generally in the United States and specifically in Delaware.

### INTERROGATORY NO. 3:

Identify all trips for business purposes that any employee or agent of Orchid has made to Delaware since 2002, including any seminars, trade shows, forums, conferences, conventions, symposiums or meetings that any employees or agents have attended, or in which Orchid or any of its employees or agents have participated.

### INTERROGATORY NO. 4:

Identify and describe all marketing, advertising, promotion, offers for sale or sales of any product or service in Delaware by Orchid, including when each such marketing, advertising, promotion, offer for sale or sale began; the subject matter of the marketing, advertising, promotion, offer for sale or sale; the form of the marketing, advertising, promotion, offer for sale or sale; and an identification of the person(s) involved.

**INTERROGATORY NO. 5:**

Identify and describe all agreements or contracts entered into between Orchid and any person or entity located or incorporated in Delaware, including but not limited to agreements or contracts whereby any person or entity has distributed, sold, or offered to distribute or sell any Orchid product.

**INTERROGATORY NO. 6:**

Identify any real property owned or leased by Orchid in Delaware and describe the manner in which that property is used.

**INTERROGATORY NO. 7:**

Identify any registration, or application for registration, submitted by Orchid to any governmental entity in Delaware, including but not limited to registrations to conduct business or licenses to distribute or sell pharmaceutical or chemical products.

**INTERROGATORY NO. 8:**

Identify any telephone or facsimile number or listing that has been established on behalf of Orchid and that has routed communications to or from Delaware since 2002.

**INTERROGATORY NO. 9:**

Identify any depository relationship that has been established on behalf of Orchid with any financial institution that transacts business in Delaware since 2002.

**INTERROGATORY NO. 10:**

Identify any Medicaid payments that have been tendered directly or indirectly to Orchid in consideration for the sale of any Orchid product or service in Delaware since 2002.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_(signature)_

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022
(212) 446-4800

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939

April 17, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to

be served on April 17, 2008 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL**
<u>**and HAND DELIVERY**</u>

Mary B. Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE  19801
*Counsel for Cobalt Laboratories Inc.*

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Counsel for Upsher-Smith Laboratories Inc.*

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street – 6th Floor
Wilmington, DE  19801
*Counsel for Orchid Pharmaceuticals Inc. and*
*Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid*
*Healthcare)*

Richard D. Kirk, Esquire
Ashley B. Stitzer, Esquire
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

## VIA ELECTRONIC MAIL

William A. Rakoczy, Esquire
Paul J. Molino, Esquire
Deanne M. Mazzochi, Esquire
Neil A. Benchell, Esquire
John Polivick, Esquire
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, IL 60610
*Counsel for Cobalt Laboratories Inc.*

Douglass C. Hochstetler, Esquire
D. Christopher Ohly, Esquire
Sailesh K. Patel, Esquire
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

Kenneth G. Schuler, Esquire
LATHAM & WATKINS LLP
Sears Tower – Suite 5800
233 South Wacker Drive
Chicago, IL 60606
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Terrence J. Connolly, Esquire
LATHAM & WATKINS LLP
885 Third Avenue – Suite 1000
New York, NY 10022-4834
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Darryl H. Steensma, Esquire
LATHAM & WATKINS LLP
12636 High Bluff Drive – Suite 300
San Diego, CA  92130
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Michael Dzwonczyk, Esquire
Mark Boland, Esquire
Chid Iyer, Esquire
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  23307
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Maryellen Noreika (#3208)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FOREST LABORATORIES, INC.,       )
FOREST LABORATORIES HOLDINGS,    )
LTD., MERZ PHARMA GMBH & CO.     )
KGAA, and MERZ PHARMACEUTICALS   )
GMBH,                            )
                                 )
                  Plaintiffs,    )
                                 )
         v.                      )    C.A. No. 08-021 (GMS) (LPS)
                                 )
COBALT LABORATORIES INC., LUPIN  )
PHARMACEUTICALS, INC., LUPIN LTD.,)
ORCHID PHARMACEUTICALS INC.,     )
ORCHID CHEMICALS &               )
PHARMACEUTICALS LTD. (d/b/a ORCHID)
HEALTHCARE), TEVA                )
PHARMACEUTICALS USA, INC.,       )
UPSHER-SMITH LABORATORIES, INC., )
WOCKHARDT USA INC., and          )
WOCKHARDT LIMITED,               )
                                 )
                  Defendants.    )

## PLAINTIFFS' REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CONNECTION WITH JURISDICTIONAL DISCOVERY FROM THE ORCHID DEFENDANTS

Pursuant to Rules 26 and 34, Fed. R. Civ. P., Local Rule 26.1, and the parties' Stipulated Jurisdictional Discovery Schedule (D.I. 64), Plaintiffs Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Merz Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH (collectively, "Plaintiffs") hereby request that Defendants Orchid Chemicals and Pharmaceuticals, Ltd. and Orchid Pharmaceuticals, Inc. produce the documents and things requested below. The requested documents and things must be produced within (30) days of service of these requests at the offices of Kirkland & Ellis LLP, Citigroup Center, 153 E. 53rd

Street, New York, NY 10022, or at such time as may be agreed to in writing by counsel for the parties.

## DEFINITIONS

      1.     "Orchid" shall refer to Defendant Orchid Chemicals and Pharmaceuticals, Ltd., Orchid Pharmaceuticals, Inc., and all of their respective corporate parents, corporate predecessors and past or present subsidiaries, affiliates, divisions, departments, officers, directors, principals, agents and employees.

      2.     "Forest" shall refer to Plaintiff Forest Laboratories, Inc. and Plaintiff Forest Laboratories Holdings, Ltd.

      3.     "Merz" shall refer to Plaintiff Merz Pharma GmbH & Co. KGaA and Plaintiff Merz Pharmaceuticals GmbH.

      4.     "ANDA No. 90-044" shall refer to Abbreviated New Drug Application No. 90-044.

      5.     "FDA" shall refer to the U.S. Food and Drug Administration.

      6.     "Paragraph IV Certification" shall refer to a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

      7.     "The '703 patent" shall refer to U.S. Patent No. 5,061,703.

      8.     "Document" shall have the full meaning ascribed to it by the Federal Rules of Civil Procedure and shall include any means for retaining information.

      9.     "Concerning" shall mean relating to, referring to, bearing on, regarding, describing, evidencing, reflecting, comprising or constituting.

      10.     "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive; use of a singular noun shall be

construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; and the use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the request that which might otherwise be construed to be outside its scope.

11.    "Communication" shall include any conveyance of information.

12.    "Person" means any natural person or any business, legal or governmental entity or association.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All documents concerning any activities of Orchid occurring in Delaware from 2002 to present.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning any communications, business relationships or other contacts between Orchid and any person or entity located or incorporated in Delaware from 2002 to present.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning any offer for sale or sale of any product or service by Orchid in the United States, including but not limited to Delaware, from 2002 to present.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning any promotion, marketing, advertising, sales calls, or solicitations of business by Orchid in the United States, including but not limited to Delaware, from 2002 to present, including, but not limited to any mass-mailings, fliers, newsletters,

merchandise catalogs, and database records of in-person sales calls, telephone calls or e-mails, whether in paper or electronic form.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to identify all employees, agents, board members and shareholders of all Orchid entities from 2002 to present.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to compare Orchid's sales within Delaware to Orchid's overall sales within the United States, on a monthly dollar and unit basis, from 2002 to present.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to identify Orchid's overall purchases, on a dollar and unit basis, from any vendor or supplier located or incorporated in the United States since 2002, including but not limited to all such purchases from vendors and suppliers located or incorporated in Delaware.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify the amount, on a dollar and unit basis, of all products supplied by Orchid to distributors or resellers located or incorporated in the United States since 2002, including but not limited to all such distributors and resellers located or incorporated in Delaware.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning any actual or proposed contract or other agreement between Orchid and any person or entity located or incorporated in the United States, including

but not limited to Delaware, including all documents concerning the negotiation, terms or performance of any such actual or proposed contract or other agreement.

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning any taxes paid or owed by Orchid to Delaware since 2002.

**REQUEST FOR PRODUCTION NO. 11:**

All documents concerning Orchid's development of any product offered for sale in the United States, including but not limited to Delaware, since 2002.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any seminars, trade shows, conferences, conventions, symposia or meetings that Orchid or its employees or agents have attended in Delaware since 2002.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning any contract or agreement between Orchid and any person or entity that contains a choice of forum or choice of law provision identifying Delaware or Delaware law.

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to identify the corporate assets and liabilities of Orchid since 2002, including, but not limited to, all annual reports and required financial filings such as statements of operation, balance sheets, statements of changes in retained earnings and notes thereto.

5

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to identify and show the role of each and every entity and individual involved in the preparation and submission of ANDA No. 90-044 and the related notice of Paragraph IV Certification that was sent by Orchid to Forest and Merz.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning the activity of the board of directors of all Orchid entities since 2002, including but not limited to meeting minutes, concerning ANDA No. 90-044 or the '703 patent.

**REQUEST FOR PRODUCTION NO. 17:**

Documents related all property, whether real or personal, owned or leased by Orchid in Delaware since 2002, including documents sufficient to identify the property, documents sufficient to show the use by Orchid of the property, and documents regarding the disposition, acquisition or lease of the property to any entity.

**REQUEST FOR PRODUCTION NO. 18:**

Documents concerning any bank or credit accounts Orchid has held or maintained in Delaware since 2002, including documents concerning any depository relationship that has been established on behalf of Orchid with any financial institution that transacts business in the United States.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to identify all telephone or facsimile numbers maintained by Orchid in Delaware, including but not limited to all documents concerning any telephone or

facsimile number or telephone or facsimile listing that has been established on behalf of Orchid and that has routed communications to or from Delaware since 2002.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify any past or present employee or agent of Orchid who currently resides in Delaware.

**REQUEST FOR PRODUCTION NO. 21:**

All documents reflecting any expectation by Orchid of being sued by Forest or Merz in connection with ANDA No. 90-044.

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning any sales projections, sales forecasts, marketing plans, or business plans relating to sales in the United States, including but not limited to Delaware, of the generic memantine hydrochloride product that is the subject of ANDA No. 90-044.

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning any registration by Orchid with any Delaware governmental entity, including, but not limited to documents sufficient to identify any agent appointed by Orchid in Delaware.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning any Medicaid payments that have been tendered to Orchid in consideration for the sale of any Orchid product or service in the United States, including but not limited to Delaware, since 2002.

7

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to identify whether Orchid has been responsible or liable at any time since 2002, either actually or potentially, for any past, present or future obligation of Orchid Pharmaceuticals, Inc.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY 10017
(212) 326-3939

April 17, 2008

8

<u>**CERTIFICATE OF SERVICE**</u>

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to

be served on April 17, 2008 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL**
<u>**and HAND DELIVERY**</u>

Mary B. Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
*Counsel for Cobalt Laboratories Inc.*

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Counsel for Upsher-Smith Laboratories Inc.*

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street – 6th Floor
Wilmington, DE 19801
*Counsel for Orchid Pharmaceuticals Inc. and*
*Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid*
*Healthcare)*

Richard D. Kirk, Esquire
Ashley B. Stitzer, Esquire
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE  19801
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

## VIA ELECTRONIC MAIL

William A. Rakoczy, Esquire
Paul J. Molino, Esquire
Deanne M. Mazzochi, Esquire
Neil A. Benchell, Esquire
John Polivick, Esquire
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, IL  60610
*Counsel for Cobalt Laboratories Inc.*

Douglass C. Hochstetler, Esquire
D. Christopher Ohly, Esquire
Sailesh K. Patel, Esquire
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

Kenneth G. Schuler, Esquire
LATHAM & WATKINS LLP
Sears Tower – Suite 5800
233 South Wacker Drive
Chicago, IL  60606
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Terrence J. Connolly, Esquire
LATHAM & WATKINS LLP
885 Third Avenue – Suite 1000
New York, NY  10022-4834
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Darryl H. Steensma, Esquire
LATHAM & WATKINS LLP
12636 High Bluff Drive – Suite 300
San Diego, CA 92130
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Michael Dzwonczyk, Esquire
Mark Boland, Esquire
Chid Iyer, Esquire
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC 23307
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Maryellen Noreika (#3208)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FOREST LABORATORIES, INC.,<br>FOREST LABORATORIES HOLDINGS,<br>LTD., MERZ PHARMA GMBH & CO.<br>KGAA, and MERZ PHARMACEUTICALS<br>GMBH,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>COBALT LABORATORIES INC., LUPIN<br>PHARMACEUTICALS, INC., LUPIN LTD.,<br>ORCHID PHARMACEUTICALS INC.,<br>ORCHID CHEMICALS &<br>PHARMACEUTICALS LTD. (d/b/a ORCHID<br>HEALTHCARE), TEVA<br>PHARMACEUTICALS USA, INC.,<br>UPSHER-SMITH LABORATORIES, INC.,<br>WOCKHARDT USA INC., and<br>WOCKHARDT LIMITED,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　C.A. No.　08-021 (GMS) (LPS) |

**PLAINTIFFS' REQUESTS FOR ADMISSION IN CONNECTION
WITH JURISDICTIONAL DISCOVERY FROM THE ORCHID DEFENDANTS**

Pursuant to Rules 36 and 26, Fed. R. Civ. P., Local Civil Rule 26.1, and the parties' Stipulated Jurisdictional Discovery Schedule (D.I. 64), Plaintiffs Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Merz Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH (collectively, "Plaintiffs") hereby request that Defendants Orchid Chemicals and Pharmaceuticals, Ltd. and Orchid Pharmaceuticals, Inc. (collectively, "Orchid") admit the truth of the following Requests for Admission. The requested responses must be provided within (30) days of service of these requests, or at such time as may be agreed to in writing by counsel for the parties.

DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Plaintiffs' Requests for the Production of Documents and Things in Connection with Jurisdictional Discovery from the Orchid Defendants are hereby incorporated by reference.

REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

ANDA No. 90-044 seeks FDA approval to market a generic version of Plaintiffs' 5 and 10 milligram NAMENDA® memantine hydrochloride tablets.

**REQUEST FOR ADMISSION NO. 2:**

ANDA No. 90-044 contains a Paragraph IV Certification directed to the '703 patent.

**REQUEST FOR ADMISSION NO. 3:**

Orchid sent a notice letter dated December 7, 2007 to Plaintiffs regarding the submission of ANDA No. 90-044 to the FDA and its concurrent submission of a Paragraph IV Certification directed to the '703 patent.

**REQUEST FOR ADMISSION NO. 4:**

The submission of ANDA No. 90-044 to the FDA and its concurrent submission of a Paragraph IV Certification directed to the '703 patent infringed that patent under 35 U.S.C. § 271(e)(2)(A).

**REQUEST FOR ADMISSION NO. 5:**

At the time ANDA No. 90-044 was submitted to the FDA, Orchid knew that Plaintiffs' 5 and 10 milligram NAMENDA® memantine hydrochloride tablets had annual sales of over $650,000,000 collectively in the United States.

**REQUEST FOR ADMISSION NO. 6:**

At the time ANDA No. 90-044 was submitted to the FDA, Orchid planned to sell the generic memantine product that was the subject of ANDA No. 90-044 in the United States, including Delaware, upon its approval by the FDA.

**REQUEST FOR ADMISSION NO. 7:**

At the time ANDA No. 90-044 was submitted to the FDA, Orchid expected FDA approval of the generic memantine product that was the subject of ANDA No. 90-044 to reduce the volume of Plaintiffs' sales of its 5 and 10 milligram NAMENDA® memantine hydrochloride tablets.

**REQUEST FOR ADMISSION NO. 8:**

Orchid retained Latham & Watkins LLP prior to December 7, 2007.

**REQUEST FOR ADMISSION NO. 9:**

At the time ANDA No. 90-044 was submitted to the FDA, Orchid expected Plaintiffs to file suit against it for the infringement of the '703 patent.

**REQUEST FOR ADMISSION NO. 10:**

At the time ANDA No. 90-044 was submitted to the FDA, Orchid expected Plaintiffs to file suit against it in the District of Delaware.

3

**REQUEST FOR ADMISSION NO. 11:**

Orchid owns or leases property in Delaware.

**REQUEST FOR ADMISSION NO. 12:**

The Paragraph IV notice letter dated December 7, 2007 sent by Orchid to Plaintiffs does not identify an agent authorized to accept service of process in the United States.

**REQUEST FOR ADMISSION NO. 13:**

Orchid has sold, offered for sale, or distributed, either directly or indirectly, a product in Delaware at some time during the period from 2002 to the present.

**REQUEST FOR ADMISSION NO. 14:**

Orchid has entered into an agreement with a third party to market, sell, resell or distribute a product in Delaware at some time during the period from 2002 to the present.

**REQUEST FOR ADMISSION NO. 15:**

Orchid has engaged in or caused another person or entity to engage in manufacturing, development, storage, research, shipping, or the procurement of office facilities in Delaware at some time since 2002.

**REQUEST FOR ADMISSION NO. 16:**

Orchid has previously been a Defendant in a lawsuit filed in Delaware.

**REQUEST FOR ADMISSION NO. 17:**

Orchid has previously brought a lawsuit in Delaware.

**REQUEST FOR ADMISSION NO. 18:**

Orchid has previously participated in a lawsuit in Delaware as a non-party.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel:*

John Desmarais
Gerald J. Flattmann, Jr.
Melanie R. Rupert
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022
(212) 446-4800

F. Dominic Cerrito
Daniel L. Malone
Eric C. Stops
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939

April 17, 2008

5

<u>**CERTIFICATE OF SERVICE**</u>

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to

be served on April 17, 2008 upon the following in the manner indicated:

**VIA ELECTRONIC MAIL**
<u>**and HAND DELIVERY**</u>

Mary B. Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
*Counsel for Cobalt Laboratories Inc.*

Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Counsel for Upsher-Smith Laboratories Inc.*

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street – 6th Floor
Wilmington, DE 19801
*Counsel for Orchid Pharmaceuticals Inc. and*
*Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid*
*Healthcare)*

Richard D. Kirk, Esquire
Ashley B. Stitzer, Esquire
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

**<u>VIA ELECTRONIC MAIL</u>**

William A. Rakoczy, Esquire
Paul J. Molino, Esquire
Deanne M. Mazzochi, Esquire
Neil A. Benchell, Esquire
John Polivick, Esquire
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, IL 60610
*Counsel for Cobalt Laboratories Inc.*

Douglass C. Hochstetler, Esquire
D. Christopher Ohly, Esquire
Sailesh K. Patel, Esquire
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
*Counsel for Lupin Pharmaceuticals USA, Inc. and Lupin, Ltd.*

Kenneth G. Schuler, Esquire
LATHAM & WATKINS LLP
Sears Tower – Suite 5800
233 South Wacker Drive
Chicago, IL 60606
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Terrence J. Connolly, Esquire
LATHAM & WATKINS LLP
885 Third Avenue – Suite 1000
New York, NY 10022-4834
*Counsel for Orchid Pharmaceuticals Inc. and
Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid
Healthcare)*

Darryl H. Steensma, Esquire
LATHAM & WATKINS LLP
12636 High Bluff Drive – Suite 300
San Diego, CA 92130
*Counsel for Orchid Pharmaceuticals Inc. and*
*Orchid Chemicals & Pharmaceuticals Ltd (d/b/a Orchid*
*Healthcare)*

Michael Dzwonczyk, Esquire
Mark Boland, Esquire
Chid Iyer, Esquire
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC 23307
*Counsel for Wockhardt USA Inc. and Wockhardt Limited*

Maryellen Noreika (#3208)

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ELI LILLY AND COMPANY,**

**Plaintiff,**

v.                                                              Civil No. 2:07cv450

**SYNTHON LABORATORIES, INC.,**

**Defendants.**

## ORDER and OPINION

This matter is before the Court on the Stipulation of Dismissal filed by plaintiff Eli Lilly

and Co. ("Eli Lilly") and defendant Synthon Laboratories, Inc. ("Synthon"). Doc. 57. Movant

Mylan Pharmaceuticals, Inc. ("Mylan") objects to this Stipulation, arguing that its pending

Motion to Intervene should be decided before the Court allows dismissal of the case. Doc. 55.

For the reasons stated herein, the Court **FINDS** that the case should be dismissed.

### I. PROCEDURAL HISTORY

Eli Lilly brought this case against Synthon alleging patent infringement after Synthon

filed an Abbreviated New Drug Application (ANDA) with the Food and Drug Administration

(FDA) seeking to market a generic version of a drug produced by Eli Lilly.[1]  Doc. 1. Eli Lilly

then sought to stay the action, as it had filed an earlier action in the District of New Jersey against

Synthon and nine (9) other defendants who also allegedly filed ANDAs. Doc. 11. Eli Lilly filed

---

[1] This process is governed by the Drug Price Competition and Patent Restoration Act,
commonly known as the Hatch-Waxman Act, and is set out at 21 U.S.C. § 355(j).

-1-

this action anticipating that Synthon would object to personal jurisdiction in New Jersey. Id.
Synthon strenuously objected to Eli Lilly's Motion to Stay, claiming that delaying resolution
would cause it substantial prejudice. See Doc. 24. Further factual and procedural background of
this action are reviewed in detail in this Court's Order denying Eli Lilly's Motion to Stay issued
January 29, 2008. Doc. 39.

On February 8, 2008 Mylan filed its Motion to Intervene as a Defendant. Docs. 40
(Motion) and 41 (Mem. in Support). Like Synthon, Mylan is a defendant in the parallel
proceeding pending in the District of New Jersey. As noted in this Court's earlier order, trial in
this case is scheduled for June 2008, while trial in the New Jersey action is not projected to begin
until mid 2010. Doc. 39 at 7. Mylan argued in its Motion that its rights are equal to those of
Synthon, and that if Synthon were successful in invalidating Eli Lilly's patent in this Court,
Synthon would enjoy a one hundred eighty (180) day period of exclusivity to market its generic
drug that Mylan is entitled to share, as both parties are first-filers of ANDAs. Doc. 41 at 2. This
potential prejudice, argued Mylan, entitled it to intervene in this case either as of right or by
permission. Doc. 41 at 12, 20. Eli Lilly filed an Opposition to this Motion on February 22, 2008
arguing that even though Mylan would suffer prejudice if Synthon is successful in this action, the
Court should deny the Motion. Doc. 47. Eli Lilly also renewed its Motion to Stay. Id.; see also
Docs. 11 and 12. Synthon filed an Opposition to the renewed Motion to Stay on February 28,
2008. Doc. 50. Synthon did not oppose Mylan's Motion to Intervene. Id. Mylan filed a reply to
Eli Lilly's Opposition on February 26, 2008. Doc. 48.

A hearing on the Motion to Intervene was scheduled for March 5, 2008. On March 4,
2008, Eli Lilly and Synthon filed their Stipulation of Dismissal, stating that they had agreed to

dismiss the case without prejudice. Doc. 57. Mylan also filed its Notice of Intent to Object to the Stipulation of Dismissal on March 4, 2008. Doc. 56. The Court instructed the Clerk that the case should not be dismissed until Mylan's objection could be considered.

At the hearing on March 5, 2008 the Court heard argument on whether the pending Motion to Intervene prevented the dismissal without Mylan's consent. See Doc. 58. Mylan implied, both in its written objection and at the hearing, that Eli Lilly and Synthon had entered into a side agreement that resulted in the filing of the Stipulation of Dismissal. Mylan also argued that, prior to the attempted filing of the stipulation, Eli Lilly had offered to consent to its intervention and that Mylan had accepted this offer, creating a binding agreement between the parties as to intervention. Mylan additionally argued that it had acted as a de facto party to this action by participating in discovery and that Eli Lilly was forum shopping by trying to prevent the case from proceeding in this Court. Eli Lilly argued that the Stipulation of Dismissal was effective without the Court's approval or Mylan's consent under Fed. R. Civ. P. 41(a)(1). Eli Lilly stated that as the Court had not yet ruled on Mylan's Motion to Intervene, Mylan was not a party, and had no standing to object to the Stipulation of Dismissal. Eli Lilly further argued that Mylan's "acceptance" of Eli Lilly's offer to consent to the intervention added additional terms to the agreement, and was thus a counter-offer which did not create a binding agreement. Synthon agreed with Eli Lilly's statement of the law, and noted that circumstances had changed such that it was willing to consent to jurisdiction in New Jersey. Synthon also stated that it had informed Mylan a week and a half before the hearing that there was a possibility that a stipulation of dismissal would be filed.

The Court took the matter under advisement and requested that the parties and the movant

-3-

file additional briefing by Wednesday, March 12, 2008. Both of the parties and Mylan filed additional briefs. Docs. 60, 62, and 64. Synthon informed the Court that there was no side agreement with Eli Lilly, and that instead, it agreed to the dismissal for business reasons. Doc. 60 at 2. Eli Lilly argued that the Court lacked the authority to grant the Motion to Intervene, and that dismissal of the case would not prejudice Mylan, which would still be a defendant in New Jersey. Doc. 62 at 2. Eli Lilly also argued that Mylan engaged in fraud by concealing that it knew of Synthon's intention to stipulate to dismissal. Id. at 19. Mylan argued that the Court had the authority to grant Mylan's Motion to Intervene despite the filing of the Stipulation of Dismissal. Doc. 64. Mylan further stated that Eli Lilly and Synthon were engaging in forum shopping that undermined the purpose of the Hatch-Waxman Act. Id. at 17. Mylan also argued that its Motion to Intervene should be granted because Eli Lilly had consented to this Motion and further, Mylan would be prejudiced by delay if it were not permitted to intervene. Id. at 4-5.

## II. ANALYSIS

The timing of the filing of the Stipulation of Dismissal under Fed. R. Civ. P. 41(a), combined with the implication in Mylan's objection that a deal had been struck between Eli Lilly and Synthon raised serious questions for the Court. However, the implication that some unexplained consideration flowed from Eli Lilly to Synthon in return for the stipulation is not supported by the record before the Court. The difficult questions which the Court posed to Eli Lilly's counsel were satisfactorily answered by him at the March 5, 2008 hearing.

Mylan's allegations that Eli Lilly is guilty of forum shopping and its implications that Synthon received some consideration from Eli Lilly in exchange for its agreement to the Stipulation of Dismissal are simply not supported by the record. Similarly, Eli Lilly's allegation

-4-

of fraud against Mylan is not supported by the record. Eli Lilly has consistently sought to litigate this case in New Jersey, and only instituted suit in Virginia in anticipation of a potential jurisdictional issue being raised in New Jersey, which it later was. Eli Lilly's action in filing a separate suit in the Eastern District of Virginia and thereafter seeking a stay is simply an effort on its part to protect itself, not forum shopping or "gaming the system." For its part, Synthon changed its position one hundred and eighty degrees. After emphasizing the necessity of a prompt trial date and the importance of the public interest in same, Synthon now complains of having to proceed at "break-neck speed." At this stage of the proceeding, Synthon's position has no effect on the Court's ruling, and the question of whether its establishment of a presence in the Eastern District of Virginia should be a basis for venue in this district shall have to wait for another day. At this point, the Court will have to focus upon the positions advanced by Eli Lilly and Mylan.

The general rule is that parties have a right to dismiss a case of this nature on one occasion by agreement, without seeking prior approval of the Court. See Fed. R. Civ. P. 41(a)(1); see also In re Matthews, 395 F.3d 477 (4th Cir. 2005); Comacho v. Mancuso, 53 F.3d 48 (4th Cir. 1995). This is generally true even if a motion to intervene is pending and the potential intervenor objects. See GMAC Comm. Mortgage Corp. v. LaSalle Bank Nat'l Ass'n, 213 F.R.D. 150, 150-51 (S.D.N.Y. 2003); Mut. Produce, Inc. v. Penn. Central Trans. Co., 119 F.R.D. 619, 620-21 (D. Mass. 1988). However, the origin of this rule seems to be founded upon the views of a text writer and not upon binding or even persuasive precedent from an appellate court. See 8 James Wm. Moore et al., Moore's Federal Practice, § 41.34. There may indeed be circumstances where an intervenor could and should be treated as a de facto party and the Court

-5-

might invoke equitable principles to estop the stipulating parties from invoking a rule which would prejudice the rights of a party whose motion to intervene is pending.  See Alternative Research and Dev. Found. v. Veneman, 262 F.3d 406, 411 (D.C. Cir. 2001); Fleet Capital Corp. v. Merco Joint Venture, LLC, No 02 CV 0279(ILG), 2002 WL 31528633, at *4 (E.D.N.Y. Sept. 3, 2002).

This, however, is not a case where the Court finds it should invoke equitable principles. First of all, in its Motion to Intervene Mylan argued that it would be prejudiced if Synthon were successful in this action and achieved the rights of a first-filer.  This concern no longer exists if Synthon is not litigating in this Court.  Second, although Mylan has engaged in discovery in this case, such procedures were also applicable in the pending case in New Jersey, and thus Mylan cannot claim it was misled into devoting its resources to this proceeding.  Third, Mylan will not be prejudiced by the dismissal of this action, except to the extent that the determination of its rights may be delayed.  While delay is a matter of importance under the Hatch-Waxman Act, and should be a matter of importance in all civil litigation as delay is an important factor in the escalating costs of resolving civil disputes in federal courts, Mylan's rights are pending alongside those of all other ANDA filers in New Jersey.  Finally, although counsel for Eli Lilly candidly concedes making an offer to withdraw its opposition to the intervention of Mylan, and there is substantial evidence that Mylan accepted this offer, the Court does not believe this is a proper case in which to invoke equitable principles to impose an estoppel upon Eli Lilly.  Whether counsel reached a binding agreement is a fact intensive inquiry which the Court is not prepared to resolve on the basis of this record.  If such an agreement were binding, its application would require the Court to invoke an equitable estoppel, which is not appropriate where there is

-6-

unchallenged evidence that a stipulated dismissal was under consideration prior to the alleged agreement. For these reasons, the Court **FINDS** that the filing of the Stipulation of Dismissal has the effect of dismissing this case.

### III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the Clerk to file the Stipulation of Dismissal (Doc. 57) which will operate as a dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii). As a result of this dismissal, the Motion to Intervene filed by Mylan (Doc. 40) and the Motion for Leave to File to Add Parties to the Complaint filed by Eli Lilly (Doc. 45) are **MOOT**.

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, **Jr.**
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March / 7, 2008

# Exhibit E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELI LILLY AND COMPANY         ) | |
|                   ) | |
|     Plaintiffs,            ) | |
|                   ) | |
|     v.                 ) | |

ELI LILLY AND COMPANY )

Plaintiffs, )

v. )

ACTAVIS ELIZABETH LLC,
GLENMARK PHARMACEUTICALS )
INC., USA, SUN PHARMACEUTICAL )
INDUSTRIES LIMITED, SANDOZ INC., )
MYLAN PHARMACEUTICALS INC., )    Civil Action No.  07-3770 (DMC)
APOTEX INC., AUROBINDO PHARMA )
LTD., TEVA PHARMACEUTICALS )
USA, INC., SYNTHON LABORATORIES, )
INC., ZYDUS PHARMACEUTICALS, )
USA, INC. )

Defendants. )

---

## SYNTHON LABORATORIES, INC.'S WITHDRAWAL OF MOTION TO DISMISS

Defendant, Synthon Laboratories, Inc. ("Synthon Labs"), hereby withdraws its Motion to

Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(3) filed October 18, 2007 (Document 49).

Synthon Labs consents to personal jurisdiction in this Court solely for purposes of the present

action.

Dated:  April 14, 2008

Frank Holahan, Esq.
MCELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
40 West Ridgewood Avenue
Ridgewood, N.J. 07450
(201) 445-6722

*Attorney for Defendant*
*Synthon Laboratories, Inc.*

OF COUNSEL:

E. Anthony Figg
efigg@rfem.com
Glenn E. Karta
gkarta@rfem.com
Minaksi Bhatt
mbhatt@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

# Exhibit F

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Melanie R. Rupert
To Call Writer Directly:
(212) 446-4839
mrupert@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

March 17, 2008

**VIA ELECTRONIC MAIL**

Joseph A. Hynds, Esq.
Rothwell, Figg, Ernst & Manbeck
1425 K Street, NW
Suite 800
Washington, D.C. 20005

Re:     *Forest Laboratories, Inc. v. Dr. Reddy's Laboratories, Inc., et al.*
        <u>Civil Action No. 08-CV-0052 (GMS)</u>

Dear Joe:

I write in response to your letter of today regarding alleged *ex parte* communications between your client, Synthon Laboratories, Inc. ("Synthon"), and counsel for Plaintiffs.

I was unaware of the issues raised in your letter until you brought them to my attention. However, I can now confirm that the communication referred to in your letter was not made by or at the direction of any attorney at Kirkland & Ellis LLP. Instead, the communication was the result of a misunderstanding by an administrative assistant, Jeannette, who mistakenly contacted Synthon without being told or authorized to do so.

We sincerely apologize, and we assure you that this communication was an isolated incident which will not happen again.

Sincerely,

Melanie R. Rupert

cc:    E. Anthony Figg, Esq.
       Gerald J. Flattmann, Esq.
       Jack B. Blumenfeld, Esq.

Chicago        Hong Kong       London        Los Angeles        Munich        San Francisco        Washington, D.C.